UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
FEDERAL HOUSING FINANCE AGENCY, :
AS CONSERVATOR FOR THE FEDERAL :
NATIONAL MORTGAGE ASSOCIATION :
AND THE FEDERAL HOME LOAN :
MORTGAGE CORPORATION, :
: No. 11-cv-6198 (DLC)
Plaintiff, :
v. :
:
GOLDMAN, SACHS & CO., *et al.*, :
:
Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

SULLIVAN & CROMWELL LLP
Richard H. Klapper
Theodore Edelman
Michael T. Tomaino, Jr.
Tracy Richelle High
125 Broad Street
New York, NY 10004-2498
Telephone: 212-558-4000
Facsimile: 212-558-3588

*Attorneys for Goldman, Sachs & Co., GS Mortgage Securities Corp., Goldman Sachs Mortgage Company, The Goldman Sachs Group, Inc., Goldman Sachs Real Estate Funding Corp., Peter C. Aberg, Howard S. Altarescu, Robert J. Christie, Kevin Gasvoda, Michelle Gill, David J. Rosenblum, Jonathan S. Sobel, Daniel L. Sparks and Mark Weiss*

October 11, 2012

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................2

I.    THE AMENDED COMPLAINT DOES NOT ADEQUATELY PLEAD SCIENTER. ..................................................................................................................2

II.   FHFA HAS FAILED TO PLEAD JUSTIFIABLE RELIANCE .........................................7

III.  FHFA'S SCANT ALLEGATIONS OF LOSS CAUSATION ARE INSUFFICIENT. ..................................................................................................................9

IV.  FHFA'S SECURITIES ACT CLAIMS AND D.C. SECURITIES ACT CLAIMS ARE UNTIMELY AS TO SEVEN SECURITIZATIONS. ...............................................10

CONCLUSION ..............................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*AIG Global Secs. Lending Corp.* v. *Banc of America Secs., LLC*,
   2005 WL 2385854 (S.D.N.Y. Sept. 26, 2005) ........................................................................... 10

*Allianz Risk Transfer* v. *Paramount Pictures Corp.*,
   2010 WL 1253957 (S.D.N.Y. Mar. 31, 2010) ............................................................................ 3

*Ashcroft* v. *Iqbal*,
   556 U.S. 662 (2009) .................................................................................................................... 2

*Bell Atl. Corp.* v. *Twombly*,
   550 U.S. 544 (2007) .................................................................................................................... 2

*Fed. Hous. Fin. Agency* v. *UBS Americas, Inc.*,
   2012 WL 1570856 (S.D.N.Y. May 4, 2012) .............................................................................. 8

*Footbridge Ltd. Trust* v. *Countrywide Home Loans, Inc.*,
   2010 WL 3790810 (S.D.N.Y. Sept. 28, 2010) ........................................................................... 9

*Fort Worth Emps. Ret. Fund* v. *J.P. Morgan Chase & Co.*,
   2012 WL 1788142 (S.D.N.Y. May 15, 2012) .......................................................................... 10

*HSH Nordbank AG* v. *UBS AG*,
   95 A.D.3d 185 (1st Dep't 2012) .................................................................................................. 8

*In re Optimal U.S. Litig.*,
   837 F. Supp. 2d. 244 (S.D.N.Y. 2011) ..................................................................................... 10

*Janus Capital Grp., Inc.* v. *First Derivative Traders*,
   131 S. Ct. 2296 (2011) ........................................................................................................ 9, 10

*Landesbank Baden-Württemberg* v. *Goldman, Sachs & Co.*,
   2012 WL 1352590 (2d Cir. Apr. 19, 2012) ........................................................................... 3, 4

*Landesbank Baden-Württemberg* v. *Goldman, Sachs & Co.*,
   821 F. Supp. 2d 616 (S.D.N.Y. 2011),
   *aff'd*, 2012 WL 1352590 (2d Cir. Apr. 19, 2012) ................................................................. 3, 4

