November 8, 2012

<u>Via E-mail</u>

The Honorable Denise L. Cote,
United States District Judge,
Daniel Patrick Moynihan U.S. Courthouse,
500 Pearl Street,
New York, New York 10007-1312.

    Re:  <u>*FHFA* v. *UBS Americas Inc., et al.*, and other actions by this Plaintiff</u>

Dear Judge Cote:

    We write on behalf of defendants in the above-referenced actions ("Defendants") in support of their request that FHFA produce witness statements taken in the course of a Special Litigation Committee ("SLC") Investigation into Freddie Mac.

    FHFA refuses to produce these materials despite the fact that it has identified the SLC Investigation as relevant to these actions and has admitted that production would not be burdensome. Ex. A ("FHFA's Identification of RMBS Investigations & Civil Cases Potentially Related to PLS"); (11/6/12 Tr. at 51). FHFA's only basis for withholding these admittedly relevant materials is its wholesale claim of privilege. Yet, as set forth in Defendants' November 5, 2012 submission and below, FHFA has waived any claim of privilege by publicly filing the SLC Report in support of its motion to dismiss the action captioned *In re Federal Home Loan Mort. Corp. Derivative Litig.*, No. 08 Civ. 773 (LMB/TCB) (E.D.Va.) (Dkt. 138).

    The SLC was appointed by Freddie Mac's Board to investigate shareholder allegations, made in demand letters and derivative complaints, that the firm's third-quarter 2007 losses resulted from, among other things, failures of risk management and inadequate credit standards. Ex. B (SLC Report) at 1. The SLC conducted 46 interviews with present and former Freddie Mac directors, officers, and employees—many of whom are the same custodians and witnesses at issue here. *Id.* at n. 5, 14. FHFA secured dismissal of the derivative action through reliance on—and quotation from—those interviews in arguing that litigation against directors and officers should not be pursued. For example, in assessing the adequacy of Freddie Mac's risk management systems, the Report emphasized that "[e]very officer the Committee interviewed" believed that Freddie Mac's participation in non-traditional mortgage markets "was the result of an appropriate decision-making process in which opposing viewpoints were discussed and considered." *Id.* at 22. One officer was quoted as saying the Freddie Mac's move into non-traditional mortgage markets was based on discussions that were not "'Polyanna'" or "'one-sided,'" and that management "'wrestled'" with appropriate underwriting standards. *Id.* The Report noted that, while a number of witnesses "told the Committee that they disagreed" with Freddie Mac's investment decisions, not one "opined that the Company's decisions were anything other than good faith business judgments." *Id.* And the SLC reported that the "consensus among the current and former officers and directors of Freddie Mac interviewed by the Committee was that the primary cause of the Company's recent losses was an 'exogenous macro-economic event[ ]'; namely, the unprecedented decline in the housing market." *Id.* at 31. The Report quoted an officer's statement that "'it is not clear that Freddie Mac would have been better off had it made different credit decisions.'" *Id.*; *see also id.* at 14, 16, 23, 28, 30.

The Honorable Denise L. Cote                                             -2-

       FHFA affirmatively disclosed the SLC Report and relied on the witness statements upon which it is based in seeking dismissal of the derivative claims filed in the Eastern District of Virginia.  In this Circuit, by doing so FHFA waived any privilege or discovery immunities with respect to these materials.  In *Joy* v. *North*, 692 F.2d 880, 893-94 (2d Cir. 1982), for example, the Second Circuit concluded that if a company moves to dismiss a derivative action based on the recommendation of a special litigation committee, the committee must disclose "not only its report but all underlying data" and "waives the [attorney-client] privilege" and, to the extent materials were disclosed to the committee (as was the case for the Freddie Mac SLC (Ex. B at 5-7)), any work-product protections that may be associated with those materials.  *See also In re Continental Illinois Sec. Litig.*, 732 F.2d 1302, 1316 (7th Cir. 1984) (when a SLC report "is used in an adjudicative procedure to advance the corporate interest, there is a strong presumption that confidentiality must be surrendered").  The waiver rule for witness interviews relied on by a special litigation committee is a necessary corollary of the settled principle that a party waives privilege and work product by selectively disclosing and relying on portions of protected communications.  *See In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 470-71 (S.D.N.Y. 1996) (privilege waived for factual summaries of interviews discussed in a publicly disclosed report because, in part, Kidder had referred to the report as an "authoritative source of information as to the underlying facts" in seeking to dismiss another proceeding); *In re Grand Jury Proceedings*, 219 F.3d 175, 191 (2d Cir. 2000) (courts have found work product waived where "defense elected to make affirmative use" of its contents).[1]

       FHFA argues that *Upjohn Co.* v. *U.S.*, 449 U.S. 383 (1981), makes "sacrosanct" memoranda of witness interviews such as those at issue here.  (11/6/12 Tr. at 113-14.)  This is incorrect.  *Upjohn* held merely that communications between lower-level employees and company counsel could be privileged, and determined that no adequate showing had been made to overcome the work product protection applicable to memoranda concerning such communications.  449 U.S. at 396-97.  It did not address the standards for waiving privilege or work product.  FHFA also contends that the SLC Report discloses facts, rather than communications, and, thus, the public filing of the Report does not waive privilege as to witnesses' communications.  (11/6/12 Tr. at 114.)  To the contrary, the Report sets forth the sum and substance of what the witnesses told the SLC and counsel, including the witnesses' opinions and impressions, and uses the witnesses' statements to draw conclusions.  *See supra*.  FHFA cannot ask one court to rely on witness statements to dismiss derivative claims while at the same time asking this Court to protect the confidentiality of those statements.  In any event, under *Joy*, 692 F.2d at 893-94, the privilege waiver extends to all materials shared with the SLC, not merely those included in the publicly filed report.[2]

       Accordingly, Defendants respectfully request that this Court direct FHFA to produce the witness statements taken in the course of the SLC investigation.

---

[1] *See also Klein* v. *FPL Group, Inc.*, No. 02-20170, 2003 U.S. Dist. LEXIS 19979, at *38-39 (S.D. Fla. Sept. 26, 2003) (privilege waived as to "notes of witness interviews that pertain to the [SLC's] Report regarding the pursuit of this litigation"); *Ross* v. *Abercrombie & Fitch Co.*, No. 05-819 , 2010 U.S. Dist. LEXIS 7206, at *27 (S.D. Ohio Jan. 28, 2010) (filing SLC report in support of a motion to dismiss leads to waiver "most of the time, and that is simply one of the factors that a defendant in a derivative action must take into account when it files such a motion"); *see also Granite Partners* v. *Bearn Stearns & Co, Inc.*, 184 F.R.D. 49, 55 (S.D.N.Y. 1999) (work product protection for interview notes and memoranda waived by filing in related proceeding a bankruptcy trustee report quoting from and premised on those interviews).

[2] If the Court does not find waiver, Defendants will evaluate FHFA's privilege claims asserted in its privilege log.

The Honorable Denise L. Cote                                                         -3-

Respectfully,

/s/ Amanda F. Davidoff

Amanda F. Davidoff


cc:      All Counsel of Record (by e-mail)