```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
FEDERAL HOUSING FINANCE AGENCY, etc.,   :
                                        :
                          Plaintiff,    :    11 Civ. 6198 (DLC)
          -v-                           :
                                        :    OPINION & ORDER
GOLDMAN, SACHS & CO., et al.,           :
                                        :
                          Defendants.   :
                                        :
----------------------------------------X
```

APPEARANCES:

For Plaintiff Federal Housing Finance Agency:
Philippe Z. Selendy
Kathleen M. Sullivan
Adam M. Abensohn
Jordan A. Goldstein
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601

For Defendants:
Richard H. Klapper
Theodore Edelman
Michael T. Tomaino, Jr.
Jordan T. Razza
125 Broad Street
New York, NY 10004-2498

DENISE COTE, District Judge:

　　　This is one of sixteen actions currently before this Court in which the Federal Housing Finance Agency ("FHFA" or "the Agency"), as conservator for Fannie Mae and Freddie Mac (together, the "Government Sponsored Enterprises" or "GSEs"), alleges misconduct on the part of the nation's largest financial

institutions in connection with the offer and sale of certain mortgage-backed securities purchased by the GSEs in the period between 2005 and 2007.[1]  As amended, the complaints in each of the FHFA actions assert that the Offering Documents used to market and sell Residential Mortgage-Backed Securities ("RMBS") to the GSEs during the relevant period contained material misstatements or omissions with respect to the owner-occupancy status, loan-to-value ("LTV") ratio, and underwriting standards that characterized the underlying mortgages.  On the basis of these allegations, the complaints assert claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, l(a)(2), o; the Virginia Securities Act, VA Code Ann. § 13.1-522(A)(ii), (C); and the District of Columbia Securities

---

[1] The sixteen cases are: FHFA v. UBS Americas, Inc., et al., 11 Civ. 5201 (DLC); FHFA v. JPMorgan Chase & Co., et al., 11 Civ. 6188 (DLC); FHFA v. HSBC North America Holdings, Inc., et al., 11 Civ. 6189 (DLC); FHFA v. Barclays Bank PLC, et al., 11 Civ 6190 (DLC); FHFA v. Deutsche Bank AG, et al., 11 Civ. 6192 (DLC); FHFA v. First Horizon National Corp., et al., 11 Civ 6193 (DLC); FHFA v. Bank of America Corp., et al., 11 Civ. 6195 (DLC); FHFA v. Citigroup Inc., et al., 11 Civ. 6196 (DLC); FHFA v. Goldman, Sachs & Co., et al., 11 Civ. 6198 (DLC); FHFA v. Credit Suisse Holdings (USA), Inc., et al., 11 Civ. 6200 (DLC); FHFA v. Nomura Holding America, Inc., et al., 11 Civ. 6201 (DLC); FHFA v. Merrill Lynch & Co., Inc., et al., 11 Civ. 6202 (DLC); FHFA v. SG Americas, Inc., et al., 11 Civ. 6203 (DLC); FHFA v. Morgan Stanley, et al., 11 Civ. 6739 (DLC); FHFA v. Ally Financial Inc., et al., 11 Civ. 7010 (DLC); FHFA v. General Electric Co., et al, 11 Civ. 7048 (DLC).  The FHFA has also brought two similar actions, which are pending in federal courts in California and Connecticut.  See FHFA v. Countrywide Financial Corp., et al., No. 12 Civ. 1059 (MRP) (C.D. Cal.); FHFA v. Royal Bank of Scotland, No. 11 Civ. 1383 (AWT) (D. Conn).

Act, D.C. Code § 31-5606.05(a)(1)(B), (c).  In six of the cases, including this one, the Agency has also asserted claims of fraud and aiding and abetting fraud against the entity defendants under the common law of New York State (the "Fraud Claim Cases").  As pleaded, these fraud claims attach to each of the three categories of misstatements upon which the plaintiff's securities law claims are based.

The Court has already issued several Opinions addressing motions to dismiss in other cases brought by the FHFA.[2]  Familiarity with those Opinions is assumed; all capitalized terms have the meanings previously assigned to them.

