November 5, 2012

**VIA ELECTRONIC MAIL**

The Honorable Denise L. Cote
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1610
New York, NY 10007-1312

    Re:    <u>FHFA Actions</u>

Dear Judge Cote:

    We write on behalf of Plaintiff Federal Housing Finance Agency ("FHFA") to submit a report regarding the status of the parties' meet-and-confer sessions since October 15, 2012 in the FHFA Actions, in accordance with the Court's directive at the conference held on October 15, 2012 and in its Order of October 18, 2012, and to supplement the status report submitted by FHFA on October 18, 2012.

    In summary, following multiple meet-and-confer sessions with all Defendants as a group and multiple meet-and-confer sessions with each individual Defendant:

    (1) FHFA has reached an impasse with all Defendants regarding a schedule for exchanging expert reports regarding loan reunderwriting;
    (2) FHFA is at an impasse with UBS alone about the adequacy of its post-closing custodian list and searches;
    (3) most Defendants have agreed to produce testimony from RMBS-related investigations and litigations, but FHFA is at an impasse with Deutsche Bank and HSBC about restrictions they are applying to their productions;
    (4) all parties have agreed upon a loan file stipulation and proposed order;
    (5) per FHFA's prior status report, most Defendants have agreed to produce the loan identification numbers of their due diligence loans by November 7, 2012;
    (6) all parties have memorialized in a stipulation and proposed order their agreement to narrow the scope of Defendants' third-party subpoenas served on originators, and have agreed that subpoenaed due diligence firms and ratings agencies prioritize certain productions; and
    (7) at FHFA's request, the parties have commenced regular meet-and-confer sessions regarding the status of third-party productions; subject to some interruptions due to Storm Sandy, those meet and confer sessions have been taking place daily.

We addressed in prior correspondence to the Court dated October 29, 2012, FHFA's request for leave to move for a protective order seeking withdrawal of subpoenas served by the Bank of America ("BoA") Defendants upon the Securities and Exchange Commission ("SEC") and upon counsel for Patricia Cook. We submit separately letters addressing proposals made by UBS and by other Defendants regarding the schedule for exchanging expert reports regarding reunderwriting. Also in separate letters to the Court today, we respond to applications that Defendants have submitted or have told us that they intend to submit today, in which they attempt to re-litigate the adequacy of FHFA's search efforts, specifically: (1) the request of

Defendants BoA, Merrill Lynch, HSBC, Ally Securities, Ally Financial, JP Morgan, and UBS that FHFA be compelled to expand the date range of its electronic search and apply additional search terms (raised by letter of October 26, 2012); (2) Defendants' request that FHFA be compelled to add still more individuals to its list of 112 custodians; and (3) Defendants' third request that FHFA be compelled to produce materials relating solely to the GSEs' single-family business.[1]

For the reasons that follow, with respect to the disputes addressed in this letter, FHFA respectfully requests that: (1) Defendant UBS be ordered either to search all of its custodians to the date of the complaint or to provide further information to FHFA (as described further below), without conditioning the furnishing of its information on the receipt of additional information from FHFA; (2) that Defendant Deutsche Bank be ordered not to limit its production of testimony and exhibits to productions from investigations and cases in which the securitizations at issue overlap with the Securitizations at issue in their FHFA Actions, and that Defendants Deutsche Bank and HSBC be ordered not to limit their productions of testimony and exhibits to testimony given by their custodians in these Actions only. Further, if BoA and Merrill Lynch, as currently expected, seek to expand the scope of FHFA's proposed production of testimony and exhibits to testimony pertaining solely to the GSEs' single-family businesses, that application should be denied.

**Schedule of Expert Loan-Reunderwriting Reports**

While FHFA and Defendants continue to meet and confer regarding most aspects of the schedule for reunderwriting reports, FHFA and Defendants have reached an impasse as to the schedule for such reports in the *UBS* and non-*UBS* actions. FHFA addresses that impasse in separate letters to the Court, submitted today.

