# EXHIBIT A

```
                                                                    1
       C7JPUBSC              TELEPHONE CONFERENCE
 1     UNITED STATES DISTRICT COURT
 2     SOUTHERN DISTRICT OF NEW YORK
 2     ------------------------------x
 3                                     11 CV 05201 (DLC)
 3     FEDERAL HOUSING
 4     FINANCING AGENCY                11 CV 06188 (DLC)
 4                                     11 CV 06189 (DLC)
 5                                     11 CV 06190 (DLC)
 5              v.                     11 CV 06192 (DLC)
 6                                     11 CV 06193 (DLC)
 6     UBS AMERICAS INC.               11 CV 06195 (DLC)
 7     and others and its              11 CV 06196 (DLC)
 7     related cases                   11 CV 06198 (DLC)
 8                                     11 CV 06200 (DLC)
 8                                     11 CV 06201 (DLC)
 9                                     11 CV 06202 (DLC)
 9                                     11 CV 06203 (DLC)
10                                     11 CV 06739 (DLC)
10                                     11 CV 06805 (DLC)
11                                     11 CV 07010 (DLC)
11                                     11 CV 07048 (DLC)
12     ------------------------------x
12                                                July 19, 2012
13                                                4:12 p.m.
13     Before:
14                       HON. DENISE COTE,
14
15                                                District Judge
15
16                            APPEARANCES
16
17     QUINN EMANUEL URQUHART & SULLIVAN, LLP
17         Attorneys for Plaintiff Federal Housing Finance Agency
18     CHRISTINE CHUNG, ESQ.
18     RICHARD SCHIRTZER, ESQ.
19     DAVID B. SCHWARTZ, ESQ.
19
20     KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP
20         Attorneys for Plaintiff Federal Housing Finance Agency
21     KANCHANA LEUNG, ESQ.
21
22
22
23
24
25
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

1    loans plaintiff claims were defective, and just as importantly,
2    we do not know the manner in which plaintiff claims they're
3    defective.
4              There are a myriad ways in which plaintiff could
5    allege the loan was not underwritten in accordance with
6    underwriting guidelines.  It could be missing documentation or
7    a FICO score that's too low, but we can't prepare our defenses
8    without knowing the basis for plaintiff's claims, and this is a
9    review that plaintiff predicated its action on.
10             To the extent in its letter from yesterday, plaintiff
11   indicated, well, we may not rely on that same review to
12   prosecute its claims.  If that's the case, you know, we need
13   the sample and the results of whatever review they're
14   purporting to rely on as soon as possible, as well.
15             As your Honor just indicated, and as your Honor
16   indicated during the June 13th conference, we should have
17   rolling expert disclosures.  We have repeatedly asked plaintiff
18   at meet and confers over the last several weeks, for a date
19   certain by which plaintiff will identify the specific loans by
20   loan ID, and any sample it intends to use, the loans within
21   that sample that it claims are defective and the manner in
22   which each such loan is purportedly defective.
23             If we have that information, if plaintiff agrees to
24   provide that information, defendants will respond on a
25   loan-by-loan basis, and then the parties can narrow the

1    disputed loans at issue for the rest of discovery and for
2    expert discovery.  The loans at issue, meaning the loans that
3    plaintiff intends to rely on to prosecute its claims.
4             So in terms of timing with respect to the forensic
5    review that they've alleged, that's all been done, and we think
6    we're entitled to at least the results of those reviews or any
7    report.  And after we've received that, we can think about how
8    to potentially narrow the request.
9             I would point out for your Honor that the only cases
10   that plaintiff cites that address these issues in footnote one
11   of their submission, in both of those cases plaintiff had
12   already produced to defendants either the final report or the
13   results of the forensic review, i.e. the specific loans it was
14   claiming were in breach and the specific manners in which they
15   were breached.  That's the information we're asking for here in
16   the first instance, and we don't see any reason why it
17   shouldn't be produced right away.
18            THE COURT:  Well, Mr. Fumerton, I have a couple of
19   reactions to that.  Whatever review the plaintiffs did at the
20   time they were preparing their complaint would not limit their
21   ability to present an argument at trial.  So in a way, it's
22   sort of a wasted effort for you, even if you had access to this
23   review, to spend much time on it because the plaintiffs would
24   be entirely within their rights to do a completely new review
25   of different loan files with completely different numbers and

1    present that evidence at trial.
