November 19, 2012

**VIA ELECTRONIC MAIL**
The Honorable Denise L. Cote
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1610
New York, NY 10007-1312

Re:     FHFA Actions

Dear Judge Cote:

      We write on behalf of Plaintiff Federal Housing Finance Agency ("FHFA") to request that the Court enter FHFA's proposed scheduling order governing re-underwriting and expert discovery in these cases.  (Ex. 1.)

      FHFA's proposed order comports with the rulings and guidance of the Court at the November 15, 2012 conference.  (*See* Ex. 2 (listing the key provisions of FHFA's proposed order alongside the corresponding rulings of the Court).)  By contrast, Defendants' counter-proposal of Sunday afternoon (Ex. 3)[1] ignores or contradicts this Court's guidance in significant respects, and seeks tactical advantages rather than seeking to fulfill the mandate of prompt agreement upon loan files and guidelines and upon meaningful exchanges of initial re-underwriting findings.

      *First*, many of Defendants' proposals are simply insupportable under this Court's rulings. While this Court held that FHFA's initial findings will identify solely "failures on the face of the loan files when matched against the underwriting guidelines" (Ex. 4 at 87), Defendants try to expand this "narrow" exercise and transform these findings into interim expert reports.  In direct contravention of the Court's guidance as to the logical scope and limits of expert examination (Ex. 4 at 80, 97), Defendants would require that FHFA's experts may be examined about the initial findings—not simply about the underlying facts—if they "considered" such findings, as opposed to relying on or incorporating those findings. (Ex. 3 ¶ 8.)  Defendants also would require that FHFA's experts may be deposed or cross-examined as to why FHFA may not initially have found a loan defect that it later discloses for good cause, or as to initial findings that were *not* disclosed because the parties could not identify and stipulate to the loan file or guidelines.  (*Id.*)  Defendants further would require FHFA, as part of its interim disclosures, to make the unwarranted inferential leap from the absence of initial findings of defects—based upon an undeveloped factual record and specifically *excluding* expert conclusions as to prudent underwriting or conformity with industry standards—to the expert conclusion that loans were properly originated.  (*Id.* ¶ 3.)

---

[1]  Exhibit 3 contains the edits to the draft order that Defendants sent to FHFA on Sunday afternoon, and which FHFA understands Defendants intend to submit to the Court today, along with this additional proposed sentence in Paragraph 7 that they identified this morning: "There is a presumption that good cause cannot be shown where such additional documents impact more than ten (10) percent of the FHFA Sample Loans for any given Securitization and were not obtained through non-party discovery; the party tendering the additional documents shall bear the costs of the other party in repeating the re-underwriting of the loans over and above the ten (10) percent."  FHFA strongly disagrees with Defendants' proposal that they can freely modify loan files—for up to 100% of the loans in a sample—if new material was "not obtained through non-party discovery"; the proposal contravenes the Court's presumption against modification after 10% of loans have been modified, and would decrease Defendants' incentives to obtain complete copies of loan files and guidelines before FHFA begins re-underwriting.

Defendants similarly would subvert this Court's holding as to Defendants' required disclosures of "Alternative Sets." This Court plainly ruled, after a direct inquiry from UBS's counsel, that Defendants' disclosure of "alternative sets" must include "[a]ny sample[s] you're going to take for *any purpose* in this case," even if Defendants do not intend to re-underwrite the loans in that sample. (Ex. 4 at 94 (emphasis added).) Defendants now seek to subvert that ruling by redefining Alternative Sets to be limited to loans for which they would "rely on the content of the loan files." (*See* Ex. 3 ¶ 5.) Further, while the Court ruled that Defendants must disclose any alternative sets not based on individual securitizations once FHFA discloses its initial findings for 50% of the securitizations at issue in a case, (Ex. 4 at 76), Defendants now demand the right to "supplement" these sets after FHFA has disclosed 100% of its initial findings. (Ex. 3 ¶ 5.) All of these proposals are flatly incompatible with this Court's rulings. (*See generally* Ex. 2.)

