# Exhibit 2

| Proposed Order | Nov. 15, 2012 Conference |
|---|---|
| 1.      For each Securitization at issue, with respect to all loans in the samples identified by FHFA (the FHFA "Sample Loans"), the parties shall work together promptly on a good faith basis to identify all documents relating to the Sample Loans that comprise the loan origination files (the "Loan Files"), whether in hard copy paper or electronic format, including from any electronic systems or database, and all underwriting guidelines (the "Guidelines") applicable to such loans, including Manuals, Reference Guides, matrices, and updates to such guidelines. | "THE COURT: … With respect to the first issue, must you agree on the set of documents before you begin this process? That is, that we have the loan file that we're going to go to trial on; that we have the guidelines that are associated with the initial underwriting of that loan.  To me, if you don't agree on that fundamental premise, we shouldn't proceed to reunderwrite that loan." (12:3-9.)<br>"THE COURT: When the parties have agreed that the loan files and the matching guidelines are likely complete for a particular loan, the plaintiff may begin the reunderwriting process." (76:3-5.) |
| 2.      As to each FHFA Sample Loan where Loan File documents and Guidelines have been identified, the parties shall endeavor to reach agreement by stipulation that such Loan File and Guidelines are, respectively, the best representation of the Loan File and Guidelines existing at the time of the loan's origination that the parties have been able to recreate as of the time of such agreement.  Such a stipulation shall not preclude any party from asserting at trial that the Loan File and Guidelines, as stipulated, are different from the Loan File and Guidelines that existed at the time of the loan's origination, nor limit the reasons for or rebuttals to any such assertion. | "THE COURT: … But it sounds like you could agree on a stipulation that says that this file, this exhibit at trial, represents the party's best recreation of the loan file that existed at the time." (100:22-25.)<br>"THE COURT:  But that would still leave the defendants open to argue to the jury that it is the best recreation we've been able to put together, but it is still incomplete and you should not rely upon it.  The defendants have that argument to make.<br>MR. SELENDY:  Right.  And in turn we would have arguments about the inability to come up with the loan file. But, yes, I understand your point."<br>(101:17-24.) |

| **Proposed Order** | **Nov. 15, 2012 Conference** |
|---|---|
| 3. Upon the identification and stipulation as to Loan Files and Guidelines applicable to Sample Loans pursuant to paragraphs 1 and 2 hereof, FHFA shall commence its factual re-underwriting review of such loans. For purposes of this Order, the re-underwriting review refers to the identification of failures on the face of the Loan Files when matched against the Guidelines, and does not refer to assessments of prudent underwriting or industry practice. Upon completion of its re-underwriting review for at least seventy-five (75) percent of the Sample Loans for any given Securitization, FHFA shall disclose its initial factual findings resulting from such review ("Findings"). If FHFA determines that such Sample Loans do not comply with the Guidelines, FHFA's Findings shall be in the form of a chart or worksheet that adequately categorizes the basis for such determination of non-compliance; the parties shall endeavor in good faith to agree upon the format of such a chart or worksheet for FHFA's Findings and Defendants' Rebuttal Findings (as defined in paragraph 6 hereof) in order to allow a ready comparison of Findings against Rebuttal Findings. FHFA shall disclose its Findings by Securitization, on a rolling basis, at a rate of at least two thousand Loans per month, and shall endeavor to make such disclosures on a weekly basis. | "THE COURT: So the reunderwriting process is a very narrow one. It's identifying failures on the face of the loan files when matched against the underwriting guidelines. It does not limit the plaintiffs -- or does not represent the totality of the plaintiff's representations with respect to deficiencies in the underwriting process." (87:11-16.)<br>"THE COURT: … When the plaintiff with that agreement has reunderwritten 75 percent of the securitization, it must produce that reunderwriting work product to the defendants in that case." (76:5-8.)<br>"THE COURT: … It may be helpful if you all, at an early stage, when you get a set of guidelines, develop a chart together so you're both doing the same chart, because that's what it's going to be. It's going to be a work sheet. Fields are going to be entered. And maybe the plaintiff has to develop the work sheet because the plaintiff knows what kind of errors they really want to prove at trial, what kind of failings there are. And if you have the plaintiff's work sheet for a particular set of guidelines, the defendants can be doing their reunderwriting at the same time and you're just checking each other's work in effect." (15:13-23.) |
| 4. For any FHFA Sample Loan as to which the parties are unable to identify and to stipulate pursuant to paragraphs 1 and 2 hereof, FHFA may elect either (a) to replace the FHFA Sample Loan with another loan (in which event the parties shall again endeavor to identify and to stipulate to applicable Loan Files and Guidelines pursuant to paragraphs 1 and 2 hereof), or (b) to retain the FHFA Sample Loan, in which case FHFA need not disclose its Findings for that loan as set forth in paragraph 3 hereof. | "THE COURT: I think we should say that if you can't reach agreement with respect to that individual loan, then there's no duty to participate in this reunderwriting exchange. The plaintiff will make a decision whether to include or not include that loan in their sample or substitute, but they would have no obligation, if they decide to keep that loan in the sample, to share reunderwriting information with the defendants on it." (12:14-21.) |

