December 7, 2012

Hon. Denise L. Cote,
   United States District Judge,
      Daniel Patrick Moynihan
         United States Courthouse,
            500 Pearl St.,
               New York, New York 10007-1312.

            Re:    <u>FHFA Actions, No. 11 Civ. 5201 (S.D.N.Y.) (DLC), et al.</u>

Your Honor:

      I write on behalf of Defendants in these actions to inform the Court that, having met and conferred, the parties are at an impasse regarding certain of Defendants' targeted follow-up requests for documents regardless of the business segment in which they reside, necessitating this application pursuant to Your Honor's November 6, 2012 directions.[1] At FHFA's request, Defendants made the targeted requests in installments, the first set of which Defendants conveyed to FHFA on November 9, 2012. (*See* Ex. A.) Defendants have sent a second set (*see* Ex. B), to which FHFA responded today, and may send more targeted requests as review of FHFA's document production proceeds.

      1.    **Due diligence and exception reports**: When the GSEs' non-PLS business units considered purchasing the Mortgage Loans and other loans, they regularly conducted due diligence by obtaining due diligence and exception reports. Documents that FHFA has produced reflect that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The GSEs have acknowledged that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See, e.g.*, Exs. C (▮▮▮▮▮▮) and D (▮▮▮▮▮▮).) FHFA has refused to produce these ▮▮▮ on the ground that they were not shared with PLS traders.

      2.    **Results of automated valuation models related to mortgage loans at issue** ("**Mortgage Loans**"): In considering whole-loan purchases of some Mortgage Loans, the GSEs' non-PLS business units used "automated valuation models" to estimate the value of the mortgaged properties. In addition, the GSEs used these models in considering the Mortgage Loans as collateral behind the Securitizations. FHFA has refused to produce the results of these runs, claiming that they were not used by PLS traders, but the GSEs' analysis of the Mortgage Loans is relevant even if done outside of the PLS side of the business. Moreover, documents produced by FHFA describe the models' use for both PLS and non-PLS purposes. Indeed, Fannie Mae used these models to "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See, e.g.*, Ex. E (▮▮▮▮▮▮▮).)

      3.    **Automated underwriting and costing models related to Mortgage Loans**: In considering whole loans for purchase, the GSEs used other automated tools such as Loan Prospector and Desktop Underwriter to underwrite those loans. If the GSEs rejected the loans, the loans would sometimes be included in the PLS Securitizations that the GSEs subsequently bought. The GSEs also would run other automated tools, such as DEFCAP, to "cost" the loans in the Securitizations in which they considered investing. Defendants have sought the output of these automated tools. FHFA says that it is unlikely that Freddie Mac retained the automated underwriting results, and that to the extent

---

[1] The Bank of America and Merrill Lynch Defendants are submitting separate letters addressing similar issues. Although the remaining Defendants continue to submit that discovery relating to matters concerning non-PLS matters is directly relevant here, they do not join those letters for procedural reasons. By making these requests, Defendants do not waive their position that they are entitled to full and complete discovery from the GSEs' non-PLS various business units.

any of this information exists for either Freddie Mac or Fannie Mae, it would be unduly burdensome to produce because it would require "matching" the runs to the Mortgage Loans. Defendants offered to do that work ourselves, or work with FHFA to find a technical solution to reduce any burden, but FHFA did not respond to that offer.

4. **Operational review, audit or counterparty reports on originators at issue ("Originators")**: Through the GSEs' audits and operational reviews of Originators, the GSEs gained critical insight into the Originators' origination and underwriting practices. Fannie Mae's intensive on-site operational reviews, for example, conducted by Single Family Counterparty Risk Management ("SF CPRM"), focused on "███████████████████████████████████ ███████" of the Originators. (Ex. F at 26 (███████████████).) FHFA has agreed to produce Originator reviews (beyond those found in PLS custodian files) only (1) for Fannie Mae, if they were specifically considered in approving a PLS transaction with a "suspended" originator, and (2) for Freddie Mac, if the overall risk assessment of the Originator was "marginal" or "poor." However, all reviews, including relatively positive ones, would necessarily reflect what Originator underwriting practices the GSEs considered material or immaterial, problematic or satisfactory, under industry standards the GSEs helped define.

5. **Mortgage fraud reports made to OFHEO**: The GSEs were required to provide OFHEO with reports regarding mortgage fraud, including fraud related to mortgages underlying securitizations in which the GSEs had invested. (*See, e.g.*, Ex. G (OFHEO Policy Guidance).) Mortgage fraud reports related to, among other things, fraudulent appraisals and falsified income or employment information, and *were mandatory* where the GSEs identified institutional fraud or fraud that was part of a trend or pattern. (*Id.* §§ IV(d), VI(b), (d).) FHFA has refused to produce these reports solely because they purportedly reside outside the GSEs' PLS units.

The specific reports described above relate directly to FHFA's claims and Defendants' defenses, including, among other things, whether the Mortgage Loans had material defects, whether Defendants performed adequate due diligence, whether the GSEs knew about what FHFA now claims were misstatements, when the GSEs had notice of their claims, and whether the GSEs can allege justifiable reliance in connection with their fraud claims. All of this information is directly relevant to various elements of FHFA's claims on behalf of the GSEs. *See* RESTATEMENT (THIRD) OF AGENCY § 5.03; *id.*, § 5.03 cmt. c (2006) & cmt. c (2006); *George v. Equifax Mortg. Servs.*, 375 F. App'x 76, 78 (2d Cir. 2010). Even if this non-PLS information could not be imputed to the GSE personnel who made purchase decisions regarding the relevant securities, the failure of the GSEs to make use of that information would tend to show GSE failure to use the "means available" to them, and would therefore be relevant to the issue of justifiable reliance. *Abrahami v. UPC Constr. Co.*, 224 A.D.2d 231, 234 (1st Dep't 1996); *Landesbank Baden-Wurttemberg v. Goldman Sachs & Co.*, 478 F. App'x 679, 682 (2d Cir. 2012). Thus, FHFA's refusal to produce documents based solely on whether PLS personnel received them rests on faulty legal premises, and disregards the Court's invitation for the parties to address Defendants' targeted requests more specifically. (*See* Oct. 15 Tr. at 37:3-9; Nov. 6 Tr. at 54:20-55:7, 59:20-21, 63:7-13.)

Given the importance of these documents and the size of these cases, FHFA cannot reasonably assert that it is too burdensome to comply with these targeted, limited requests. Defendants have offered and remain willing to work with FHFA to minimize any burden. Accordingly, Defendants respectfully request a conference at which they will seek an order compelling production of the documents described above and the opportunity to submit a developed legal and factual record in support of such application.

Respectfully,

*Penny Shane* /sm

Penny Shane