Via Electronic Mail

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

EDWARD J. BENNETT
(202) 434-5083
ebennett@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

December 7, 2012

The Honorable Denise L. Cote
United States District Judge
500 Pearl Street, Room 1610
New York, New York 10007-1312

Re:   *FHFA v. Bank of America; FHFA v. Merrill Lynch*

Dear Judge Cote:

On behalf of the Bank of America and Merrill Lynch Defendants, we write to request a conference with the Court at which we will seek the Court's assistance in compelling FHFA to produce the targeted discovery relating to the GSEs' special knowledge about certain Mortgage Loans in FHFA's re-underwriting samples (the "Sample Loans"). Years ago, the GSEs created proprietary computer programs to underwrite loans. These programs are known as "automated underwriting" or "AU" programs. Defendants have requested that FHFA provide the AU data relating to the loans in FHFA's sample. This request is narrowly tailored. The information is directly relevant to the loans in FHFA's sample. The information should be produced.

Per the Court's guidance at the November 5, 2012 Hearing, Defendants requested that FHFA produce data regarding the Sample Loans that were run through the GSEs' automated underwriting programs.[1] The GSEs made these programs available to originators for use during the origination process. When originating loans, originators often would input key data regarding a loan (including LTV, owner-occupancy, and other underwriting metrics) into a GSE's AU system. According to our understanding of these systems, which FHFA does not dispute, the data entered by originators was processed in-house at the GSEs and a report was generated regarding the compliance of the loan with the GSEs' parameters. In some circumstances, loans run through an AU system were identified by the AU system as "ineligible" for sale to the GSE because the loan failed to satisfy the GSE's parameters. These loans were often pooled into private label securitizations—including, we believe, securitizations at issue in these cases. On other occasions, loans that were "approved" for sale to a GSE by the AU system were instead sold to defendants and became part of the Mortgage Loans at issue in these cases. We understand (and FHFA does not dispute) that the GSEs tracked and ran internal analyses for loans run through the AU systems. We seek such data and analyses regarding the Sample Loans. This basic—but important—information concerning the Securitizations and Mortgage Loans at issue in these cases is in the hands of FHFA. We request that it be made available to Defendants.

---

[1] Fannie Mae's program was called "Desktop underwriter." *See* https://www.fanniemae.com/singlefamily/desktop-underwriter. Freddie Mac's program was called "Loan Prospector." *See* http://www.loanprospector.com/

During a meet-and-confer with FHFA on November 9, 2012, the Bank of America and Merrill Lynch Defendants requested that FHFA provide two subsets of this data from the GSEs' AU systems. First, Defendants requested the data entered into or analyses generated by the AU systems for the Sample Loans. Such information is directly relevant. If, for example, the GSEs' AU systems contain data indicating that a Sample Loan was processed through AU with a high initial LTV, and subsequently re-processed through AU with a lower LTV, then Defendants would be entitled to argue that the GSEs had specific knowledge of and notice of the very defect for which they now claim a misrepresentation. Second, Defendants requested that FHFA provide data from the AU systems about borrowers for the loans in FHFA's samples (with borrowers identified by social security numbers). Again, this information is directly relevant. If, for example, a GSE's AU system contains data showing that a Sample Loan borrower requested to finance homes at more than one address within a discrete time period, Defendants would be entitled to argue the GSEs had specific knowledge that the borrower was purchasing properties s/he did not intend to occupy and that FHFA was on notice regarding the accuracy of owner-occupancy representations in the relevant prospectus supplement. This information is in the hands of FHFA.

FHFA has offered three justifications for withholding this discovery, which are in tension with each other and lack merit. First, FHFA claims that none of this specific information was passed to the specific PLS traders who bought the Certificates at issue. FHFA does not dispute, however, that the information was available to and used by the GSEs' risk and policy personnel, including those with seats on or input into the cross-functional groups that advised the PLS traders (such as the Fannie Mae PLAT). In any event, the information Defendants seek relates to the central issue in the case: the quality of the Mortgage Loans. Each GSE is charged as a matter of law with every relevant fact known to its employees within the scope of their employment by that GSE. *See, e.g., N.J. Carpenters Health Fund* v. *RALI Series 2006-QO1 Trust*, 2012 WL 1481519, at *2 (2d Cir. Apr. 30, 2012) (summary order); RESTATEMENT (THIRD) OF AGENCY § 5.03 (2006); *see also id.* § 5.03 illus. 9 (where employee in a bank's credit department learns of a restrictive covenant applicable to a borrower but "does not communicate" that information to lending department, which makes a loan to borrower in violation of the covenant, "knowledge [of the covenant] will be imputed" to bank). Moreover, FHFA must establish that the GSEs justifiably relied on the alleged misrepresentations and that, as sophisticated parties, "used the means of verification available to [them]" before relying on the alleged misstatements. *HSH Nordbank AG v. UBS AG*, 95 A.D.3d 185 (2012). The GSEs' AU data is directly relevant to the loans at issue and this legal analysis.

Second, FHFA claims it is unlikely that Freddie Mac retained this information because it was not its practice to do so and that, to the extent such information exists it would be unduly burdensome to gather. If the information does not exist for Freddie Mac (FHFA stops short of making that representation), there is no burden at all. FHFA offers nothing to substantiate its generic claim of undue burden for any information that does exist. *See Burgess* v. *Town of Wallingford,* 2012 WL 4344194, at *6 (D. Conn. Sept. 21, 2012) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy" Rule 26(c)). In cases allegedly worth tens of billions of dollars, it is not disproportional to ask FHFA to run computer queries on their AU systems to produce documents and information directly relevant to the loans it has put at issue.

Respectfully submitted,

Edward J. Bennett