

January 10, 2013

**VIA ELECTRONIC MAIL**
The Honorable Denise L. Cote
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1610
New York, NY 10007-1312

Re:   *FHFA Actions, No. 11 Civ. 5201 (S.D.N.Y.) (DLC), et al.*

Dear Judge Cote:

      We write on behalf of Plaintiff, Federal Housing Finance Agency ("FHFA"), as conservator for the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") (together, the "GSEs"), in response to the Court's directives during the December 14 and 17 conferences that FHFA provide additional information regarding documents relating to the GSEs' single-family businesses. In the case of certain categories of documents as to which the Court requested further information, the Court additionally asked the parties to meet and confer regarding FHFA's findings. FHFA addresses below only the subjects as to which it was requested to report to the Court directly.

## I.
## Reports or Studies Generated by the GSEs' Single-Family Businesses Regarding Appraisal Bias

      At the December 14 conference, the Court denied Defendants' request for the results of the GSEs' automated valuation modeling. 12/14/12 Hrg. Tr. at 32:18-22. The Court, however, asked FHFA to search for and produce reports or studies generated by the GSEs' single-family businesses that analyzed many loans of a given originator and find or suggest that the appraisal practices of appraisers associated with that originator were biased. *Id.* at 33:11-18.

      **Fannie Mae:** Fannie Mae's single-family business created quarterly reports assessing valuation bias for approximately 25 large lenders based on refinance loans[1] acquired by the single-family business. These quarterly reports define "valuation bias" as the percentage difference between the property value reported by the lender at the time of refinancing and the value determined by Fannie Mae's automatic valuation model. Although these reports were not shared with Fannie Mae's PLS traders, and are not based on any evaluation of any of the loan pools backing the Securitizations at issue in these Actions, FHFA has collected, and is producing, quarterly reports that were distributed to certain FHFA custodians (specifically, Fannie Mae senior risk officers) during the relevant time period.[2] FHFA additionally will produce all such reports from the relevant time period that discuss the originators of loans in the

---

[1]  An appraisal on a refinance loan differs from one on a purchase loan in that when doing a refinance appraisal, the appraiser does not have a purchase price to use as a benchmark.

[2]  *See, e.g.*, FHFA's document production at FHFA00015009, FHFA01248133.

Securitizations' collateral pools ("Originators") and is in the process of collecting the additional reports for production.

**Freddie Mac**: Freddie Mac did not create reports or studies assessing appraisal bias associated with individual originators between 2005 and 2007.

## II.
## Burden Associated with Collecting Single-Family Originator Reviews

During the December 14 conference, the Court asked FHFA to determine the burden associated with the collection and production of neutral or positive single-family originator reviews for Originators, as requested by JP Morgan, Bank of America, and Merrill Lynch in letters submitted to the Court. 12/14/12 Hrg. Tr. at 62:5-18. For the reasons that follow, there should be no dispute about the adequacy of FHFA's production, because FHFA either is already producing, or will produce, the requested documents.[3] However, because the requested Originator reviews will likely be the subject of further discussions, in discovery or in motion practice, FHFA notes herein its disagreement with Defendants' claims regarding the relevance of the reviews.

**Fannie Mae**: As has been described in the parties' correspondence and at argument, FHFA had agreed in negotiations with Defendants, before the Court conferences in December, to produce Originator reviews that were not distributed to PLS employees but arguably related to the so-called "counterparty approved lists" or "scorecards"—lists generated by the single-family business and distributed to PLS traders—where an Originator received a rating of "caution" or worse. 12/14/12 Hrg. Tr. at 60:19-61:11.[4] Defendants have requested that FHFA not limit its production to the negative reviews, but also produce the positive or "relatively positive" reviews that they believe FHFA is currently culling from production. 12/07/12 Letter from Defendants to the Court (signed by Penny Shane) at 2.

