quinn emanuel trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL: (212) 849-7000 FAX: (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7441**

WRITER'S INTERNET ADDRESS
**manishasheth@quinnemanuel.com**

February 1, 2013

<u>VIA EMAIL</u>

The Honorable Denise L. Cote
United States District Judge
Southern District of New York
500 Pearl Street, Room 1610
New York, New York 10007-1312

Re:  *FHFA v. Merrill Lynch & Co., Inc., et al.*, No. 11 Civ. 6202 (DLC)

Dear Judge Cote:

      We write on behalf of the Federal Housing Finance Agency as Conservator for the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation ("FHFA") to (1) report on the status of the parties' efforts to identify all documents that comprise the Loan Files and Guidelines relating to the Sample Loans,[1] pursuant to this Court's Expert Scheduling Order, dated November 26, 2012 (the "Order"); and (2) request certain relief that will enable the parties to complete early re-underwriting in accordance with the current schedule.

      **A.**    **Overview**

      The Order requires the parties in the Tranche 1 and 2 cases to "work together promptly on a good faith basis to identify all documents relating to the Sample Loans that comprise the loan origination files . . . and all underwriting guidelines applicable to such loans . . . ." Order ¶ 1. As this Court recognized prior to entering the Order, "the first step" in the re-underwriting process was for the parties to agree on what constitutes "a sufficiently complete loan file and matching set of guidelines such that it is worthwhile to begin the reunderwriting process." Nov. 19, 2012 Hr'g Tr. at

---

[1] Any capitalized terms used in this letter have the meanings as defined in the Expert Scheduling Order.

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois 60661-2510 | TEL (312) 705-7400 FAX (312) 705-7401
WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia 20004-2400 | TEL (202) 538-8000 FAX (202) 538-8100
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 20 7653 2000 FAX +44 20 7653 2100
TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 3 5510 1711 FAX +81 3 5510 1712
MANNHEIM | Mollstraße 42, 68165 Mannheim, Germany | TEL +49 621 43298 6000 FAX +49 621 43298 6100
MOSCOW | Paveletskaya Plaza, Paveletskaya Square, 2/3, 115054 Moscow, Russia | TEL +7 499 277 1000 FAX +7 499 277 1001
HAMBURG | An der Alster 3, 20099 Hamburg, Germany | TEL +49 40 89728 7000 FAX +49 40 89728 7100

9:9-13. At the December 17, 2012 status conference, the Court ordered the parties to meet and confer each week to reach agreement on Loan Files and applicable Guidelines.

Between December 17, 2012 and January 31, 2013, FHFA engaged in nine meet and confer sessions with the Merrill Lynch Defendants ("Merrill")[2] in an effort to reach agreement on Loan Files and applicable Guidelines. During that time, FHFA has identified the documents that comprise the loan origination files for 4,056 of the 7,300 Sample Loans,[3] and offered to stipulate to 3,433 of these Loans. FHFA has also identified the Guidelines it believes are applicable to 4,043 of the Sample Loans, and offered to stipulate to these Guidelines. In contrast, Merrill failed to make any proposals to FHFA either as to Loan Files or applicable Guidelines for any of the Sample Loans until the eve of the January 31, 2013 deadline. Despite Merrill's representations to this Court and FHFA that it would proceed "in good faith to work with FHFA to comply with the Court's order," Merrill has refused to stipulate to Loan Files or applicable Guidelines for *any* of the 7,300 Sample Loans.

In order to preserve the Court's early re-underwriting process and the current schedule, FHFA respectfully requests that this Court order Merrill to disclose Rebuttal Findings pursuant to the schedule set forth in the Order if FHFA determines to voluntarily disclose its Findings even in the absence of a stipulation between the parties as to Loan Files or Guidelines. Alternatively, FHFA respectfully requests that Merrill be required to disclose its Alternative Sets by June 5, 2013.

       **B.**       **Status of Production of Loan Files and Guidelines**

As of January 31, 2013, FHFA and Merrill (collectively, the "Parties") have worked together to obtain Loan Files for 4,065 of the Sample Loans. For 35 of the 72 Securitizations, at least 75 percent of the Sample Loans have been produced. A summary of the number of loans for which Loan Files have been produced for each Securitization is attached as Exhibit 1. The Parties are endeavoring to obtain the remaining 2,235 loans from the third parties listed in Exhibit 2. Additionally, Exhibit 2 identifies the Securitizations where there are outstanding Loan Files, the number of Loan Files outstanding for each Securitization, the subpoenaed third parties, and the status of the third party's production of such Loan Files. Of the additional 100 loans that were added to the Sample Loans on January 27, 2013, documents comprising the loan origination file for 34 loans have already been produced. FHFA will follow-up with third party subpoena recipients to prioritize the production of the remaining 66 Loan Files, and will issue new subpoenas if necessary.

