# Exhibit 5

# Robert Trisotto

| | |
|---|---|
| **From:** | Scarborough, Ryan [RScarborough@wc.com] |
| **Sent:** | Monday, January 21, 2013 8:29 PM |
| **To:** | Manisha Sheth; Robert Trisotto |
| **Cc:** | Duggan, Lisa; Cady, Steven |
| **Subject:** | FHFA v. ML:  Re-Underwriting Meet and Confers |

Manisha and Robert,

I look forward to talking again tomorrow at 10:00 a.m. and thought, in an effort to reach mutually agreeable resolutions and understandings, it would be helpful to put forth some of our thoughts on a few issues in advance.  I hope you don't mind receiving this email on a holiday evening, but hopefully it will help guide our discussion tomorrow.

1) <u>Obtaining Guidelines</u> – One of the difficulties we have with matching guidelines to loan files is that we have not yet received relevant guidelines that have already been produced to FHFA, much less identified a reasonable universe of guidelines for each originator in the Merrill case.  Many relevant guidelines are in productions made by other defendants to FHFA, but not to us.  So far FHFA has refused to provide them to us and instead has directed us to obtain them directly from the producing defendants.  We have been trying to do so but are understandably experiencing some delay in getting access to the materials from many different parties (although no defendant has refused to share them).  One way to speed up the process would be for FHFA to reconsider its earlier position and provide these guidelines to us.  We ask that you do so.

2) <u>Searching for Sample Loan Files in Third Party Productions</u> – As you know, between us we have so far located about 55% of the loan files for the loans in the FHFA sample for the Merrill case.  Almost all remaining loan files reside in the hands of third parties, such as originators, servicers, and the like.  Many of these originators and servicers have produced loan files to FHFA, Merrill, or other defendants in response to informal requests or subpoenas, which almost certainly will include loan files from FHFA's sample.  In order to identify these loan files (and guidelines, to the extent they were also produced), we suggest that Merrill review the responses it has received in response to the subpoenas it served.  Will FHFA agree to search the productions it has received?

3) <u>Bates-stamping Loan Files Produced by Third Parties</u> – On a related note, with respect to loans that are in your sample, it is not practical for the parties to proceed using copies of loan file documents produced by third parties that do not bear any Bates-stamp on the actual pages.  We are willing to share the burden/cost of having these materials Bates-stamped.  Please let us know your position on this promptly so that the process does not get further delayed.

4) <u>Stipulations Regarding Loan File Status</u> – For the loans in the Merrill case, many of the loan files are incomplete because they come from many different originators and, in any event, have been transferred, separated, or reassembled on many occasions over a number of years.  When it comes to stipulating to the best representation of each loan file, therefore, we are not comfortable doing so until the loan file has been opened, inventoried, and an effort has been made to obtain missing documents (either from internal Bank sources or from third-party productions or other sources).  FHFA has declined to do so; as we have told you, we are conducting such an inventory and obtaining the help of our client in attempting to locate missing documents.  Moreover, it is likely that other versions of the same loan file may already have been produced by third parties (whose productions have not yet been reviewed), and therefore these files may have some or all of the missing documents.  We are working diligently to accomplish what we consider to be a mutually beneficial task.  But it is taking time and it realistically cannot be completed by January 31.  If we can agree on a stipulation that recognizes that additional documents

may be added to the loan file and considered by the parties' respective experts without being subject to the "good cause" standard or the "ten (10) percent" provisions set forth in Paragraph 7 of the Court's Expert Scheduling Order, then, subject to final approval by our firm and our client, we may be open to entering into loan file stipulations now without having first opened each loan file, inventoried its contents, and made an effort to obtain missing documents.  Is this something you are willing to consider?

5) <u>Stipulations Regarding Guideline Matching</u> – While I appreciate that you have been sending me a spreadsheet with your purported guideline matches (based on loan tape data, and not on a review of actual loan files), I am not in a position to match guidelines to loan files until (i) we receive the guidelines and get them loaded into a database; (ii) we open the loan file to identify the date the loan was underwritten; and (iii) we review the loan file to ascertain whether there is additional evidence about what guideline, program code, and/or product matrix applied to that loan.  Again subject to the same caveats mentioned above, we are open to considering a process-based stipulation that attempts to identify "preliminary matches" without opening loan files, so long as the stipulation also recognizes that if either party subsequently determines that the loan was underwritten using a different guideline from the preliminary match, then the parties agree that the loan will be re-underwritten using the correct guideline (and the "good cause" standard and the "ten (10) percent" provisions set forth in Paragraph 7 of the Court's Expert Scheduling Order will not apply).  If the correct guideline is not available, then I would think that the stipulation would have to provide that it would be null and void (and therefore no party could refer to it at trial).  In that circumstance, you would be free to re-underwrite the loan to any guideline or standard you thought appropriate, and we would have reserved all rights regarding our response.  Let me know what you think when we talk tomorrow.

6) <u>Reconciling produced loan files</u> – I understand that you have now been able to reconcile close to 4,000 produced loan files based on data we provided, which is up substantially from FHFA's original estimate of only 2,250 produced loan files.  I am glad that the information we provided last week was helpful to FHFA in identifying many of the sample loan files that have already been produced.  On the call last week, Robert mentioned that FHFA was continuing to try to reconcile a handful of loan files on our list.  Please let me know where things stand on that front at some point this week.

All of the foregoing is shared with you in the spirit of cooperation and trying to expedite the process for resolving our disputes.  I have not yet shared these proposals with my client or received final sign-off within my firm, so please recognize that the foregoing is still subject to approval on my end.

-Ryan

**Ryan Scarborough**
**Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington, DC 20005
(P) 202-434-5173 | (F) 202-434-5029
rscarborough@wc.com | www.wc.com/rscarborough

```
NOTICE:

This message is intended for the use of the individual or entity
to which it is addressed and may contain information that is privileged,
confidential and exempt from disclosure under applicable law. If the reader
of this message is not the intended recipient or the employee or agent
responsible for delivering this message to the intended recipient, you are
hereby notified that any dissemination, distribution or copying of this
```

communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply or by telephone (call us collect at (202) 434-5000) and immediately delete this message and all its attachments.