*Lazard Freres & Co.* v. *Protective Life Ins. Co.*,
   108 F.3d 1531 (2d Cir. 1997) ..................................................................................................... 9

*Lentell* v. *Merrill Lynch & Co., Inc.*,
   396 F.3d 161 (2d Cir. 2005) ....................................................................................................... 9

*Lipsky* v. *Commonwealth United Corp.*,
 551 F.2d 887 (2d Cir. 1976)..................................................................................................7

*Luminent Mortg. Capital, Inc.* v. *Merrill Lynch & Co.*,
 652 F. Supp. 2d 576 (E.D. Pa. 2009) ....................................................................................9

*Republic Bank & Trust Co.* v. *Bear Stearns & Co., Inc.*,
 683 F.3d 239 (6th Cir. 2012) .............................................................................................3, 7

*RSM Prod. Corp.* v. *Fridman*,
 643 F. Supp. 2d 382 (S.D.N.Y. 2009),
 *aff'd*, 2010 WL 2838582 (2d Cir. July 21, 2010) .................................................................6

*Stephenson* v. *PricewaterhouseCoopers LLP*,
 768 F. Supp. 2d 562 (S.D.N.Y. 2011) ...................................................................................3

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007) ...........................................................................................................2, 3

*Terra Sec. ASA Konkursbo* v. *Citigroup, Inc.*,
 820 F. Supp. 2d 541 (S.D.N.Y. 2011) ...................................................................................8

*Tsereteli* v. *Residential Asset Securitization Trust 2006-A8*,
 692 F. Supp. 2d 387 (S.D.N.Y. 2010) ...................................................................................7

**STATUTES**

Fed. R. Civ. P. 8(a)(1)..................................................................................................................13

Fed. R. Civ. P. 9(b) ...............................................................................................................3, 4, 8

Fed. R. Civ. P. 12(f).......................................................................................................................8

## PRELIMINARY STATEMENT

FHFA's Opposition to Defendants' Motion to Dismiss ("Opposition" or "Opp.") provides no meaningful responses to Defendants' identification of deficiencies in the Amended Complaint.  *First*, FHFA cannot dispute that its only allegations of scienter that are tied to any of the Securitizations at issue depend entirely on supposed analyses of LTV and owner occupancy data conducted years after the transactions, which courts routinely reject as fraud-by-hindsight pleading.  FHFA also asks the Court to infer scienter from such routine market activities as conducting due diligence and using internal analytical models, which were commonplace in the mortgage industry and do not come close to supporting the required strong inference of scienter—especially where the GSEs were immersed in that industry and themselves engaged in the same activities on a much larger scale, owning over $3 trillion in single- and multi-family loans in 2007 alone.  Similarly, FHFA's references to a handful of derogatory statements from the controversial Senate Permanent Subcommittee on Investigations Report ("PSI Report")—also unconnected to any Securitization at issue and involving only a limited time period—cannot taint the routine securitization activity at issue here by some sort of "association."  *Second*, FHFA's arguments that it relied on the alleged misrepresentations ring hollow in light of the GSEs' massive participation in the mortgage industry, including their direct access to originator information, which refutes any claim that the GSEs justifiably relied on, or were misled by, statements made by others about the practices of the very originators with whom the GSEs had the closest relationships.  *Third*, FHFA's arguments regarding loss causation—based on two conclusory paragraphs in the Amended Complaint—fail in the face of undisputed intervening events such as the "credit tsunami" to which the GSEs themselves have attributed losses in the mortgage industry.

Seeking to divert attention from its lack of particularized allegations of scienter, reliance and loss causation, FHFA repeats the mantra that these issues involve "fact questions" inappropriate as a basis for dismissal at the pleading stage. (*See* Opp. at 10, 13, 19.) But courts frequently dismiss complaints for failure to plead these required elements adequately. FHFA's claim that it "easily satisfies" pleading standards pre-dating *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544 (2007), *Ashcroft* v. *Iqbal*, 556 U.S. 662 (2009), and *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), proves only that FHFA "easily fails" to meet the pleading standards mandated by those cases. (Opp. at 9.)