Following this Court's decision of the motion to dismiss in FHFA v. UBS, discovery began in all of the coordinated cases.  Briefing of defendants' motions to dismiss in the remaining fifteen cases has occurred in two phases, with the motions in this case and the other Fraud Claim Cases becoming fully submitted on October 11, 2012.  The motions in the remaining nine cases were fully submitted November 9, 2012.  Depositions are to begin in all cases in January 2013, and all fact and

---

[2] Federal Housing Finance Agency v. UBS Americas, Inc. et al., 858 F. Supp. 2d 306 (S.D.N.Y. 2012) ("UBS I"); Federal Housing Finance Agency v. UBS Americas, Inc., et al., No. 11 Civ. 5201 (DLC), 2012 WL 2400263 (S.D.N.Y. June 26, 2012) ("UBS II"); Federal Housing Finance Agency v. JPMorgan Chase & Co., et al., No. 11 Civ. 7188 (DLC), 2012 WL 5395646 (S.D.N.Y. Nov. 5, 2012) ("Chase"); FHFA v. Merrill Lynch & Co., No. 11 Civ. 6202 (DLC), 2012 WL 5351188 (S.D.N.Y. Nov. 8, 2012) ("Merrill"); FHFA v. Deutsche Bank, No. 11 Civ. 6192 (DLC), slip op. (Nov. 12, 2012).

expert discovery in this matter, 11 Civ. 6198 (DLC), must be concluded by December 6, 2013.  Trial in this matter is scheduled to begin on September 29, 2014 as part of the third tranche of trials in these coordinated actions.

## DISCUSSION

This case concerns RMBS Certificates allegedly purchased by the GSEs between September 2005 and October 2007.  Each of the GSE Certificates pertains to one of 40 securitizations offered for sale pursuant to one of eight shelf-registration statements.  The lead defendant is Goldman Sachs & Co.  Various corporate affiliates of Goldman Sachs and associated individuals are also defendants.  Goldman Sachs affiliates served as lead underwriter for all 40 of the securitizations at issue, as sponsor for 36 of them, and as depositor for 35 of those.  Each individual defendant signed one or more of the Offering Documents.

Defendants' motion presses a number of arguments that are also pressed by other defendants in these coordinated actions, some of which have been addressed by this Court's previous Opinions.  The Court hereby adopts by reference the reasoning and, to the extent they are relevant here, the rulings of those prior Opinions.  All capitalized terms have the meanings previously assigned to them.

I.  Adequacy of Fraud Allegations

As in other cases filed by this plaintiff, defendants' motion to dismiss devotes particular attention to the adequacy of the FHFA's allegations in support of its fraud claims.  To be sure, each of these coordinated actions must be considered on its own bottom.  The roles of these defendants in the RMBS securitization process and their familiarity with it differ from those of defendants in other cases in material respects.  The plaintiff's allegations in support of its fraud claims differ accordingly.  Nonetheless, an independent review of the plaintiff's allegations in this case compels an outcome similar to those this Court has reached in previous Opinions in this litigation.

As in Chase, the facts alleged in the Amended Complaint are sufficient to plead fraud with respect to the Offering Materials' representations regarding mortgage-underwriting standards.  With respect to the scienter component of FHFA's fraud claims based on LTV and owner-occupancy information, however, the Amended Complaint relies almost entirely on the disparity between the statistics reported by the defendants and the results of the Agency's own analysis.  As explained in previous Opinions, without additional support, this disparity is insufficient to allege fraudulent intent with the specificity required by Rules 8(a) and 9(b), Fed. R. Civ. P.  Merrill, 2012

5

WL 5451188, at *2.[3]  Accordingly, the defendants' motion to dismiss is granted with respect to the plaintiff's fraud claims based on LTV and owner-occupancy reporting.