**Custodians and Time Frames for Originator Searches**

In FHFA's view, during meet-and-confer sessions held in the past three weeks, all Defendants but UBS have taken significant steps to comply with this Court's directives at the October 15 conference that they ensure a "meaty" production of post-closing documents, including the four topic areas identified in FHFA's October 9, 2012 letter to the Court (the "October 9 Letter") (Ex. 1),[2] and from custodians at senior levels in the Defendant entities. (*See* Oct. 15, 2012 Hrg. Tr. at 69-70 (Dkt. No. 223).) Prior to the October 15 conference, Defendants had collectively agreed to post-closing searches of 23 custodians; as of today, Defendants have collectively agreed to such searches, including Originator Searches, of over 200 custodians, including over 70 new custodians. Many Defendants have also designated for the first time senior executives and managers—including Chief Risk Officers and Credit Risk Officers—of the

---

[1] As to the last items 2 and 3 listed in the text above, FHFA is not yet aware of which Defendants are raising which issues, although it sought the information.

[2] This Court held that each of the four categories of documents identified by FHFA in the October 9 Letter to the Court was "an appropriate ground for post-closing discovery": (i) performance of the Securitizations or Mortgage Loans (including ratings downgrades, defaults, and delinquencies); (ii) poor underwriting practices (including in areas of appraisal, DTI, LTV, etc.); (iii) Defendants' retrospective realizations of risks created by such practices; and (iv) loan repurchase requests made by Defendants or submitted to them, which will reveal Defendants' interpretations of originators' underwriting guidelines. (*See* Oct. 15, 2012 Hrg. Tr. at 70:1-70:4 (referring to Ex. 1 at 1).)

2

seniority referenced by the Court (and at a level equivalent to GSE and FHFA personnel who have appeared on FHFA's custodian lists since July). Many Defendants have agreed to search documents of committee members (including, for example, committees bearing names such as Firmwide Risk Committee and Securities Division Risk Committee), or of other committees or working groups described to have information about surveillance of performance of the Securitizations and reactions thereto, retrospective reviews of risk following onset of the mortgage crisis, repurchases, and departures from underwriting guidelines.[3]

UBS has stood apart from the other Defendants in refusing to furnish information sufficient to meet the burden the Court imposed on October 15 of "***mak[ing] a showing*** that a more limited search [than searching all custodians to the date of the complaint] would be sufficiently productive," *i.e.*, that a more limited search would result in a significant post-closing production of documents related to the four topics identified in the October 9 Letter, including of high-level executives. (Oct. 15, 2012 Hrg. Tr. at 69:24, 70:5-7 (emphasis added).) Other Defendants shared information demonstrating the additional due diligence they had performed regarding the adequacy of their custodian lists and post-closing searches, and explained the reasons that they expected application of their custodian lists and time frames, as revised, to result in a significant post-closing production in the four subject areas identified in FHFA's October 9 Letter.[4] UBS, by contrast, stonewalled until last Friday evening. It has emerged that UBS's position is that it need not provide information sufficient to demonstrate the adequacy of its post-closing custodians unless FHFA shares "reciprocal" information about FHFA's custodian list. (Ex. 2 at 2 (11/2/12 Letter from Fumerton to Dunlap).)

Specifically, while UBS is currently offering to search 22 of its 81 custodians during the post-closing time frame, and has provided titles for these purported post-closing custodians,[5] it has refused to provide custodian-specific information about job responsibilities, thereby frustrating FHFA's ability to gauge the adequacy of UBS's custodian list (or of UBS's diligence). During two weeks of meet-and-confer sessions, UBS also refused to describe which of its 22 post-closing custodians had responsibilities for, and thus could be expected to have documents regarding, each of the four topic areas identified in FHFA's October 9 Letter; then, in its letter of last Friday evening, UBS included a chart correlating 17 of its existing 22 post-closing custodians to all four areas, using a number code. (*Id.* at 2-4.) It has since refused to discuss the categorizations it has made.[6] UBS's approach of providing limited, conclusory information, and then holding hostage any further disclosures to the receipt of additional information from FHFA, is far from the discussion in which most other Defendants have

---

[3] This Court stated on October 15 that "if [there are] executives, people with management responsibilities, people who are members of special committees and make reports for the institution with fact finding about what happened, in a way that could be binding on the defendants at trial or certainly highly relevant to a jury's analysis of the defenses that are being put forward at trial, ***they have to be searched***." (Oct. 15, 2012 Hrg. Tr. at 70:8-70:13 (emphasis added).)

[4] Citi has provided much of its information via email since Storm Sandy but has offered to provide further information and to meet and confer by the end of this week.

[5] The titles provided are, for example, "Director/Structurer," or "Associate Director, Transaction Manager" and thus are not illuminating. The annotated custodian list UBS provided on October 17, in response to this Court's order, provided no additional information regarding post-closing custodians. *See* Ex. 6.