2              Let me ask you this question, Mr. Fumerton.  How long
3    have the plaintiffs had the loan files for the supporting loan
4    groups that are at issue in the UBS case?
5              MR. FUMERTON:  Your Honor, to address that question,
6    we don't know what loan files plaintiff has.  We've repeatedly
7    asked plaintiff for the loan files in the supporting loan
8    groups in the UBS action and they have not produced them to us
9    yet.  UBS does not maintain these loan files as a matter of
10   course; so we don't have them.  We've sought from third parties
11   the loan files, the -- sorry.  We sought from plaintiff on
12   May 22nd all of the loan files they have, and we served
13   third-party discovery requests for all the loan files from
14   third parties.
15             So if those plaintiffs and UBS are trying to get all
16   of the loan files from the supporting loan groups, we don't
17   have them in our possession.  We know that plaintiff does have
18   some because they've conducted this review, and we've asked
19   them for it, but we haven't received them to date.
20             If I could just, your Honor, address the point you
21   just made, which is, you know, if plaintiff is going to change
22   its methodology, you know, we don't need to see the results of
23   the review they allege in their complaint.  We actually think,
24   you know, we are entitled to see the result of that review
25   because to the extent the review they conducted or the results

1    of that review, which they've predicated their entire claims
2    on, as your Honor recognized in the motion to dismiss decision,
3    we think we're entitled to see what that methodology was, to
4    the extent it contradicts the methodologies plaintiff intends
5    to use down the line.
6             We think that's very fertile ground for
7    cross-examination and, again, we think we're entitled to that
8    information because plaintiff expressly relied on those very
9    reviews and the results of those very reviews to survive
10   motions to dismiss.
11            THE COURT:  Well, Mr. Fumerton, thank you for those
12   comments, but I think -- and, of course, Ms. Chung can give me
13   the perspective of the FHFA, but it seems to me in knowledge in
14   supervising civil litigation, that the defendants are entitled
15   to develop an evidentiary basis through discovery beyond that
16   on which they premise their pleadings.
17            And I'm happy to meet with counsel, if you're at
18   loggerheads, in working out a more detailed schedule for the
19   conduct of expert discovery.  But as we discussed at the last
20   conference, the position of the plaintiff, in response to the
21   defendants' position, was such that there was no agreement that
22   any subset of loan files from the supporting loan groups would
23   be the basis of the trial of the claims in this case.
24            As a result, despite the burden and expense it will
25   place on all parties, my conclusion from that conference is

 1      that you were all in agreement, you had to have access to a
 2      hundred percent of the loan files from the supporting loan
 3      groups and so unless and until the plaintiffs and defendants
 4      have access to that complete universe, based on your current
 5      positions with each other, that it is impossible to do any
 6      sampling, at least from the defendants' position, meaningful
 7      sampling to which you're willing to restrict yourself without
 8      access to all of the loan files for the supporting loan groups.
 9               It would be impossible to expect either defense
10      counsel's expert or plaintiff counsel's expert to come up with
11      the analysis on which they're going to rely at trial.  Now, if
12      your position is chain ming and you're happy to restrict the
13      trial in the UBS case to the loan files that the FHFA currently
14      has in its possession and require it then to produce an expert
15      report on, you know, a prompt basis, I think we're talking
16      about a different kind of schedule.
17               So let me say I'll think about these issues, but
18      preliminarily, I'm not going to require the FHFA to produce its
19      review that it used of loan files for draft complaints in this
20      litigation before it would produce the expert report on which
21      it's going to rely at trial for its analysis of, among other
22      things, a failure to comply with underwriting guidelines.  I'll
23      look carefully at my own research and, of course, anything the
24      parties have cited in their letters with respect to whether it
25      even needs to produce its review that it used for the

 1   complaints at that time.
 2            Let's turn to the second issue -- Well, before we do
 3   that --
 4            MR. FUMERTON:  Your Honor, I can address two points
 5   quickly, please?
 6            THE COURT:  Is this Mr. Fumerton?
 7            MR. FUMERTON:  It is.  I'm sorry.  Rob Fumerton from
 8   Skadden, Arps.
 9            With respect to the results of the forensic review
10   alleged in the complaint, we're aware of no authority that
11   would allow them, to the extent that they've waived that work
12   product privilege, and we think that it's clear that they have
13   by placing at issue in the complaint, we're of aware of no
14   authority to delay production of materials that they already
15   have.