*Second*, while the Court made clear that it expected the parties to work on the re-underwriting process in good faith (Ex. 4 at 13), Defendants appear to be planning for an "anticipated" break-down of the process rather than focusing on the task at hand. For example, Defendants demand that FHFA produce its re-underwriting report earlier than it otherwise would if the parties cannot agree about the appropriate loans files and guidelines for 25% of the loans in FHFA's samples (Ex. 3 ¶ 3); but there is no reason for such a requirement if the parties are truly committed to identifying and stipulating to the relevant loan files and guidelines. As the Court reaffirmed at the November 15 hearing, if the parties have significant problems stipulating to loan files and guidelines, they always have the "safety valve" of applying to modify the schedule or protocols for good cause. (Ex. 4 at 76.) There is no need to incentivize a break-down in the process and impose the premature issuance of expert re-underwriting reports, or arbitrary ten-day deadlines on FHFA to identify replacement loans, as Defendants propose. (Ex. 3 ¶ 3.)

*Third*, Defendants seek to impose substantial additional burdens on FHFA in connection with the pace of initial disclosures. FHFA has committed to releasing its initial findings on a reasonable rolling basis at a robust rate starting with *at least* 2,000 disclosures per month. (Ex. 1 ¶ 3). Defendants now seek to require FHFA to made initial disclosures at a rate of nearly 6,000 loans in the first month, with specific weekly requirements for each of the three Tranche 1 and 2 cases. (*See* Ex. 3 ¶ 3.) The demand for such an order—which would put FHFA at risk of contempt for nonperformance—is entirely unjustifiable. If this process is to work (with demands upon FHFA that far exceed what Defendants themselves are prepared to commit to), then FHFA must have some flexibility to disclose initial findings in a manner that best permits it to utilize its resources across the Tranche 1 and 2 cases.

*Finally*, to the extent that FHFA and Defendants disagree on scheduling dates, FHFA believes its dates are reasonable and in keeping with the Court's current discovery and pre-trial schedule. In any event, FHFA views its dates as placeholders for the Court's own decision as to what dates make the most sense in the context of the overall discovery and trial schedule.

FHFA respectfully submits that the Court should rule upon the parties' written re-underwriting submissions, and should enter the proposed order attached as Exhibit 1, without further argument, in light of the Court's extensive deliberations and acceptance of exhaustive oral argument and prior submissions by the parties.

Respectfully submitted,

| | |
|---|---|
| /s/  Philippe Z. Selendy<br>Philippe Z. Selendy<br>(philippeselendy@quinnemanuel.com)<br>QUINN EMANUEL URQUHART &<br> SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>(212) 849-7000<br><br>*Attorney for Plaintiff Federal Housing Finance Agency in FHFA v. UBS Americas, Inc., FHFA v. JPMorgan Chase & Co., FHFA v. Deutsche Bank AG, FHFA v. Citigroup Inc., and FHFA v. Goldman, Sachs & Co.* | /s/  Richard A. Schirtzer<br>Richard A. Schirtzer<br>(richardschirtzer@quinnemanuel.com)<br>Adam Abensohn<br>(adamabensohn@quinnemanuel.com)<br>QUINN EMANUEL URQUHART &<br> SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br><br>*Attorney for Plaintiff Federal Housing Finance Agency in FHFA v. HSBC North America Holdings, Inc.<br>and FHFA v. Nomura Holding America, Inc.* |
| /s/ Christine H. Chung<br>Christine H. Chung<br>(christinechung@quinnemanuel.com)<br>Sascha N. Rand<br>(sascharand@quinnemanuel.com)<br>QUINN EMANUEL URQUHART &<br> SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br><br>*Attorney for Plaintiff Federal Housing Finance Agency in FHFA v. First Horizon National Corp., FHFA v. Bank of America Corp., and FHFA v. Credit Suisse Holdings (USA), Inc.* | /s/  Manisha M. Sheth<br>Manisha M. Sheth<br>(manishasheth@quinnemanuel.com)<br>QUINN EMANUEL URQUHART &<br> SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br><br>*Attorney for Plaintiff Federal Housing Finance Agency in FHFA v. UBS Americas, Inc., FHFA v. JPMorgan Chase & Co., FHFA v. Barclays Bank PLC, FHFA v. Citigroup Inc., and FHFA v. Merrill Lynch & Co., Inc.*<br><br>/s/  Kanchana Wangkeo Leung<br>Kanchana Wangkeo Leung<br>(kleung@kasowitz.com)<br>KASOWITZ, BENSON, TORRES &<br> FRIEDMAN, LLP<br>1633 Broadway<br>New York, NY 10019<br><br>*Attorney for Plaintiff Federal Housing Finance Agency in FHFA v. Ally Financial Inc., FHFA v. General Electric Company., FHFA v. Morgan Stanley, and FHFA v. SG Americas, Inc.* |