| Proposed Order | Nov. 15, 2012 Conference |
|---|---|
| 5. Within 21 days of the receipt of FHFA's Findings for a given Securitization, the Defendants to claims regarding such Securitization shall notify FHFA whether they intend to make use of any alternative set of loans in such Securitization for purposes of re-underwriting or otherwise (an "Alternative Set"), and, if so, Defendants shall identify such Alternative Set by loan number such that FHFA may replicate Defendants' analysis.  Further, no later than the time of FHFA's disclosure of Findings as to the Sample Loans for fifty (50) percent of the Securitizations for any case, Defendants shall notify FHFA whether they intend to make use of any set of loans drawn on any basis other than by such Securitizations and, if so, Defendants shall identify such basis and such Alternative Set by loan number such that FHFA may replicate Defendants' analysis.  Within 45 days of the receipt of Defendants' identification of any Alternative Sets drawn on any basis other than by such Securitizations, FHFA shall identify any other set of loans of which it intends to make use.  Notwithstanding the above, Defendants in the Tranche 1 case must disclose all Alternative Sets that they intend to use for any purpose no later than March 1, 2013, and Defendants in the Tranche 2 cases must disclose all Alternative Sets that they intend to use for any purpose no later than June 1, 2013.  Defendants shall be precluded from making use of any Alternative Set not identified as set forth herein, except for good cause shown. | "THE COURT: The defendants must provide their rebuttal within 21 days of receipt.  And within 30 days of receipt— 28 days of receipt, not 30, they must provide the alternative set so long as that alternative set applies to that securitization." (76:15-18.)<br>"MS. SHANE:  We would request, your Honor, that we switch those two." (77:24-25.)<br>"THE COURT: … Any sample you're going to take for any purpose in this case, that's an alternative set." (94:5-7.)<br>"THE COURT: … With respect to the alternate sets that would apply to a theory other than a per-securitization analysis, that alternate set must be disclosed no later than the time that the plaintiff has provided its reunderwriting for 50 percent of the securitizations in the case." (76:24-77:3.)<br>"THE COURT:  … Well, we could set a date, independent date, by which no matter what, no matter what phase we are in with respect to the reunderwriting sharing and protocol, no later than the alternate set disclosure must be made to protect you on that." (59:11-15.) |

| Proposed Order | Nov. 15, 2012 Conference |
|---|---|
| 6.     Within 28 days of the receipt of FHFA's Findings for a given Securitization, the Defendants to claims regarding such Securitization shall disclose rebuttal findings ("Rebuttal Findings"), based upon Defendants' re-underwriting review, as to the Sample Loans re-underwritten by FHFA.  Consistent with paragraph 3, the re-underwriting review refers to the identification of failures on the face of the Loan Files when matched against the Guidelines, and does not refer to assessments of prudent underwriting or industry practice. | "THE COURT: The defendants must provide their rebuttal within 21 days of receipt.  And within 30 days of receipt-- 28 days of receipt, not 30, they must provide the alternative set so long as that alternative set applies to that securitization." (76:15-18.)<br>"MS. SHANE:  We would request, your Honor, that we switch those two."(77:24-25.) |