FHFA has determined that it is already producing the requested Fannie Mae documents, regardless of whether the reviews are negative, neutral, or positive, under the independent standard FHFA has articulated many times: that single-family documents that informed the decision-making of the PLS traders, their supervisors, and senior risk officers will be produced. *See, e.g.*, 12/14/12 Hrg. Tr. at 60:19-23; 12/13/12 Letter from FHFA to the Court (signed by Christine H. Chung and Manisha Sheth) at 1. Defendants requested the reviews associated with

---

[3] At the conference, FHFA's counsel readily agreed to investigate burden, at the Court's request, in the midst of its argument that the requested documents are not relevant. 12/14/12 Hrg. Tr. at 62:11-20.

[4] As FHFA has explained, at Fannie Mae, a negative assessment on the "counterparty approved list" generated by the Single Family Counterparty Risk Management group ("SF CPRM") barred a PLS purchase, absent additional approval. 12/13/12 Letter from FHFA to the Court (signed by Christine H. Chung and Manisha Sheth) at 2. FHFA indicated that it was willing to share the reviews underlying such negative assessments, even if those reviews were not shared with the PLS business, after Defendants advanced the view that the reviews may have informed the assessments. 12/14/12 Hrg. Tr. at 61:1-11.

the "counterparty approved lists," which are the reviews conducted by the Single Family Counterparty Risk Management group ("SF CPRM"). *See* 12/07/12 Letter from Defendants to the Court (signed by Penny Shane) at 2 and Ex. F (referencing SF CPRM reviews and annexing an SF CPRM review recommending that Fremont Investment and Loan receive an "approve"); 12/07/12 Letter from Bank of America and Merrill Lynch to the Court (hereinafter "12/07/12 BOA/ML Letter") at 1 and Ex. 1 (referencing SF CPRM reviews and annexing the same review). FHFA is producing SF CPRM reviews relating to the Originators regardless of the recommended rating because those reviews informed the decision-making process of custodians with authority over PLS purchases.

**Freddie Mac:** FHFA has collected approximately 400 operational reviews of single-family originators that were prepared by Freddie Mac's External Operational Risk Management ("EORM") group between 2005 and 2007. FHFA had previously agreed to produce the EORM reports requested by Defendants, *see* 12/07/12 BOA/ML Letter at 1-2 and Ex. 2 (referencing EORM reviews), only if the reviewers recommended an assessment of "marginal" or "poor" *or* if the review was made available to PLS traders, supervisors, or senior risk custodians. *See* 12/04/12 Letter from FHFA to Penny Shane at 2-3 (annexed hereto as Exhibit A). FHFA will produce all 400 reviews because it is not incrementally burdensome to produce all EORM reviews.

Defendants also have requested all reviews—positive or negative—conducted by the Alternative Markets Operations ("AMO") group. *See* 12/07/12 BOA/ML Letter at 2 and Ex. 5 (discussing AMO reports and annexing an AMO report assigning a "marginal" rating); 12/13/12 Letter from Bank of America to the Court (hereinafter "12/13/12 BOA/ML Letter") at 1 and Ex. 1 (attaching an AMO report assigning a "marginal" rating). AMO was a group responsible for conducting operational reviews that were employed both by the PLS business and the part of the single-family business that engaged in bulk purchases of mortgage loans. FHFA already has confirmed to Defendants that it will produce all Originator reviews conducted by AMO, regardless of the findings of those reviews. 12/04/12 Letter from FHFA to Penny Shane at 3.

Despite FHFA's willingness to produce the additional neutral or positive reviews Defendants have most recently requested, it strongly disagrees with Defendants' characterization of the relevance of those reviews. Counsel for Bank of America incorrectly argued at the December 14 conference that a non-negative finding in an originator review conducted by the single-family businesses is relevant, even if that finding (like the report) was *never* even potentially relied upon by PLS personnel, because the non-negative outcome can be construed as the equivalent of "a pass with flying colors" or "high marks," particularly with respect to the reviewed originator's underwriting practices. *See* 12/14/12 Hrg. Tr. at 59:11-60:9.

Defendants' assertion is unfounded. At the threshold, FHFA has never opposed producing originator reviews potentially relied upon by PLS personnel in making the PLS purchases relevant to these Actions. Thus, for Fannie Mae, FHFA has been producing SF CPRM reviews, as noted above, and also reviews done by the Operational and Review Compliance group, which was independent from the single-family and capital markets groups. For Freddie Mac, FHFA has already been producing AMO reports, because they were used by PLS

personnel, although Defendants in their "targeted requests" mistakenly seem to consider AMO reports to be single-family reports.