---

[2] "Merrill Lynch" refers to Defendants Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith Inc., Merrill Lynch Mortgage Lending, Inc., Merrill Lynch Mortgage Capital Inc., First Franklin Financial Corp., Merrill Lynch Mortgage Investors, Inc., and Merrill Lynch Government Securities, Inc.

[3] On January 27, 2013, FHFA identified an additional 100 loans that would comprise the Sample Loans in the Merrill Action, bringing the total number of Sample Loans from 7,200 to 7,300. In accordance with its December 13, 2012 letter to the Court, FHFA supplemented its samples in the FHFA Actions to ensure that there would be at least 100 loans for each Supporting Loan Group. The Parties have not yet begun the process of discussing the Loan Files and applicable Guidelines for these additional loans. However, given Merrill's unwillingness to reach a stipulation as to the Loan File content or applicable Guidelines for any of the Sample Loans to date, FHFA believes that further discussions as to these additional 100 loans will be futile.

As of January 31, 2013, the Parties have also worked together to obtain Guidelines for 60 of the 108 Originators of the Sample Loans. Even for these 60 Originators, FHFA has not identified applicable Guidelines covering the entire period of time during which the Sample Loans were originated, and FHFA continues to search for and identify applicable Guidelines in productions from third parties.

FHFA remains in contact with each Originator of the Sample Loans, and has requested each Originator to prioritize the production of the loan origination files for the Sample Loans and relevant underwriting guidelines. In addition, FHFA has worked with Merrill to provide confidential loan information to Originators where necessary to identify Loan Files. Where an Originator did not respond to a subpoena issued by the Parties or there was a failure to serve the subpoena, FHFA has researched the acquiring entities or bankruptcy trustees to issue new subpoenas. FHFA has also pressed Merrill to follow-up on its subpoenas to Servicers of the Sample Loans to obtain Loan Files for Sample Loans originated by Originators who are now defunct or who destroyed such loan files years ago. More specifically, FHFA requested Merrill to send letters to such Servicers directing prioritization of loan origination file productions for the Sample Loans. Merrill sent this letter to the Servicers on January 29, 2013. In addition, FHFA recently discovered that Merrill never subpoenaed some Servicers, despite defendants' representation that all relevant Servicers were subpoenaed last year. As a result, FHFA requested that Merrill issue subpoenas to several of the Servicers that it previously failed to issue. Merrill has represented that it intends to issue these subpoenas.

### C.     Merrill's Response To The Court's Order And The Parties' Meet and Confer Sessions

Merrill's unwillingness to reach a stipulation either as to the best representation of a Loan File or the applicable Guidelines should come as no surprise. In fact, less than two weeks after the Court entered the Order, Merrill petitioned this Court to reconsider its ruling, and asked that it be permitted to return to a regime in which the notification of defects would occur primarily or exclusively by means of the exchange of final expert underwriting reports. Merrill based its request on its view that the Parties would rarely be able to stipulate that a Loan File was the best representation of the file existing at the time of origination due to the Parties' alleged inability to pinpoint those exact documents due to the production of incomplete loan files and multiple versions of the same loan file. Ex. 3 (Dec. 10, 2012 Letter from E. Bennett to Judge Cote) at 2 (stating that in light of "[t]he consequences that attach to a stipulation that a loan file is complete . . . the parties will rarely, if ever, find a securitization where they can agree that 75% of the loan files are complete.").

Then, at the December 14, 2012 status conference, Merrill's counsel backpedaled from its request in its December 10, 2012 letter, claiming that it was "prepared starting next week to meet and confer with FHFA about agreement on the loans that we do have already, both of us, and the guidelines that we both have, to make sure that we are on the same page on that." Dec. 14, 2012 Hr'g Tr. at 81:23-82:1. However, Merrill continued to posit to the Court that it may not be able to reach a stipulation with FHFA pursuant to the Order due to the fact that many of the loan files were in the possession of third parties and that Merrill was unable to find a matching guideline for many of the Sampled Loans. *Id*. at 83.

The Court did not accept Merrill's explanation and noted that the parties have been working on obtaining such documents from the third party Originators and Servicers for the past six months, and "[t]here is no basis to believe that a process that has been ongoing for at least six months already is going to be significantly transformed by another six months of work." *Id*. at 84:14-85:5. The Court ordered Merrill to meet and confer with FHFA on a weekly basis, recognizing the need for an ongoing process where the parties "have to undertake to arrive at that judgment that we have the best we're going to have based on reasonable efforts at this point in time of a recreation of an historical loan file that was used in the original underwriting process and the guidelines that apply to that loan file." Dec. 17, 2012 Hr'g Tr. at 44:5-9.