## ARGUMENT

### I. THE AMENDED COMPLAINT DOES NOT ADEQUATELY PLEAD SCIENTER.

Instead of scienter allegations tied to the Securitizations at issue in this case, FHFA relies on unrelated pejorative assertions in hopes of tainting the entire mortgage industry and all of Goldman Sachs' mortgage-related activities. FHFA also twists the meaning of plainly innocuous conduct, claiming nefarious purposes even for activities in which the GSEs themselves engaged. Contrary to FHFA's suggestion (Opp. at 14), a series of conclusory allegations, each insufficient to support any permissible inference of scienter, cannot collectively support the required strong inference. Nor can FHFA rely on allegations applicable at best to a few Securitizations during a limited time period—which themselves are insufficient to establish scienter—to plead scienter for 40 Securitizations over a multi-year period. FHFA's allegation that Goldman Sachs had a motive to commit fraud because of "massive financial incentives, in the form of fees and commissions on all transactions" (Opp. at 14) also adds nothing, because "a

general profit motive common to all corporations . . . does not suffice." *Landesbank Baden-Württemberg* v. *Goldman, Sachs & Co.*, 2012 WL 1352590, at *2 (2d Cir. Apr. 19, 2012).[1]

FHFA concedes that the only ostensible "fraud" allegations that purport to be directed specifically to the Securitizations at issue here are that owner-occupancy rates were "*always*" overstated and LTV ratios were "*always*" understated.  (Opp. at 18 (original emphases, citing AC ¶¶ 121 & 127).)  But these allegations purportedly are based on analyses performed years after the Securitizations closed (AC ¶¶ 116-127), and shed no light on what Goldman Sachs or anyone else knew at the time of the Securitizations.  FHFA's supposed analysis of owner-occupancy data is based on information unavailable to Goldman Sachs at the time of issuance, such as whether a borrower's tax bill was mailed to the mortgaged property six months after the loan closed.  (AC ¶ 118.)  Similarly, FHFA's *post hoc* analysis of LTV ratios is based on an AVM model apparently developed years after those used by the due diligence vendors at the time of the Securitizations.  (AC ¶¶ 123-124.)  Such "fraud by hindsight" allegations "cannot survive a motion to dismiss."  *Landesbank Baden-Württemberg* v. *Goldman, Sachs & Co.*, 821 F. Supp. 2d 616, 623 (S.D.N.Y. 2011) *aff'd*, 2012 WL 1352590 (2d Cir. 2012).

FHFA's remaining allegations are not tied to the Securitizations, which is fatal to FHFA's fraud claims.  *Republic Bank & Trust Co.* v. *Bear Stearns & Co., Inc.*, 683 F.3d 239, 257 (6th Cir. 2012) (Rule 9(b) requires plaintiff "to plead at least some facts connecting the loans at issue in this case to the underwriting practices it extensively documents."); *Landesbank*, 821 F.

---

[1]   Although FHFA claims that its scienter allegations are subject to a less stringent analysis than that applicable under the Private Securities Litigation Reform Act ("PSLRA") and *Tellabs* (Opp. 13 n.7), courts in this district have consistently found that "although a common law fraud claim is subject to Fed. R. Civ. P. 9(b) rather than the PSLRA, there is no significant distinction between the two as practiced in the Second Circuit."  *Allianz Risk Transfer* v. *Paramount Pictures Corp.*, 2010 WL 1253957, at *9 (S.D.N.Y. Mar. 31, 2010); *accord Stephenson* v. *PricewaterhouseCoopers LLP*, 768 F. Supp. 2d 562, 572 n.1 (S.D.N.Y. 2011) (collecting cases).