II.  Scope of Common Law Fraud Liability

The motion to dismiss raises a single issue that has not been addressed in prior Opinions in this litigation.  Defendants argue that FHFA's fraud claims against Goldman Sachs must be dismissed with respect to the four securitizations for which Goldman acted only as an underwriter, because it cannot be said that the company exercised ultimate control over the contents of the Offering Documents that it used to solicit the GSEs' purchase of the securities.  This proposition is both factually and legally dubious.  As a factual matter, Goldman's assertion that it lacked control over the contents of the prospectus supplements is difficult to square with the fact that the bank's name is prominently displayed on each of them, at bottom of the cover page and set off from the surrounding text.  As a legal matter, New York law imposes broad primary liability for fraud.  Directors and officers, for example, "may be held individually

---

[3] The Amended Complaint seeks to buttress its showing of scienter with regard to LTV representations in particular by alleging that Goldman knew of the falsity of the underlying appraisals by virtue of its role as a sponsor and depositor of many securitizations, which allegedly offered it a "unique window into the quality of the underlying loans."  But the plaintiff pleads no facts to establish the Goldman employees knew specifically of appraisal problems at the originators.

liable if they participated in or had knowledge of the fraud, even if they did not stand to gain personally." Polonetsky v. Better Homes Depot, Inc., 760 N.E.2d 1274, 1278 (N.Y. 2001). Defendants argue, however, that a recent decision by the Supreme Court addressing the scope of liability under SEC Rule 10(b)-5 supports their argument.

In Janus Capital Group, Inc. v. First Derivative Traders, 131 S. Ct. 2296 (2011), the Supreme Court considered whether an investment advisor could be held liable in a private cause of action under SEC Rule 10(b)-5 for statements included in a prospectus it prepared on behalf of its client mutual fund. The rule prohibits "mak[ing] any untrue statement of a material fact" in connection with the purchase or sale of securities. 17 CFR § 240.10b–5 (2010). A defendant's liability thus turns, in part, on whether he "made" the material misstatements at issue within the meaning of the rule. In concluding that the investment advisor could not be said to have "made" the statements included in the challenged prospectus, the Court reasoned that

> [f]or purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not "make" a statement in its own right. One who prepares or publishes a statement on behalf of another is not its maker. . . . Even when a speechwriter drafts a speech, the content is entirely within the control of

7

>     the person who deliver it.  And it is the speaker who
>     takes credit--or blame--for what is ultimately said.

Janus Capital, 131 S. Ct. at 2302.

The Court's avowedly "narrow" holding with regard to the scope of liability under Rule 10(b)-5 was driven by a number of considerations that are inapplicable to common law fraud claims like those asserted here.  First, the Court emphasized repeatedly that its decision was compelled, in part, by "[c]oncerns with the judicial creation of a private cause of action," which require giving "narrow dimensions" to private rights under Rule 10(b)-5.  Id.  New York's fraud cause of action, however, is not a judicial gloss on a legislative enactment, but rather a right that arises out of the common law unencumbered by the separation-of-powers concerns that counsel judicial caution in the context of Rule 10(b)-5.

For similar reasons, the Supreme Court's conclusion that "[o]ne who prepares or publishes a statement on behalf of another is not its maker," reached after a rigorous survey of dictionary definitions, id. 2302-03, is of little relevance here, where there is no statutory text to parse.  Indeed, New York courts sometimes omit the term "made" altogether when reciting the elements of common law fraud.  New York University v. Continental Ins. Co., 662 N.E.2d 763, 769 (N.Y. 1995).

8

The holding in Janus was also driven by the fact that "[a] broader reading of 'make,' including persons or entities without ultimate control over the content of a statement, would substantially undermine" Supreme Court precedent holding that Rule 10b-5's private right of action does not include suits against aiders and abettors.  Janus, 131 S. Ct. at 2302 (citing Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N. A., 511 U.S. 164 (1994)).  But no such precedent exists under New York law; to the contrary, the availability of aiding and abetting liability in common law fraud actions is well established.  See, e.g., Stanfield Offshore Leveraged Assets, Ltd. v. Metropolitan Life Ins. Co., 883 N.Y.S.2d 486, 489 (App. Div. 2011).

In light of these distinctions, there is no reason to believe that the Supreme Court's holding in Janus will cause New York to retreat from its long-held position regarding the scope of common law fraud liability.  Given this conclusion, the Agency has adequately pleaded a fraud claim against Goldman Sachs as an underwriter even without an allegation that Goldman Sachs had "ultimate authority" over the contents of the Offering Documents for the four securitizations.

CONCLUSION

The defendants' July 13 motion to dismiss is granted with respect to the plaintiff's claims of owner-occupancy and LTV-ratio fraud and denied in all other respects.

SO ORDERED:

Dated:  New York, New York
        November 12, 2012

_____
DENISE COTE
United States District Judge