[6] It is presumptively not credible that 17 people shared responsibilities in all four of these varied post-closing areas, unless their responsibilities are construed extremely loosely.

engaged, and has prevented FHFA from making determinations, as it has with most other Defendants, that UBS has conducted adequate diligence and has expanded the scope of its post-closing searches sufficiently to ensure a meaningful post-closing production. (*See* Oct. 15, 2012 Hrg. Tr. at 70:4-7.)

UBS also has failed to make a serious effort to name senior executives or "people who are members of special committees" who engaged in fact-finding about causes of the mortgage crises, including potential departures from sound origination practices. (*Id.* at 70:8–13.) Aside from two Managing Directors (one of whom is an Individual Defendant) and one Executive Director, the other UBS post-closing custodians are lower-level employees, such as Associate Directors and Managers.[7] UBS also has not named as a custodian any Chief Risk Officer (as have other Defendants and FHFA), nor has it demonstrated that it has conducted diligence to identify senior executive or risk committees who should *not* be on its custodian list. This is despite statements in its annual reports that UBS created a working group to examine its risk exposure following the financial crisis and that it manages risk at the highest levels, including through the Board of Directors, a Group Executive Board, a Risk Sub-Committee, a Credit Risk Officer, a Chief Financial Officer, and the Chief Executive Officer of each business unit. (Ex. 3 at 6-7, 36 (UBS 2007 annual report).) When FHFA has undertaken to identify UBS individuals, departments, and committees that appear to be relevant to the post-closing topics specified in its October 9 Letter (despite having no burden to do so), UBS has rejected most of the proposals summarily in writing and refused to discuss the reasons. (*E.g.* Ex. 4 at 2 (10/24/12 Letter from Fumerton to Dunlap) ("we believe many of the departments and committees identified in your letter are irrelevant").

UBS's purported justification for withholding information—that FHFA has not shared "reciprocal" information—fails for several reasons. First, it was Defendants, not FHFA, who were put to the burden of demonstrating the adequacy of their custodian lists and searches to yield meaningful post-closing productions, including of documents of high-level executives, if they wished not to apply Originator Searches to *all* of their custodians. (*See* Oct. 15, 2012 Hrg. Tr. at 70:5-70:7.) Second, the reason that Defendants' custodian lists and post-closing searches had come under scrutiny was because their efforts were demonstrably paltry. By contrast, since August, FHFA has made clear that it is searching 66 of its 112 custodians through the date of the complaint using Originator Searches. To date it has reviewed millions of non loan-file documents, just from that period. (*See id.* at 62:5-7.) It appears that this figure will exceed the total number of non loan-file documents *produced* by many Defendants.[8] FHFA has named numerous senior officials as custodians, including 12 Fannie Mae and 20 Freddie Mac custodians at or above the Vice President level and 33 custodians at the Director level. FHFA had also

---

[7] In contrast, Merrill Lynch has named as post-closing custodians one Managing Director, three Directors, five Vice Presidents, a President and CEO of originator and subsidiary First Franklin, and Bank of America has named three Managing Directors, six Vice Presidents, and the Chief Risk Officer. Goldman Sachs has named six Vice Presidents, three Managing Directors, and the two individuals that served as the Head of the Mortgage Department during the post-closing time period.

[8] FHFA has produced over a half million documents to date, far more than UBS.

4

named numerous senior risk officers,[9] including naming Chief Risk Officers[10] and CFOs or Controllers[11] as post-closing custodians.

The information that UBS claims FHFA is under an obligation to produce, moreover, is information of the type that FHFA began producing *months* ago.[1] Attached as Exhibit 5 are charts that aggregate some of the information that FHFA provided, in writing, in custodian lists dated August 28, 2012 and July 31, 2012 for the GSEs' post-closing custodians. (The lists were attached as Exhibit 4 to FHFA's October 18, 2012 status report.) When compared to Exhibit 6, which is the "clarified" custodian chart UBS furnished for the first time on October 17, 2012, the superior quality of the information provided by FHFA about the GSEs' post-closing custodians is apparent. The titles and functions of the GSEs' custodians—for example, "PLS Surveillance" or "Credit Risk Management" or "Credit Risk Policy" or "Interim Chief Risk Officer"—make clear the GSEs' custodians' links to the four post-closing areas identified in FHFA's October 9 Letter. FHFA also provided a description of "responsibility" that furnished meaningful information beyond the custodian's title, related custodians to each other, and demonstrated the due diligence that FHFA had conducted as to the adequacy of its list.