16            We're not saying that the plaintiff isn't entitled to
17   develop its claims or to develop further methodologies
18   throughout discovery.  We're not taking that position at all.
19   We're saying to the extent that they already performed this
20   work and put it at issue in the complaint, we're entitled to it
21   now.
22            Second, with respect to sampling, the defendants'
23   position hasn't changed.  We do think it's inappropriate for
24   all the reasons we talked about at the last conference, in our
25   submission, to restrict the universe of loan files at this

1  stage.  Plaintiff, however, has indicated to us that it intends
2  to prosecute its claims through the use of the sample.
3  Plaintiff's counsel even informed us, informed defendants, that
4  it would, quote, roll out these samples so the prioritization
5  of loan file production could include the loans in their
6  sample.
7           What we're saying here is, look, we, obviously, need
8  access or potentially need access to loan files outside of
9  plaintiff's sample to develop various defenses, including
10 causation and everything we've submitted last month.  But what
11 we are in favor of, which your Honor has expressed, you know, a
12 view of at the last conference is to set a schedule early for
13 plaintiff to identify the sample that it has already informed
14 us it is using, identify the loans in that sample that claims
15 are defective and the manner in which they're defective.
16          And then we can respond, but we can't respond until we
17 have that additional information because we don't know how
18 plaintiff attempts to prosecute these claims.  We don't know
19 what loans plaintiff intends to rely on, and we don't know the
20 breaches that plaintiff is going to affirm to prove.  Once we
21 have that information, we can respond.
22          THE COURT:  Okay.  And have you made a proposal,
23 Mr. Fumerton, with what you think is an appropriate schedule
24 here?
25          MR. FUMERTON:  We are -- We've asked plaintiff

1    repeatedly at meet and confer if they would agree to a date
2    certain.  They said they would not, but we are absolutely
3    prepared to propose a specific date, specific deadlines for the
4    plaintiff to provide the samples and the manner in which such
5    loans are defective, and then respondents will respond at least
6    on behalf of UBS on a loan-by-loan basis.  So we're absolutely
7    prepared to present a schedule to the Court.
8             THE COURT:  So, Miss Chung, is there any reason why
9    these meet and confers can't meet and the parties agree on a
10   schedule and, if necessary, then meet with me the following
11   week?
12            MS. CHUNG:  Your Honor, no, but I think I would like a
13   chance to respond.  Your Honor rightly pointed out that there
14   are sort of two groups of loans at issue.  There's a group of
15   loans that were reviewed for the complaint.  There is a group
16   of loans that are going to be samples, at least, you know, we
17   do plan to propose a sample.
18            I can tell the Court in terms of what Mr. Fumerton is
19   proposing, we're going to identify next week to him the loans
20   that we are going to be looking at in both of those groups.  We
21   said in our letter to the Court that we're going to be sending
22   to all defendants a list of the loans, by loan number, that we
23   reviewed in getting the complaint.
24            To the extent that their concern is we don't have
25   notice right now of which loans you were looking at in that

1    group, they're going to have that.  They're going to have most
2    of that next week.  It might carry over until the week after
3    that, but we're going to be able to identify all those loans to
4    them in very short order.
5             In the second group of loans that Mr. Fumerton is
6    talking about, I want to be clear because your Honor is making
7    a proposal.  This has been the topic of many, many meet and
8    confers between the plaintiff and defendants.  In our view, it
9    has two separate sets.  We are willing to identify, and I said
10   this at the outset, the loans that we're going to be looking at
11   as samples and we're generating the sampling protocols, but
12   that has been limited by, among other things, our inability or
13   suffice -- let me put it in a positive way.
14            The parties have been working together to get us all
15   the information that we need to generate our sampling protocol.
16   I don't know what the defense is doing in terms of their
17   protocol, but we will generate ours now.  The UBS protocol, we
18   will identify standalones that we intend to rely on next week.
19            So we know that your Honor's aware that we proposed a
20   UBS protocol in our mission support for the last conference.
21   We did reserve the right to refine that based on other
22   information that came in from the loan case.  So we're revising
23   that analysis now, but sometime next week we'll be able to
24   identify, next week, in the UBS case, which loans will be --
25   let's put it this way, will be in our sample, and they will