| Proposed Order | Nov. 15, 2012 Conference |
|---|---|
| 7.    FHFA may modify any of its Findings without prejudice for any reason if that modification is made reasonably promptly (within 28 days of receipt of Defendants' Rebuttal Findings) or is made at any other time for good cause. Defendants may modify any of their respective Rebuttal Findings without prejudice for any reason if that modification is made reasonably promptly or is made at any other time for good cause.  Good cause includes (a) a party's determination of an inadvertent error in its Findings or Rebuttal Findings, or (b) the discovery of additional documents that may constitute, in whole or in part, the Loan File or applicable Guidelines underlying those Findings or Rebuttal Findings.  In the event that the parties disagree about what constitutes good cause, such dispute shall be presented to the Court for resolution.  There is a presumption that good cause cannot be shown where such additional documents impact more than ten (10) percent of the FHFA Sample Loans for any given Securitization.  If Loan Files or Guidelines for more than ten percent of the FHFA Sample Loans for a given Securitization are modified pursuant to this paragraph 7, then the party tendering the additional documents shall bear the costs of the other party in repeating the re-underwriting of the loan.  Any modification of Findings or Rebuttal Findings shall be without prejudice to the opposing party to modify its Findings or Rebuttal Findings, as applicable, in response to such modification. | "THE COURT: The FHFA may modify that reunderwriting process without prejudice for any reason if that modification is made reasonably promptly or at any other time for good cause. Good cause consists of an inadvertency in preparing that work product or where an additional loan file has been discovered.  If the parties do not reach agreement that good cause exists, I will hear them and decide." (76:8-14.)<br>"THE COURT: There will be a presumption that a new loan file does not meet the good cause standard if more than 10 percent of the sample population for a securitization is affected by the offer of the new loan file.  There will also be a presumption that in that case the party tendering the new loan file will pay for the reunderwriting process." (77:4-9.) |

| Proposed Order | Nov. 15, 2012 Conference |
|---|---|
| 8. Neither FHFA's Findings nor Defendants' Rebuttal Findings shall constitute expert reports or expert testimony pursuant to Federal Rule of Civil Procedure 26, or contention interrogatory responses pursuant to Federal Rule of Civil Procedure 33. Such Findings and Rebuttal Findings shall have no preclusive effect and shall not be used for any purpose except as expressly provided for herein, including that they shall not be used as evidence, whether for purposes of discovery, examination, impeachment, expert disqualification, or otherwise. The issuance of such Findings and Rebuttal Findings shall not bar either party from offering evidence or expert opinions based on sources other than the Loan Files or Guidelines, including expert opinions bearing on such Findings. If an expert adopts any Findings or Rebuttal Findings for purposes of a report or testimony, such Findings will be treated as any other expert testimony. | "THE COURT: But these work sheets are not testimony of an expert. They're not an expert report." (97:7-8.)<br>"THE COURT: These are not contention interrogatories." (98:8.)<br>"THE COURT: … So, for instance, if the expert only talked about the owner occupancy misrepresentation, then it would not be appropriate to cross-examine that expert about the failure of the loan files to match up against the underwriting guidelines as revealed in these work sheets." (96:6-10.)<br>"THE COURT: … Both the plaintiff and the defendants are planning to get lots of evidence from third parties. This is not addressed to that. This is simply the preliminary work that needs to be done by both sides to match or see where there are failures to match the loan files against the underwriting guidelines." (87:17-21.)<br>"THE COURT: So the experts on either side may adopt them in whole or in part. And then, to the extent they adopt them, they're fair game for cross-examination." (97:10-12.) |
| 9. FHFA's Findings and Defendants' Rebuttal Findings shall be treated as Confidential pursuant to the Protective Order entered in these actions. | |
| 10. FHFA shall begin disclosing its Findings for the Tranche 1 case within two months of the entry of this Order and shall begin disclosing its Findings for the Tranche 2 cases within two months of this Court's approval of an appropriate sampling methodology for the non-Tranche 1 cases. | |