The non-negative findings of the originator reviews that Defendants request in addition, however, are not relevant. No "approval" or "blessing" of the underwriting of the Mortgage Loans at issue in these Actions can be fairly inferred from the originator reviews Defendants seek. As the reviews referenced by the Defendants themselves make clear, the originator reviews evaluated the financial health of the *counterparty entity*, not the quality of any individual mortgage loans or pools of mortgage loans that the GSEs were contemplating purchasing, much less the Mortgage Loans underlying the Securitizations at issue here.

Specifically, these reviews assessed such matters as the originator's financial strength and stability, its corporate governance and business plan, the historical performance of its collateral, the diversity and strength of its component businesses (origination, servicing, etc.), and the quality of management and staff. *See, e.g.*, 12/07/12 BOA/ML Letter, Ex. 1 (SF CPRM report re Fremont Investment and Loan) and 2 (EORM report regarding Countrywide Home Loans). One of the multiple components of the periodic on-site reviews conducted by the single-family businesses was typically an examination of the originator's underwriting guidelines and its underwriting protocols, and a review of a very limited number of loan files *not* associated with any particular securitization or pool.[5] The purpose of reviewing any loan file(s) as part of the counterparty reviews, however, was to ensure the counterparty's operational compliance, and not to assess the quality of any individual mortgage loans or pools of mortgage loans being offered to the GSEs for purchase.[6] The quality of loans that the GSEs were contemplating purchasing as part of their single-family businesses, or of the loan pools underlying the PLS Securitizations, was evaluated separately, including in the case of PLS Securitizations through reliance on the representations of Defendants described in the Amended Complaint and forms of diligence as to which FHFA is already producing full discovery.

The only "pass with flying colors" or "high marks" approval that would be relevant to these Actions would be an approval of the Originators' levels of compliance in originating the Mortgage Loans underlying the Securitizations at issue, not the overall portfolio originated by

---

[5] *See, e.g.*, 12/07/12 BOA/ML Letter, Ex. 1 at FHFA01104628 (SF CPRM Review of Fremont Investment and Loan specifying that the Fannie Mae reviewed 17 loan files); 12/13/12 BOA/ML Letter, Ex. 2 at UG1FHFA00014276 (SF CPRM Review of First Franklin Financial Corporation specifying review of 450 loan files). SF CPRM and EORM reviews were not typically performed more frequently than yearly, if that. *See, e.g.*, 12/07/12 BOA/ML Letter, Ex. 2 at FHFA02197256 (EORM Review of Countrywide Home Loans conducted in September 2007 and noting that the last review was performed in August 2005). Further, EORM reviews typically did not involve examination of the originator's underwriting guidelines.

[6] *See, e.g.*, 12/07/12 BOA/ML Letter, Ex. 2 at FHFA02197263, FHFA02197277 (EORM Review of Countrywide Home Loans reporting "compliance testing results" based in part on loan and loan file review and noting that any rating of "policies & procedures and performance of testing in Production, Underwriting, and Quality Control" is rating of "<u>CHL processes and not the credit quality of loans</u>" (emphasis in original)). The loans and guidelines reviewed during counterparty reviews also were not always the same types at issue in these Actions.

4

that Originator.[7] The neutral or positive originator reviews sought by Defendants do not equate to any such approval. Notwithstanding its production of the documents requested by Defendants, FHFA thus reserves its right to object to any attempted reliance by Defendants upon these documents.

## III.
## Documents Analyzing Loss for the Securitizations that Also Analyze Losses on the Whole Loan Side

On December 17, the Court asked FHFA to confirm that it is producing documents "that analyzed loss for the [S]ecuritizations on the private label side and discussed as well losses due to securitizations on the whole loan side . . . in unredacted form." 12/17/12 Hrg. Tr. at 80:22-81:6. FHFA has confirmed that its production of documents from both GSEs includes documents that discuss both losses for the Securitizations and securitizations of whole loans. FHFA did not redact discussions of losses suffered by GSE securitizations from any document in which discussions of losses suffered by the Securitizations also occur.