Pursuant to the Court's Order and its directives at the December 17, 2012 hearing, FHFA and Merrill have been engaged in discussions about Loan Files and Guidelines on a weekly basis. The Parties participated in their first meet and confer on December 20, 2012, and have engaged in a total of nine meet and confer sessions since the December 17, 2012 hearing.[4] In an effort to ensure that the Parties met the January 31, 2013 deadline in the Order, on December 20, 2012, FHFA proposed a schedule in which the Parties would discuss and potentially stipulate to Loan Files and applicable Guidelines for between 13 and 23 Securitizations each week with the goal of completing discussions as to 72 Securitizations in advance of the January 31 deadline. Not only did Merrill outright reject FHFA's proposed schedule as unrealistic, it failed to provide any counterproposal as to a schedule. Ex. 4 (Dec. 21, 2012 Email from R. Scarborough to M. Sheth) at 1. Nonetheless, FHFA proceeded to identify the documents comprising the Loan Files and the applicable Guidelines for the Sample Loans on a weekly basis.

### D.   Status of Identification of and Stipulation to Loan Files

As of January 31, 2013, FHFA has identified for Merrill the documents that comprise the Loan File for 3,433 of the Sample Loans, and has indicated that it is prepared to stipulate that these Loan Files are the best representation of the Loan File existing at the time of the loan's origination that the Parties have been able to recreate as of the time of such agreement pursuant to paragraph 2 of the Order.

From the beginning of the meet and confer process, Merrill has consistently declined to stipulate to any Loan File as the best representation of a Loan File existing at the time of the loan's origination that the Parties have been able to recreate. Merrill has taken the position that it would not be able to stipulate to any Loan File until it "reviewed the loan files to assess what is in them [and] determined whether there are additional sources to locate missing documents." Ex. 4 (Dec. 21, 2012 Email from R. Scarborough to M. Sheth) at 1.

In recognition of the fact that adopting Merrill's position would prevent the Parties from meeting the January 31 deadline, FHFA reminded Merrill that the purpose of stipulating to the Loan File was to allow the parties to commence the reunderwriting exercise, and thus, the relevant question for purposes of the Court's Order was when is a Loan File sufficiently complete to allow FHFA to commence the reunderwriting exercise. *See* Dec. 17, 2012 Hr'g Tr.

---

[4] These meet and confer sessions occurred on December 20, 2012, January 3, 2013, January 10, 2013, January 17, 2013, January 22, 2013, January 24, 2013, January 25, 2013, and two on January 30, 2013.

43:23-44:2 (Cote, J.) ("With respect to the matching or the discussions about when do we have a reasonably complete loan file, one that we have a sufficient confidence in to begin a re-underwriting process … [i]t has to be something that's discussed each week where you identify which loan files you think are fairly complete."). In that vein, FHFA proposed that a Loan File should be considered as sufficiently complete to begin reunderwriting provided it contained a credit file.[5] Rather than open each and every Loan File for the Sample Loans, FHFA proposed using a benchmark of 100 pages as a presumptive test that the Loan File contained a credit file. FHFA also expressed its willingness to include any other documents in existence at the time of origination that Merrill identified and any and all versions of the Loan File as comprising the Loan File, and suggested that the Parties stipulate to Loan Files where the Parties could agree on the Bates-numbers of the documents relating to such Loan File provided that the Loan File contained at least 100 pages. Merrill rejected this proposal, and continued to insist that it would need to open each Loan File, inventory its contents, and make an effort to obtain any missing documents before it would stipulate as to any Loan File.

In a final effort to reach agreement and address Merrill's concern that additional documents may be produced after the Parties stipulated to a Loan File, FHFA proposed that if either party identifies additional documents that comprise the loan origination file as it existed at the time of origination for a given loan, after the time that the Parties stipulate that the Loan File for a given loan is the best representation existing at the time of the loan's origination, but no later than two months before the initial expert report deadline, and the Parties jointly agree that the additional documents comprise the loan origination file as it existed at the time of origination for such loan, then the parties may agree to supplement, modify, or amend their prior stipulation as to such Loan File. FHFA further proposed that under such circumstances, any supplementation, modification, or amendment shall be considered to be good cause provided the parties are in agreement, even if it impacts more than ten percent of the FHFA Sample Loans for any given Securitization, which would increase FHFA's costs and effort necessary to re-underwrite the loan. Merrill also rejected this proposal on the ground that it should be allowed to unilaterally supplement documents without triggering the ten percent threshold.