Supp. 2d at 622.  FHFA argues that Goldman Sachs must have become aware of fraud through its due diligence activities, and points to the testimony of a former employee of Clayton Holdings, Inc. about due diligence reports that supposedly made "Goldman" uniquely aware "on a regular basis" that loans failed to meet underwriting guidelines.  (Opp. at 16, citing AC ¶ 203.)  But Freddie Mac, as a Clayton client, would have received these same kinds of reports.  (Declaration of Bradley A. Harsch ("Harsch Decl."), Exhibit "Ex." A.)  Moreover, the Clayton employee's testimony never mentions Goldman Sachs; FHFA is quoting its Amended Complaint, not the testimony itself.[2]  (*Id.*, Ex. B.)  FHFA also fails to "specifically identify the reports," and its "generalized references [to] due diligence reports commissioned by Goldman are insufficient to sustain [FHFA's] pleading burden as to intent."  *Landesbank*, 2012 WL 1352590, at *2.[3]  Similarly, FHFA's attempt to rely on statements allegedly made by two employees of Bohan (Opp. at 17, citing AC ¶ 207) fails because these statements are not tied to any Securitization and refer to actions of these employees' "supervisors" and not anyone from Goldman Sachs.  (Harsch Decl., Ex. C.)

FHFA's allegations about Goldman Sachs' 2007 "putback campaign" (Opp. at 17) is more fraud-by-hindsight pleading that says nothing about what Goldman Sachs knew prior

---

[2]   FHFA's suggestion that the former Clayton employee testified that "Goldman used the discovery of poor lending practices to increase its profits—by charging higher warehouse fees to those originators identified as being problematic" (Opp. at 17) is also misleading:  FHFA again quotes its own pleading; the actual testimony says no such thing.  (*See* Opp. Ex. A.)

[3]   FHFA also tries to rely on testimony from the same former Clayton employee concerning "waiver rates" in a 2007 "Clayton Trending Report":  the same report on which plaintiffs unsuccessfully relied in the *Landesbank* complaint against Goldman Sachs.  (Opp. at 16, citing AC ¶ 203 & Ex. A.)  Because that report was prepared well after the Securitizations, the "due diligence conveyed in that report therefore does not bear on the defendants' knowledge at the time of issuance."  *Landesbank*, 2012 WL 1352590, at *2.  Nor does the one-page snippet of testimony FHFA cites about "exceptions . . . at the originators [Goldman Sachs was] doing business with" (*see* Opp. Ex. A) demonstrate scienter, especially given that the Prospectus Supplements repeatedly disclosed that loans could be subject to exceptions to the underwriting guidelines.

to the putback requests. Indeed, FHFA cites only one Securitization, GSAMP 2006-NC2, to which these allegations pertain (Opp. at 17), and any knowledge obtained from those putbacks could have been relevant only to the one later Securitization containing New Century loans.

FHFA's attempt to taint the Securitizations based on the politically charged PSI Report's discussion of alleged shorting strategies is also insufficient, even assuming that the demonstrably erroneous PSI Report carries evidentiary weight. While FHFA quotes the PSI Report's statement that "Goldman originated and sold RMBS securities that it knew had poor quality loans" (Opp. at 14), that assertion was not linked to any Securitization. Similarly, FHFA's arguments about Goldman Sachs' "activities shorting its own MBS" identify only one of the 40 Securitizations at issue here (GSAMP 2007-FM2), and even for that Securitization FHFA does not allege that Goldman Sachs "bet against" the Certificate that Freddie Mac bought. (Opp. at 15.) And despite FHFA's heavy reliance on the PSI Report, the U.S. Department of Justice declined to take any action against Goldman Sachs or its employees after a "thorough investigation" of the very same allegations upon which FHFA now relies. (Harsch Decl., Ex. D.)