In sum, the tit-for-tat in which UBS is attempting to engage is improper, and it should be ordered, at a minimum, to provide the same information that other Defendants have seen fit to provide. FHFA thus respectfully requests this Court order UBS either to apply Originator Searches to all of its custodians to the date of the complaint; or by November 8, 2012 to (1) provide full job descriptions and dates of termination for all of its custodians;[12] (2) identify those UBS current and former employees (including senior executives, risk officers, and committee members, whether currently custodians or not) who are likely to have documents in the four post-closing categories; (3) provide explanations of why any of those individuals are not custodians whose files are being searched through the date of the complaint; (4) provide descriptions of the responsibilities held by the post-closing custodians on UBS' custodian list sufficient to explain why searches of their documents are expected to yield a meaningful production of post-closing documents relating to the four topics specified in the October 9 Letter; and (5) to have its client certify in writing that its final custodian list is adequate to result in a meaningful production of post-closing documents, including documents relating to the four topics identified in the October 9 Letter.

**Production of Information re: Litigations and Investigations**

**Defendants' Productions**

While all Defendants have agreed to produce at least some deposition transcripts, declarations, and affidavits (all with exhibits) for at least some RMBS-related investigations or

---

[9]  At least four at Fannie Mae, including Chief Risk Officer, Vice President of Credit Risk Oversight, and the Executive Vice President of Capital Markets; and at least seven at Freddie Mac, including Chief Risk Officer, Chief Enterprise Risk Officer, and Senior Vice President of Credit Risk Oversight.

[10]  Enrico Dallavecchia and Mark Winer at Fannie Mae; Paige Wisdom at Freddie Mac.

[11]  Enrico Dallavecchia and Mark Winer at Fannie Mae; Paige Wisdom at Freddie Mac.

[12]  FHFA provided its list of the employment end dates for the post-closing custodians at Fannie Mae and Freddie Mac on November 4, 2012. UBS suggested that it would be amenable to a bilateral exchange, but that it would not be able to provide a firm commitment to do so in advance of today's submissions.

litigations to which they are a party, FHFA is at an impasse with a few Defendants with respect to the scope of their intended production.  Deutsche Bank is willing to produce such materials only from investigations or litigations in which the securitizations at issue overlap with one or more Securitizations at issue in these Actions.  Deutsche Bank and HSBC also propose to limit their prospective productions of testimony (productions of testimony that has not yet been given) to testimony given by individuals on their custodian lists in these Actions.[13]

      FHFA has agreed with the majority of Defendants not to limit the party's productions in these ways.  For example, FHFA has agreed with UBS, Credit Suisse, Goldman, and Citi to produce testimony from RMBS investigations and litigations, not limited to those in which Securitizations overlap (although discussions to finalize the lists of cases from which the parties will produce continue).  These Defendants have also agreed with FHFA to produce testimony and exhibits prospectively for the investigations and litigations on which they agree, for current and former employees, not just custodians.

      Deutsche Bank should be ordered not to limit the list of cases from which it will produce testimony to those in which there are securitizations that overlap with the Securitizations in *FHFA v. Deutsche Bank*, and Deutsche Bank and HSBC should be ordered to produce prospectively from RMBS investigations and litigations the testimony and exhibits of employees and former employees, not just custodians.  The reason is that the limitations Deutsche Bank and HSBC seek to impose arbitrarily restrict the production of relevant testimony.

      Deutsche Bank has not even attempted to argue that an RMBS case need be about the same securitizations as the Securitizations at issue in their case to be relevant.  Given that FHFA's claim is systematic abandonment of originators' underwriting guidelines, such an argument would be baseless.  Instead, Deutsche Bank has produced a list of 12 cases in which it has been sued on overlapping Securitizations and has maintained via email that production of testimony from those cases should be "more than sufficient" for FHFA.  The contention is specious because the touchstone is not sufficiency for FHFA's purpose, as judged by the Defendant, but relevance.  Nor is Deutsche Bank's winnowing of the investigations and cases in which it has been named neutral or without consequence.  Deutsche Bank is proposing *not* to produce testimony from another three dozen RMBS investigations and cases that have been publicly reported, including investigations by the Financial Crisis Inquiry Commission and the U.S. Senate Permanent Subcommittee on Investigations, an action by the Financial Industry Regulatory Authority, and a case brought by the U.S. Department of Justice last year, *United States v. Deutsche Bank AG, et al.*, No. 11 Civ. 2976 (S.D.N.Y. 2011).