---

[7] Indeed, the overall recommendation or rating on a review does not even necessarily reflect that the reviewers found satisfactory or acceptable levels of an originator's operational compliance with their underwriting guidelines, based on the few loan files reviewed, because the final recommendation or assessment is only based in part on that operational compliance. *See, e.g.*, 12/07/12 BOA/ML Letter, Ex. 2 (overall assessment of "satisfactory" in EORM review comprised of assessments in sub-areas of production, underwriting, anti-predatory, qualify control, secondary marketing, servicing, default management and investor reporting); 12/07/12 BOA/ML Letter, Ex. 1 (overall recommendation of "approve" derived from ratings in 10 sub-areas).

Respectfully submitted,

/s/ Richard A. Schirtzer
Richard A. Schirtzer
(richardschirtzer@quinnemanuel.com)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
*Attorneys for Plaintiff Federal Housing
Finance Agency*

/s/ Kanchana Wangkeo Leung
Kanchana Wangkeo Leung
(kleung@kasowitz.com)
KASOWITZ, BENSON, TORRES &
FRIEDMAN, LLP
1633 Broadway
New York, NY 10019
*Attorneys for Plaintiff Federal Housing
Finance Agency*

# EXHIBIT A

**quinn emanuel** trial lawyers | los angeles
865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3111**

WRITER'S INTERNET ADDRESS
richardschirtzer@quinnemanuel.com

December 4, 2012

VIA ELECTRONIC MAIL

Penny Shane, Esq.
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004

Re:   FHFA Actions, No. 11 Civ. 5201 (S.D.N.Y.) (DLC), *et al.*

Dear Penny:

     I write in response to your letter dated November 30, 2012 concerning purported inadequacies in FHFA's response to Defendants' "targeted" requests for documents from the single-family side of the GSEs' businesses.

     As a threshold matter, it appears you have overlooked my letter to you and Ted Bennett dated November 15, 2012 in which we responded to Defendants' requests for (1) documents evidencing loan-level due diligence performed on the Mortgage Loans underlying the Certificates; (2) methods used by Freddie Mac's PLS credit risk analysts, Kevin Palmer and Frank Vetrano, for reaching conclusions such as those expressed in FHFA00001846-FHFA00001847 and FHFA00002405-FHFA00002406; and (3) the GSEs' mortgage fraud reports to OFHEO. A copy of our November 15 letter is attached. In it, we also confirmed that FHFA has collected and produced underwriting guidelines for the Originators who originated loans at issue in these Actions that are in the possession and control of the GSEs as well as in the possession of Freddie Mac's reunderwriting vendor. I can confirm that we have, as we stated during the November 9th call, searched repositories on the non-PLS sides of the GSEs' businesses to locate underwriting guidelines relating to the Securitizations. In the event we

**quinn emanuel urquhart & sullivan, llp**
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois 60661-2510 | TEL (312) 705-7400 FAX (312) 705-7401
WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia 20004-2400 | TEL (202) 538-8000 FAX (202) 538-8100
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 20 7653 2000 FAX +44 20 7653 2100
TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 3 5510 1711 FAX +81 3 5510 1712
MANNHEIM | Mollstraße 42, 68165 Mannheim, Germany | TEL +49 621 43298 6000 FAX +49 621 43298 6100
MOSCOW | Paveletskaya Plaza, Paveletskaya Square, 2/3, 115054 Moscow, Russia | TEL +7 499 277 1000 FAX +7 499 277 1001
HAMBURG | An der Alster 3, 20099 Hamburg, Germany | TEL +49 40 89728 7000 FAX +49 40 89728 7100

locate additional relevant underwriting guidelines, we intend to produce them. In addition, to the extent we locate loan-level reviews related to housing goals scoring for the Securitizations or anti-predatory lending reports for the Securitizations that were generated by the non-PLS sides of the GSEs' businesses, we intend to produce them.