Thus, although FHFA has identified the documents that comprise the Loan File for 3,433 of the Sample Loans, and has indicated that it is prepared to stipulate to these 3,433 Loan Files, Merrill has refused to stipulate to a single one of these loans. Merrill has remained steadfast that it needs to open each identified Loan File, inventory its contents, and search for any missing documents. Merrill's untenable position has prevented it from identifying a single loan file to which it is willing to stipulate.

### E. Status of Identification of and Stipulation to Applicable Underwriting Guidelines

As of January 31, 2013 FHFA has identified the Guidelines it believes are applicable for 4,043 of the Sample Loans, and has indicated that it is prepared to stipulate that these Guidelines are the applicable Guidelines for these 4,043 loans. In contrast, Merrill has not proposed any

---

[5] The credit file is the portion of the Loan File that contains information about the borrower's assets, income, liabilities, debts, and credit.

applicable Guidelines for the Sample Loans to which it is willing to stipulate; it has refused to stipulate to FHFA's proposed applicable Guidelines; and it has failed to provide any comments on FHFA's proposed Guidelines until the eve of the January 31, 2013 deadline, at which time it provided comments on only 186 of FHFA's proposed applicable Guidelines.

During the course of the meet and confer sessions, FHFA provided Merrill with proposed Guidelines that FHFA believed were applicable to 4,043 Sample Loans, including on January 10, 2013, January 23, 2013, and January 29, 2013. FHFA repeatedly asked Merrill if and when it would engage in substantive discussions about FHFA's proposed matches. In response, Merrill insisted that it was "not in a position to match guidelines to loan files," and would not be in a position to do so until it: (i) "receive[s] the guidelines and get[s] them loaded into the database" it was preparing; (ii) "open[s] the loan file to identify the date the loan was underwritten;" and (iii) "review[s] the loan file to ascertain whether there is additional evidence about what guideline, program code, and/or product matrix applied to that loan." Ex. 5 (Jan. 21, 2013 Email from R. Scarborough to M. Sheth) at 1. It was not until January 30, 2013, the eve of the deadline to stipulate that Merrill provided feedback to FHFA on any its proposed Guidelines.[6] Merrill's decision to wait until the eve of the deadline to provide FHFA with its comments is inconsistent with the intent of the Court's directive to engage in an "ongoing meet and confer process" where "each week" the Parties identify "the guidelines that apply to that loan file." Dec. 17, 2012 Hr'g Tr. at 44:4-15.[7] Had Merrill provided its comments on FHFA's proposed Guidelines matches earlier, FHFA would have had the opportunity to consider those comments and the Parties may have been able to reach stipulations on some Sample Loans in advance of the January 31, 2013 deadline.

In recognition of the dilemma caused by Merrill's untenable positions, FHFA proposed entering into a process-based stipulation pursuant to which the parties would agree to a method for determining the applicable Guidelines for each Sample Loan. *See* Exhibit 6 (Proposed Stipulation). FHFA's proposed stipulation identified the factors that should be considered in determining which Guidelines applied.[8] *Id*. ¶ 2. It also provided a framework for instances where there were multiple

---

[6] During the January 30, 2013 meet and confer session, Merrill informed FHFA that it reviewed its proposed matching for two of the 57 Securitizations, specifically FFML 2006-FF18 and FFMER 2007-2, for which FHFA had proposed at least some applicable Guidelines. FHFA had proposed its Guideline matches for these two Securitizations on January 10, 2013. FHFA is in the process of reviewing Merrill's comments and will revise its applicable Guidelines where appropriate.

[7] Merrill may attempt to justify its delay by arguing that it did not have the Guidelines produced by other defendants. FHFA repeatedly informed Merrill that it should seek copies of such Guidelines from the other defendants, consistent with the Protective Order dated May 30, 2012, which requires production of discovery materials across all Actions. On January 17, 2013, Merrill informed FHFA that it was experiencing delays in obtaining such Guidelines from other defendants. In an effort to move the process forward, FHFA agreed to re-produce the Guidelines produced to FHFA by other defendants, to Merrill provided that Merrill agreed to pay for the costs for such production. Merrill agreed to pay for such costs on January 25, 2013, and FHFA has confirmed with its vendor that it will be able to re-produce such Guidelines to Merrill by the week of February 4, 2013.