Moreover, the PSI Report's unsupported assertion that Goldman Sachs knowingly securitized poor quality loans relates to alleged conduct that only occurred "[b]eginning in December 2006." (Opp. at 14, citing AC ¶ 229, PSI Report at 513.) At a minimum, these allegations have no relevance to 28 of the 40 Securitizations issued prior to that date. (*See* AC ¶ 41 & tbl. 1.) And while FHFA cites a $13.9 billion short position from June 2007 (Opp. at 15, citing AC ¶ 213, PSI Report at 430), it omits the PSI Report's allegation that the Mortgage Department's net short positions of 2007 followed "a $6 billion net *long* position in December 2006." (Harsch Decl., Ex. E, PSI Report at 424 (emphasis added).)

More fundamentally, FHFA fails to allege that these short positions reflected a view that the underlying collateral did not comply with representations in the offering documents, as opposed to a view of macroeconomic factors such as whether housing prices would continue to appreciate. FHFA's discussion of the alleged $9 billion short position that existed "in 2006" (Opp. at 15) also ignores the PSI's own allegation that the short position "serv[ed] as a hedge for long subprime mortgage assets" and was meant to insure against "the risk of an event that appeared to have a small probability of ever actually occurring . . . ." (Harsch Decl., Ex. E (PSI Report at 423).)[4] Prudent conduct is far from evidence of fraudulent intent, and FHFA's Amended Complaint alleges no windfall profits from the supposed "short" because none exist.

FHFA's allegations about investigations unrelated to this case—such as those of the Massachusetts Attorney General and Federal Reserve Board (Opp. at 18, citing AC ¶¶ 228, 231)—are likewise immaterial as a matter of law. *RSM Prod. Corp.* v. *Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009) ("paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within the meaning of Rule 12(f)"), *aff'd*, 2010 WL 2838582 (2d Cir. July 21, 2010); *Lipsky* v. *Commonwealth United Corp.*, 551 F.2d 887, 892-94 (2d Cir. 1976) (striking allegations that cited SEC complaint and consent decree); *see also Tsereteli* v. *Residential Asset Securitization Trust 2006-A8*, 692 F. Supp. 2d 387, 394 (S.D.N.Y. 2010)

---

[4] FHFA's reliance on pejorative terms from five emails cited in the PSI Report also falls short and is temporally limited at best. (Opp. at 15, citing AC ¶ 208.) The emails of October 12, 2006, January 23, 2007 and January 31, 2007 all reference Collateralized Debt Obligations, not the RMBS that the GSEs purchased. (Harsch Decl., Ex. F (PSI Exhibits 170c, 91 & 62).) The email of February 11, 2007 refers generally to "residual positions in old deals" and therefore cannot speak to Goldman Sachs' scienter when those Securitizations were issued. (*Id.* (PSI Exhibit 130).) The email of November 16, 2006, which appears to reference mortgage pools from Fremont, could at most be relevant to the [two] Fremont Securitizations issued after that time (GSAMP 2006-FM3 and GSAMP 2007-FM1). (*Id.* (PSI Ex. 173).)

(government investigation did "not even remotely support [plaintiff's] allegation" where plaintiff failed to allege the investigation involved the same loans it purchased); *Republic Bank* at 683.

The PSI Report's allegation that Goldman Sachs developed "sophisticated and powerful proprietary models [that] analyzed trends in the performance of the hundreds of thousands of mortgages that collateralized in RMBS" also does not support a permissible inference of scienter. (Opp. at 15, citing AC ¶ 210.) Several public sources—including trustees, Intext and ABSNet—provided information about the performance of mortgages collateralized in RMBS, and the GSEs and others used the same sorts of models. (*See, e.g.*, Harsch Decl., Ex. G (attaching GSE public filings disclosing their use of "standard models").)

## II.     FHFA HAS FAILED TO PLEAD JUSTIFIABLE RELIANCE.

In attempting to salvage its scienter allegations, FHFA refutes its own justifiable reliance arguments. The GSEs engaged in many of the activities that FHFA claims gave knowledge of fraud to Goldman Sachs—participating in every stage of the securitization process, purchasing loans "en masse" from originators, receiving regular reports from due diligence vendors, and using internal analytical models. (Opp. at 5.) FHFA cannot have it both ways, claiming that these activities conveyed knowledge of industry-wide fraud, but yet the GSEs justifiably relied on the alleged misrepresentations despite that same knowledge.