      Neither Deutsche Bank nor HSBC, moreover, should be permitted to limit prospective productions to testimony given by custodians in these Actions.  Neither Defendant has even articulated a principled reason to restrict future productions in this way, and there is no basis for assuming that the only relevant testimony that will be given is by the custodians in these Actions.

---

[13] FHFA cannot supply a complete list of the Defendants that intend to apply one or more of these limitations to their production of testimony from investigations and litigations because Barclays, First Horizon, and Nomura initially told FHFA that they wished to see what other Defendants decided to do and discussions have not concluded because of lack of recent contact.

**FHFA's Production**

Defendants (to FHFA's knowledge, BoA and Merrill Lynch) claim inadequacy in FHFA's agreement to produce PLS-related transcripts, declarations, and affidavits from the cases and investigations that FHFA has identified as potentially related to the GSEs' PLS line of business. Defendants insist that FHFA produce all transcripts, declarations, and affidavits even though most relate exclusively to the GSEs' single family business. FHFA respectfully requests that the Court reject Defendants' effort to seek discovery into exclusively single-family related matters.

FHFA has identified for Defendants: (a) the investigations and civil cases in which FHFA or the GSEs were either a target or a party that potentially are related to the GSEs' PLS line of business,[14] (b) whether testimony was taken in those matters, (c) when they started, and (d) whether they are ongoing. FHFA will produce transcripts, declarations, and affidavits from the investigations and civil matters it has identified on an ongoing basis to the extent that the testimony relates to PLS. If a transcript relates to PLS in any portion, then it will be produced to defendants in its entirety, without redaction. FHFA further agreed to produce transcripts prospectively.

In limiting its production to PLS-related materials, unlike Deutsche Bank and HSBC, FHFA is drawing lines of relevance appropriately and consistent with the ruling that the Court made at the July 31, 2012 hearing, and reaffirmed on August 28, 2012, that FHFA need not produce information relating solely to the GSEs' single- or multi-family businesses. The subject of investigations and civil cases that FHFA identified is not PLS. Rather, they focus on specific misrepresentations that the GSEs' officers made about their respective exposure to subprime or Alt-A loans exclusively *in their single family line of businesses*. Accordingly, many of the transcripts, declarations, and affidavits in the identified matters relate solely to the GSEs' single family business.[15] For FHFA to produce some transcripts from the matters on its list while Defendants typically will produce all transcripts is appropriate. Unlike the matters that FHFA identified, which are only tangentially related to PLS, Defendants' investigations and cases each focus on their residential mortgage-backed securities, like those that the GSEs purchased and that form the basis of FHFA's claims in these actions.

Any effort by Defendants to seek to compel the disclosure of further information from the SEC Investigations should be rejected.

**Loan Files: Bates-Stamping and Manifests.**

The parties have reached an agreement regarding the parameters for production of loan files by parties, by parties acting as third parties, and by true third parties. A draft of that

---

[14] This list is attached as Exhibit 7.

[15] FHFA has informed Defendants that as an accommodation, and notwithstanding that *SEC v. Syron*, No. 11 CIV 9201 (S.D.N.Y. Dec. 16, 2011), and *SEC v. Mudd*, No. 11 CIV 9202 (S.D.N.Y. Dec. 16, 2011) do not appear on FHFA's list and that the GSEs are not a party to those cases, FHFA will produce transcripts of testimony given by current employees of the GSEs if they relate to PLS. No Defendant thus far has offered to produce testimony from a case in which it is a witness, rather than a party.

stipulation and proposed order is attached as Exhibit 8. The parties will submit an executed stipulation to the Court for entry as soon as possible.

**Production of Due Diligence Loan Numbers.**

Consistent with the Court's directive at the October 15 conference, most Defendants have agreed to produce a list of the loan identification numbers of the loans that were the subject of their due diligence efforts by November 7, 2012. Some Defendants have agreed to produce their lists sooner; for example, UBS produced the majority of its list on November 2, 2012. A few Defendants have indicated that they cannot produce full lists of their due diligence loans by November 7, 2012; FHFA continues to meet and confer with those Defendants about the production of those lists, and will report any issues to the Court.