We take issue with your suggestion that FHFA has placed "an artificial limitation" on discovery in these Actions. FHFA has, as Judge Cote recognized, "provided an enormous amount of discovery in this case already." 11/6/12 Hrg. Tr. at 59:25-60:1. FHFA indeed has provided "voluminous discovery . . . . from sources where it's most likely to produce information that's relevant to each of the [legal] issues[.]" *Id.* at 62:18-21. Although Defendants contend that documents that reside solely on the single-family sides of the GSEs are *per se* discoverable, Judge Cote has repeatedly rejected that argument. *See id.* at 59:23-25; *see also* 7/31/12 Hrg. Tr. at 99:1-102:11; 8/28/12 Order Denying Merrill Lynch Defendants' Motion for Reconsideration. Rather, Judge Cote has held that FHFA's approach to discovery requests regarding the GSEs' non-PLS businesses—which is, as we re-articulated in our November 27 letter, collecting and producing documents from the single-family businesses responsive to Defendants' requests for production that were provided to the PLS traders, their supervisors, or members of senior risk committees with responsibilities for the purchase of PLS—is appropriate. *See* 11/6/12 Hrg. Tr. at 62:15-63:1 (noting that, while there may be "potentially interesting information on the single-family side of the business," Defendants have gotten documents from that business that are "most likely to produce information that's relevant to each of the [legal] issues[.]").

Furthermore, while Judge Cote ruled on November 6 that Defendants are permitted to seek "targeted specific requests for additional discovery from FHFA," *id.* at 63:8, those requests must be reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1). In other words, the documents sought must have some nexus to the Securitizations named in the Complaints. Certain of Defendants' "targeted" requests are not so calculated, including the request for "[d]ocuments relating to the Originators' submissions of the Mortgage Loans through automated underwriting programs such as Desktop Underwriter and Loan Prospector" and for "reports relating to whole loan purchases from relevant Originators[.]" Moreover, your request that we produce automated underwriting reports related to whole loan purchases from the relevant Originators conflicts with Judge Cote's rulings that such documents are not relevant to this litigation. Consequently, we do not intend to produce them.

With regard to your concerns about FHFA's production of operational reviews of seller-servicers by External Operations Risk Management ("EORM"), the group at Freddie Mac responsible for operational reviews on the single-family side of Freddie Mac's business, we can confirm that FHFA intends to produce only those operational reviews from EORM that concern seller-servicers that are also Originators and that resulted in assessments of "marginal" or "poor." FHFA offered to produce these documents as a compromise, even though none of those reports were provided to the PLS traders or their supervisors, because you expressed concern about a very specific situation—instances in which an Originator received a "caution" grade in the operational review conducted by EORM and the PLS traders decided to proceed with the transaction. In contrast, EORM reviews in which Originators received a positive rating, i.e., "Satisfactory" or higher, would not have lowered any Originator scores on the scorecards provided to the PLS traders. As a result, we intend to produce only those EORM reviews in

2

which Originators received a less desirable rating, i.e., "Marginal" or "Poor." We further confirm that FHFA intends to produce operational reviews of Originators by Alternative Markets Operations, the group responsible for conducting operational reviews for the PLS-side of Freddie Mac, regardless of whether the assessment was "marginal" or "poor."

With respect to your repeated request for documents related to the GSEs' use of automated valuation models to evaluate the Certificates, we can confirm that FHFA has not produced such documents because they do not exist. PLS traders and research analysts did not use automated valuation models to evaluate the Certificates or to make purchase decisions. The loan tapes you identify were used exclusively to ensure charter compliance and to calculate housing goals.

Finally, with regard to your request for documents related to Originators' submission of the Mortgage Loans to Freddie Mac's Loan Prospector system, it was Freddie Mac's practice to keep only the final Loan Prospector reports for the single family loans it purchased. This practice was consistent with document retention policies in place at the time. Single family loans run through Loan Prospector and purchased or insured by Freddie Mac would not have been included in the loans underlying the Securitizations.

Very truly yours,

/s/ *Richard A. Schirtzer*

Richard A. Schirtzer


cc: All Defense counsel of record.