[8] Merrill agreed that (1) the product type, (2) the documentation type, (3) the geographic location, and (4) the rate-lock date, among others, should be considered in determining the applicable Guidelines. Although FHFA believes the loan application date, not the rate-lock date, is the date that should be used to determine the applicable Guidelines, for purposes of the matching exercise, FHFA was willing to use the rate-lock date in the spirit of compromise in reaching an agreement.

versions of the applicable guidelines, *id.* ¶ 3, and a tiered listing of alternative guidelines in instances where the applicable Guideline was not available. *Id.* ¶ 4. FHFA's proposed stipulation would also permit the Parties to supplement, modify, or amend their prior stipulation if either Party identified additional Guidelines that the Parties agreed were applicable to any given Sample Loan provided such additional Guidelines were identified two months before any initial expert deadline. Merrill rejected FHFA's proposed process-based stipulation. Instead, contrary to this Court's instructions about the best representation of Loan Files and Guidelines that the Parties have been able to recreate, Merrill continued to insist until the eleventh hour, that it would not stipulate to any Guideline that was not the "correct" Guideline regardless of the unavailability of such "correct" Guideline.[9]

As a result, Merrill failed to engage in any substantive discussions relating to FHFA's loan-by-loan proposals identifying the applicable Guidelines for 4,043 Sample Loans until the eve of the January 31st deadline. Instead, Merrill has insisted that it cannot engage in such discussions until it receives all Guidelines, loads them into a database, opens the Loan Files, identifies the date on which the loan was underwritten, and reviews the loan files to determine the guideline used to underwrite the loan. Merrill's untenable position has prevented it from stipulating to the applicable Guidelines for *any* of the 7,300 Sample Loans.

    **F.**    **Relief Requested**

Merrill's primary position is that it will not stipulate to any Loan File unless it has completed an endless search for potentially missing documents and it will not stipulate to any Guidelines unless the Guidelines are referenced in the Loan File and has been produced in discovery. Such an approach is inconsistent with the "best representation" standard of this Court's Order.

FHFA is fully committed to completing the early re-underwriting process envisioned in this Court's November 26, 2012 Order. To accomplish this goal, FHFA requests the following relief:

    (1) In the event that the parties have not stipulated to the Loan File and applicable Guidelines for any Sample Loans, and FHFA determines to voluntarily disclose its Findings for such Sample Loans, Merrill should be required to disclose its Rebuttal Findings for such Sample Loans pursuant to the schedule set forth in the Order.

    (2) Such Rebuttal Findings should address, on a finding by finding basis, the substance of each of FHFA's Findings, including any rebuttals as to the applicable Guidelines.

---

[9] Merrill provided FHFA with comments to its process-based stipulation on January 25, 2013, and a counter-proposal on January 31, 2013. Merrill's January 31, 2013 counter-proposal proposed that the Parties should first identify the "correct guideline" by looking at "whether the loan file itself specifically identifies the applicable guideline." Ex. 7 (Jan. 31, 2013 Email from R. Scarborough to M. Sheth) at 1. Then, provided that such guideline matched certain "minimum criteria" identified in the Loan File, the Parties should agree to use the underwriting guideline closest in time to the applicable date but not more than 60 days prior to the applicable date. *Id.* It offered no proposals for identifying the applicable Guidelines in instances where the "correct guideline" was unavailable. Under Merrill's overly restrictive counter-proposal, because the Parties did not have many Guidelines within Merrill's proposed 60-day period, there would only be a handful of Securitizations where Merrill would be willing to stipulate to the applicable Guidelines for the Sample Loans.

      (3)  If Merrill believes that FHFA used an incomplete Loan File or inapplicable Guidelines, it should be required to identify by Bates number, the additional documents comprising the Loan File and the applicable Guidelines in its Rebuttal Findings, and to the extent that such documents were not previously produced to FHFA, it should be required to provide a copy of such documents with its Rebuttal Findings.  This Court should preclude Merrill from later relying on any such available documents that it does not identify in its Rebuttal Findings.

      (4)  FHFA should be permitted to amend its Findings in response to the Rebuttal Findings consistent with the Order.

      (5)  If the documents relied on by Merrill in its Rebuttal Findings were not previously produced to FHFA prior to its disclosure of its Findings, and such documents were in the possession, custody, and control of Merrill (as opposed to from third parties), Merrill should bear the costs of any additional re-underwriting conducted by FHFA to amend its Findings.

      Alternatively, FHFA respectfully requests that Merrill be required to disclose its Alternative Sets by June 5, 2013.

      Thank you for Your Honor's consideration of this submission.  FHFA is available at the Court's convenience for a status conference should the Court so desire.

Respectfully submitted,

/s/ Manisha M. Sheth

Manisha M. Sheth