FHFA fails to explain how the GSEs justifiably relied on any purported misstatements by Goldman Sachs regarding LTV ratios, owner occupancy rates or originators' adherence to underwriting guidelines given that—as the Court has observed—the GSEs are "highly sophisticated players in the mortgage-backed securities market."[5] *Fed. Hous. Fin.*

---

[5]     Although FHFA argues that "reasonable reliance is generally a fact question even when sophisticated investors are involved" (Opp. at 10), courts can, and frequently do, dismiss fraud claims based on a failure to adequately allege reliance. *See, e.g.*, *HSH Nordbank AG* v. *UBS AG*,

*Agency* v. *UBS Americas, Inc.*, 2012 WL 1570856, at *23 (S.D.N.Y. May 4, 2012). FHFA contends that "regardless of their sophistication generally" the GSEs were entitled to rely on Goldman Sachs' representations and had no reason to know about any problems with the Securitizations. (Opp. at 10.) This argument cannot be squared with FHFA's allegations of rampant, systemic problems in an industry in which the GSEs were the most active and prominent participants. FHFA has claimed that virtually all of the loans in the Securitizations at issue in this action—and, indeed, all of the other actions brought by FHFA—were defective because "originators . . . systematically disregarded their respective underwriting guidelines" and there was a "widespread abandonment of originators' reported underwriting guidelines during the relevant period." (AC ¶ 130.) Yet FHFA also has admitted that Freddie Mac purchased more than $487.7 billion of single- and multi-family loans in 2007, and Fannie Mae owned $2.65 trillion in single-family loans in 2007. (*See* Letter to the Court from Richard A. Schirtzer and Michael Hanin, entered Aug. 28, 2012, 11-cv-5201-DLC, Doc. No. 175.) Moreover, as a client of Clayton with the third-highest "waiver rate" among the 23 clients listed in Clayton's Trending Report, Freddie Mac had access to precisely the same information that FHFA now wrongly claims gave Goldman Sachs knowledge of a fraud. (*See* Harsch Decl., Ex. A; Opp. at 16-17.) The GSEs' unparalleled access to loan- and certificate-level information distinguishes this case from those cited by FHFA in which plaintiffs did not have this extensive access to information. (Opp. at 11-12.)

   The GSEs were better positioned to know about originators' practices than any of the defendants across these actions. Given the GSEs' extensive involvement in all aspects of the

---

  95 A.D.3d 185, 188 (1st Dep't 2012); *Terra Sec. ASA Konkursbo* v. *Citigroup, Inc.*, 820 F. Supp. 2d 541, 548 (S.D.N.Y. 2011).

mortgage industry, FHFA must allege—but has not—how the GSEs could reasonably rely on Goldman Sachs (or the dozens of other firms they have sued). If the GSEs were unaware of the alleged "widespread" deviation from underwriting guidelines, it was only because they "enjoy[ed] access to critical information but fail[ed] to take advantage of that access." *Lazard Freres & Co.* v. *Protective Life Ins. Co.*, 108 F.3d 1531, 1541 (2d Cir. 1997) (quotation omitted).

### III. FHFA'S SCANT ALLEGATIONS OF LOSS CAUSATION ARE INSUFFICIENT.

FHFA cites only two utterly conclusory paragraphs of its Amended Complaint to argue that it has adequately pled loss causation. (Opp. at 20, citing AC ¶¶ 252, 256.) Where the GSEs themselves have attributed RMBS losses to a "once-in-a-century credit tsunami," such conclusory allegations fail to plead loss causation.[6] Further, FHFA's effort to blame Goldman Sachs for the "Nation's housing crisis" is a red herring. (Opp. at 20.) This argument does not claim that any *misrepresentations* caused a loss and, as the market's largest participants, the GSEs would carry far more blame than any defendants were this argument to be countenanced.[7]