**Stipulation re: Requests to Third Parties.**

As reported at the October 15 conference, the parties have reached agreement on a stipulation pursuant to which Defendants will narrow the scope of the subpoenas they have served on originators, and have agreed on the content of a letter that Defendants will send to third-party originators requesting them to prioritize the loans in FHFA's samples and the applicable underwriting guidelines. The parties expect to submit the stipulation and proposed order to the Court tomorrow. The parties are also negotiating a stipulation and proposed order setting forth a procedure to provide borrower information to third parties for the purpose of identifying relevant loan file materials that protects the confidentiality of the borrower information. Finally, the parties have reached agreement to request due diligence firms and ratings agencies to prioritize the production of documents relating to work performed on the securitizations and mortgage loans at issue in these actions.

**Daily Meet-and-Confer Sessions Regarding Third-Party Productions.**

At the Court's suggestion, FHFA proposed that the parties meet and confer regarding third-party production issues, and Defendants agreed. The parties are now having daily calls about these issues, and continue to meet and confer about them.

\*   \*   \*

In sum, the parties have made significant progress since the October 15 conference, but there remain a number of outstanding disputes. FHFA respectfully requests that the Court: (1) compel UBS to take the additional steps regarding post-closing document production described above and deny any application by UBS or any other Defendant to compel FHFA to provide further custodian-related information; (2) compel Defendants not to limit their productions of testimony from investigations and cases to those in which there are overlapping securitizations, and to produce prospectively the testimony and exhibits of employees and former employees, not just custodians; and (3) deny any application challenging FHFA's proposal to produce only transcripts of the testimony given in investigations and litigations relating at least in part to PLS.

FHFA further requests that that the Court grant a protective order compelling BoA to withdraw the subpoenas served on the SEC and counsel for Ms. Cook. It also respectfully submits that the Court should deny: (1) any challenges by Defendants to the adequacy of the

date range and search terms being applied in FHFA's electronic searches; (2) any attempt by Defendants to compel FHFA to add additional custodians; and (3) any attempt by Defendants to revisit this Court's rulings that FHFA need not produce material relating solely to the GSEs' non-PLS businesses.

Respectfully submitted,

| | |
|---|---|
| /s/ Philippe Z. Selendy | /s/ Richard A. Schirtzer |
| Philippe Z. Selendy | Richard A. Schirtzer |
| (philippeselendy@quinnemanuel.com) | (richardschirtzer@quinnemanuel.com) |
| QUINN EMANUEL URQUHART & SULLIVAN, LLP | Adam Abensohn (adamabensohn@quinnemanuel.com) |
| 51 Madison Avenue, 22nd Floor | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| New York, New York 10010 | 51 Madison Avenue, 22nd Floor |
| (212) 849-7000 | New York, New York 10010 |

*Attorney for Plaintiff Federal Housing Finance Agency in FHFA v. UBS Americas, Inc., FHFA v. JPMorgan Chase & Co., FHFA v. Deutsche Bank AG, FHFA v. Citigroup Inc., and FHFA v. Goldman, Sachs & Co.*

*Attorney for Plaintiff Federal Housing Finance Agency in FHFA v. HSBC North America Holdings, Inc. and FHFA v. Nomura Holding America, Inc.*

/s/ Christine H. Chung
Christine H. Chung
(christinechung@quinnemanuel.com)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

/s/ Manisha M. Sheth
Manisha M. Sheth
(manishasheth@quinnemanuel.com)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

*Attorney for Plaintiff Federal Housing Finance Agency in FHFA v. First Horizon National Corp., FHFA v. Bank of America Corp., and FHFA v. Credit Suisse Holdings (USA), Inc.*

*Attorney for Plaintiff Federal Housing Finance Agency in FHFA v. UBS Americas, Inc., FHFA v. JPMorgan Chase & Co., FHFA v. Barclays Bank PLC, FHFA v. Citigroup Inc., and FHFA v. Merrill Lynch & Co., Inc.*

          /s/ Michael Hanin
Marc E. Kasowitz (mkasowitz@kasowitz.com )
Hector Torres (htorres@kasowitz.com)
Christopher P. Johnson (cjohnson@kasowitz.com)
Michael Hanin (mhanin@kasowitz.com)
Kanchana Wangkeo Leung (kleung@kasowitz.com)
KASOWITZ, BENSON, TORRES &
 FRIEDMAN, LLP
1633 Broadway
New York, NY 10019

*Attorney for Plaintiff Federal Housing Finance Agency in FHFA v. Ally Financial Inc., FHFA v. General Electric Company., FHFA v. Morgan Stanley, and FHFA v. SG Americas, Inc.*