---

[6] *See Footbridge Ltd. Trust* v. *Countrywide Home Loans, Inc.*, 2010 WL 3790810, at *22 (S.D.N.Y. Sept. 28, 2010) (dismissing fraud claims where "[t]he SAC does not include facts which, if proven, would show that the loss in value of plaintiffs' Securities was caused by the alleged misstatements as opposed to the 'broader market declines'"); *Luminent Mortg. Capital, Inc.* v. *Merrill Lynch & Co.*, 652 F. Supp. 2d 576, 594 (E.D. Pa. 2009) (same); *Lentell* v. *Merrill Lynch & Co., Inc.,* 396 F.3d 161, 174 (2d Cir. 2005).

[7] FHFA's fraud claims as to the four Securitizations for which FHFA concedes that Goldman Sachs acted solely as an underwriter should be dismissed because Goldman Sachs did not "make" any of the allegedly actionable statements under *Janus Capital Grp., Inc.* v. *First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011). (*See* Opening Br. at 19-21.) FHFA's contention that *Janus* should be limited only to claims under Section 10(b) (Opp. at 22-23) contradicts the well-settled principle that "because the elements of common law fraud are substantially identical to those governing § 10(b), the identical analysis applies." *AIG Global Secs. Lending Corp.* v. *Banc of America Secs., LLC*, 2005 WL 2385854, at *16 (S.D.N.Y. Sept. 26, 2005); *but see In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244, 262 (S.D.N.Y. 2011).

## IV. FHFA'S SECURITIES ACT CLAIMS AND D.C. SECURITIES ACT CLAIMS ARE UNTIMELY AS TO SEVEN SECURITIZATIONS.

For seven Securitizations, certificates were downgraded to below-investment-grade ratings more than one year before the date of the GSEs' conservatorship. FHFA argues that these downgrades did not place the GSEs on inquiry notice of problems with their Certificates because the particular Certificates they were not themselves downgraded. (Opp. at 24-25.) The same loans, however, backed both the downgraded certificates and the Certificates the GSEs bought. The downgrades put even an ordinary investor on notice of the purported claims, especially given the payment structure of RMBS offerings. *See Fort Worth Emps. Ret. Fund* v. *J.P. Morgan Chase & Co.*, 2012 WL 1788142, at *15 (S.D.N.Y. May 15, 2012) ("[E]ven if misrepresentations in the Offering Documents pertained only to loans backing particular tranches, based on the payment structure of the offering, a drop in value of one tranche affected the value of all tranches.").[8]

## CONCLUSION

For the reasons set forth herein and in Goldman Sachs' Opening Brief, the Court should dismiss Counts III, V, VII, VIII and IX in their entirety and Counts I, II, III, VI and VII as those Counts relate to seven Securitizations that are time-barred.

---

[8] In addition, because FHFA now clarifies that it "seeks to hold the Individual Defendants liable only as to those Securitizations for which they signed Registration Statements" (Opp. at 23 n.14), all control person claims should be dismissed with respect to Securitizations as to which the individual defendant did not sign the applicable registration statement. (AC ¶ 48 & tbl 2.)

Dated: New York, New York
       October 11, 2012

Respectfully submitted,

/s/ Richard H. Klapper
Richard H. Klapper (klapperr@sullcrom.com)
Theodore Edelman (edelmant@sullcrom.com)
Michael T. Tomaino, Jr. (tomainom@sullcrom.com)
Tracy Richelle High (hight@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004
Telephone:  212-558-4000
Facsimile:   212-558-3588

*Attorneys for Goldman, Sachs & Co., GS Mortgage Securities Corp., Goldman Sachs Mortgage Company, The Goldman Sachs Group, Inc., Goldman Sachs Real Estate Funding Corp., Peter C. Aberg, Howard S. Altarescu, Robert J. Christie, Kevin Gasvoda, Michelle Gill, David J. Rosenblum, Jonathan S. Sobel, Daniel L. Sparks and Mark Weiss*