# Exhibit 6

## Robert Trisotto

| | |
|---|---|
| **From:** | Manisha Sheth |
| **Sent:** | Thursday, January 24, 2013 2:18 PM |
| **To:** | Robert Trisotto; Scarborough, Ryan |
| **Cc:** | Duggan, Lisa; Cady, Steven; Jeffrey Miller; Brittany Frassetto; Zachary Williams; Erica Taggart |
| **Subject:** | RE: FHFA v. ML:  Re-Underwriting Meet and Confers |
| **Attachments:** | 5142062_2_Merrill Lynch Loan File and Guideline Process Stip.DOC |

Ryan,

Attached is a proposed process stipulation for discussion purposes. Please note that this draft is subject to further review and comment from our client but we wanted to get it to you to give a framework to our discussions.  Looking forward to talking at 4pm.

Best,

Manisha

---

**From:** Robert Trisotto
**Sent:** Wednesday, January 23, 2013 4:11 PM
**To:** Scarborough, Ryan; Manisha Sheth
**Cc:** Duggan, Lisa; Cady, Steven; Jeffrey Miller; Brittany Frassetto; Zachary Williams
**Subject:** RE: FHFA v. ML: Re-Underwriting Meet and Confers

Ryan,

On yesterday's meet-and-confer, we stated that we would send you information on the 26 loan files that we have been unable to reconcile that were contained in Merrill's January 3, 2013 spreadsheet.  The 26 loan files were contained in Merrill's December 17, 2012 production.  The password Merrill provided FHFA for this production, "FhfaProd%2012", was not permitting our vendors to access the media in order to reconcile the loan files.  We have since determined the correct password is "FhfaProd2012" and are able to reconcile the loan files.

Additionally, in keeping with the Expert Scheduling Order, I have attached for your review an updated loan file and underwriting guideline template containing FHFA's proposed matches.  Securitizations reflected in the template since the last version we sent you include:

- FFMER 2007-1
- FFMER 2007-H1
- FFML 2007-FF1
- INDX 2005-AR33
- INDX 2006-AR7
- INDX 2007-FLX4
- INDX 2007-FLX5
- INDX 2007-FLX6
- MANA 2007-A1
- MANA 2007-A3
- MLMI 2005-HE3
- MLMI 2006-A3
- MLMI 2006-AHL1
- MLMI 2006-HE5
- MLMI 2006-RM3
- MLMI 2006-RM4
- MLMI 2006-RM5

- MLMI 2006-WMC1
- MLMI 2006-WMC2
- MLMI 2007-HE1
- SURF 2006-AB3
- SURF 2006-BC4
- SURF 2007-AB1
- SURF 2007-BC1

FHFA continues to work on matching the underwriting guidelines and loan files for the remaining Securitizations.  We will send additional proposed matches for your review once they are completed.  We are available to meet-and-confer to discuss our proposed matches.

Thanks,
Robert

---

**From:** Scarborough, Ryan [mailto:RScarborough@wc.com]
**Sent:** Monday, January 21, 2013 8:29 PM
**To:** Manisha Sheth; Robert Trisotto
**Cc:** Duggan, Lisa; Cady, Steven
**Subject:** FHFA v. ML: Re-Underwriting Meet and Confers

Manisha and Robert,

I look forward to talking again tomorrow at 10:00 a.m. and thought, in an effort to reach mutually agreeable resolutions and understandings, it would be helpful to put forth some of our thoughts on a few issues in advance.  I hope you don't mind receiving this email on a holiday evening, but hopefully it will help guide our discussion tomorrow.

1) <u>Obtaining Guidelines</u> – One of the difficulties we have with matching guidelines to loan files is that we have not yet received relevant guidelines that have already been produced to FHFA, much less identified a reasonable universe of guidelines for each originator in the Merrill case.  Many relevant guidelines are in productions made by other defendants to FHFA, but not to us.  So far FHFA has refused to provide them to us and instead has directed us to obtain them directly from the producing defendants.  We have been trying to do so but are understandably experiencing some delay in getting access to the materials from many different parties (although no defendant has refused to share them).  One way to speed up the process would be for FHFA to reconsider its earlier position and provide these guidelines to us.  We ask that you do so.

2) <u>Searching for Sample Loan Files in Third Party Productions</u> – As you know, between us we have so far located about 55% of the loan files for the loans in the FHFA sample for the Merrill case.  Almost all remaining loan files reside in the hands of third parties, such as originators, servicers, and the like.  Many of these originators and servicers have produced loan files to FHFA, Merrill, or other defendants in response to informal requests or subpoenas, which almost certainly will include loan files from FHFA's sample.  In order to identify these loan files (and guidelines, to the extent they were also produced), we suggest that Merrill review the responses it has received in response to the subpoenas it served.  Will FHFA agree to search the productions it has received?

3) <u>Bates-stamping Loan Files Produced by Third Parties</u> – On a related note, with respect to loans that are in your sample, it is not practical for the parties to proceed using copies of loan file documents produced by third parties that do not bear any Bates-stamp on the actual pages.  We are willing to share the burden/cost of having these materials Bates-stamped.  Please let us know your position on this promptly so that the process does not get further delayed.

4) <u>Stipulations Regarding Loan File Status</u> – For the loans in the Merrill case, many of the loan files are incomplete because they come from many different originators and, in any event, have been transferred, separated, or reassembled on many occasions over a number of years.  When it comes to stipulating to the best representation of each loan file, therefore, we are not comfortable doing so until the loan file has been opened, inventoried, and an effort has been made to obtain missing documents (either from internal Bank sources or from third-party productions or other sources).  FHFA has declined to do so; as we have told you, we are conducting such an inventory and obtaining the help of our client in attempting to locate missing documents.  Moreover, it is likely that other versions of the same loan file may already have been produced by third parties (whose productions have not yet been reviewed), and therefore these files may have some or all of the missing documents.  We are working diligently to accomplish what we consider to be a mutually beneficial task.  But it is taking time and it realistically cannot be completed by January 31.  If we can agree on a stipulation that recognizes that additional documents may be added to the loan file and considered by the parties' respective experts without being subject to the "good cause" standard or the "ten (10) percent" provisions set forth in Paragraph 7 of the Court's Expert Scheduling Order, then, subject to final approval by our firm and our client, we may be open to entering into loan file stipulations now without having first opened each loan file, inventoried its contents, and made an effort to obtain missing documents.  Is this something you are willing to consider?

5) <u>Stipulations Regarding Guideline Matching</u> – While I appreciate that you have been sending me a spreadsheet with your purported guideline matches (based on loan tape data, and not on a review of actual loan files), I am not in a position to match guidelines to loan files until (i) we receive the guidelines and get them loaded into a database; (ii) we open the loan file to identify the date the loan was underwritten; and (iii) we review the loan file to ascertain whether there is additional evidence about what guideline, program code, and/or product matrix applied to that loan.  Again subject to the same caveats mentioned above, we are open to considering a process-based stipulation that attempts to identify "preliminary matches" without opening loan files, so long as the stipulation also recognizes that if either party subsequently determines that the loan was underwritten using a different guideline from the preliminary match, then the parties agree that the loan will be re-underwritten using the correct guideline (and the "good cause" standard and the "ten (10) percent" provisions set forth in Paragraph 7 of the Court's Expert Scheduling Order will not apply).  If the correct guideline is not available, then I would think that the stipulation would have to provide that it would be null and void (and therefore no party could refer to it at trial).  In that circumstance, you would be free to re-underwrite the loan to any guideline or standard you thought appropriate, and we would have reserved all rights regarding our response.  Let me know what you think when we talk tomorrow.

6) <u>Reconciling produced loan files</u> – I understand that you have now been able to reconcile close to 4,000 produced loan files based on data we provided, which is up substantially from FHFA's original estimate of only 2,250 produced loan files.  I am glad that the information we provided last week was helpful to FHFA in identifying many of the sample loan files that have already been produced.  On the call last week, Robert mentioned that FHFA was continuing to try to reconcile a handful of loan files on our list.  Please let me know where things stand on that front at some point this week.

All of the foregoing is shared with you in the spirit of cooperation and trying to expedite the process for resolving our disputes.  I have not yet shared these proposals with my client or received final sign-off within my firm, so please recognize that the foregoing is still subject to approval on my end.

-Ryan

**Ryan Scarborough**

**Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington, DC 20005
(P) 202-434-5173 | (F) 202-434-5029
rscarborough@wc.com | www.wc.com/rscarborough

---

```
NOTICE:

This message is intended for the use of the individual or entity
to which it is addressed and may contain information that is privileged,
confidential and exempt from disclosure under applicable law. If the reader
of this message is not the intended recipient or the employee or agent
responsible for delivering this message to the intended recipient, you are
hereby notified that any dissemination, distribution or copying of this
communication is strictly prohibited. If you have received this communication
in error, please notify us immediately by reply or by telephone
(call us collect at (202) 434-5000) and immediately delete this message
and all its attachments.
```

DRAFT: FOR DISCUSSION PURPOSES ONLY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL HOUSING FINANCE AGENCY, AS CONSERVATOR FOR THE FEDERAL NATIONAL MORTGAGE ASSOCIATION AND THE FEDERAL HOME LOAN MORTGAGE CORPORATION,<br><br>Plaintiff,<br><br>-against-<br><br>MERRILL LYNCH & CO., INC., et al.,<br><br>Defendants. | **11 CIV. 6202 (DLC)** |

**STIPULATION REGARDING IDENTIFICATION OF LOAN FILES
AND APPLICABLE UNDERWRITING GUIDELINES**

WHEREAS, pursuant to this Court's Expert Scheduling Order dated November 26, 2012, Plaintiff Federal Housing Finance Agency ("FHFA") and Defendants Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith Inc., Merrill Lynch Mortgage Lending, Inc., Merrill Lynch Mortgage Capital Inc., First Franklin Financial Corp., Merrill Lynch Mortgage Investors, Inc., and Merrill Lynch Government Securities, Inc. ("Merrill") (together, the "Parties") have engaged in a lengthy meet-and-confer process to identify all documents relating to the Sample Loans[1] that comprise the loan origination file, and all underwriting guidelines applicable to such Sample Loans;

WHEREAS, FHFA has identified the documents that comprise the loan origination files for [insert #] of the Samples Loans;

---

[1]   Any capitalized terms used in this Stipulation shall have the same meaning as defined in the Expert Scheduling Order.

DRAFT: FOR DISCUSSION PURPOSES ONLY

WHEREAS, FHFA has proposed that a loan file that contains at least 100 pages and the Credit File[2] will be deemed to sufficiently complete to enable it to reunderwrite such loan; and Merrill has taken the position that it is not willing to stipulate that the loan file is the best representation of the file at the time of origination until the loan file has been opened, inventoried, and an effort has been made to obtain the missing documents;

WHEREAS, FHFA has provided to Merrill proposed guideline matching for 2443 of the 7200 Sample Loans, and Merrill has taken the position that it is not in a position to match guidelines to loan files until (i) it receives all guidelines and loads them onto a database; (ii) it opens each loan file to identify the date the loan was underwritten; and (iii) it reviews each loan file to ascertain whether there is additional evidence about what guideline, program code, and/or product matrix applied to that loan;

WHEREAS, as a result, the Parties have been unable to reach agreement as to any of the 7200 Sample Loans that the documents identified are the "best representation of the Loan File existing at the time of the loan's origination that the parties have been able to recreate as of the time of such agreement or as to the underwriting guidelines applicable to such Sample Loans;

WHEREAS, the Parties have agreed to the methodology described below to identify the applicable underwriting guideline in an effort to comply with this Court's Expert Scheduling Order by January 31, 2013;

IT IS NOW STIPULATED AND AGREED BY THE PARTIES THAT:

1.      If either Party identifies additional documents that comprise the loan origination file as it existed at the time of origination for a given loan, after the time that the Parties stipulate that the Loan File for a given loan is the best representation existing at the time of the loan's

---

[2]   A Credit File is that portion of the Loan File that contains information about the borrower's assets, income, liabilities, debts, and credit.

DRAFT: FOR DISCUSSION PURPOSES ONLY

origination pursuant to Paragraph 1 of the Expert Scheduling Order, but no later than two months

before the initial expert report deadline, and the Parties jointly agree that the additional

documents comprise the loan origination file as it existed at the time of origination for such loan,

the parties may agree to supplement, modify, or amend their prior stipulation as to such Loan

File.  Under such circumstances, any supplementation, modification, or amendment shall be

considered to be good cause provided the parties are in agreement, even if it impacts more than

ten percent of the FHFA Sample Loans for any given Securitization.

2.     The Parties agree that in determining which guideline applies to any given loan,

the product type, documentation program, and geographic location should be considered.

3.     In the instance where there are multiple versions of the applicable guideline, the

Parties agree to use the rate lock date to identify the applicable underwriting guidelines by

finding the guideline that is closest in time to the rate lock date but not after the closing date of

the loan.  In the event that the loan file does not contain the rate lock date, the Parties agree to

use the loan application date to identify the applicable underwriting guideline.  In the event that

the loan file does not contain the loan application date, the Parties agree to use the earliest date

that the credit report was pulled.  Finally, if the loan file does not contain the credit report, the

Parties agree to use two months prior to the loan closing date as a proxy for the rate lock date.

4.     In the event that the loan was underwritten using an automated underwriting

system ("AUS"), the Parties agree to use the output of the AUS to presumptively determine

compliance with applicable underwriting guidelines.  If the output from the AUS is not available,

or the loan was manually underwritten, the Parties agree to use the guideline referenced in the

loan file provided that it matches the product type, documentation program, and geographic

location of the underlying property.  In the event that the guideline referenced in the loan file is

not available or no guideline is referenced in the loan file, the Parties agree to use the guideline

that is closest in time to one month before the loan closing date but not to exceed 90 days before

the loan closing date.  If no such guideline is available, the Parties agree to use the guideline that

is closest in time to one month before the loan closing date if available and prudent and

customary underwriting standards applicable to loans sold in the secondary market at the time.

5.      In instances where there are multiple versions of the applicable guideline, the

Parties agree to use the underwriting guideline that is closest in time to one month before the

loan closing date, but not after the closing date of the loan.

6.      If either Party identifies additional underwriting guidelines that are applicable to

any given Sample Loan after the time that the Parties stipulate that certain underwriting

guidelines are applicable to such loan pursuant to Paragraph 1 of the Expert Scheduling Order,

but no less than two months before the initial expert report deadline, and the Parties jointly agree

that such additional guidelines are applicable, the parties may agree to supplement, modify, or

amend their prior stipulation as to such Loan File.  Under such circumstances, any

supplementation, modification, or amendment shall be considered to be good cause provided the

parties are in agreement, even if it impacts more than ten percent of the FHFA Sample Loans for

any given Securitization.  The priority ordering of applicable guidelines described in Paragraph 4

above, shall apply.

7.      Nothing in this Stipulation will trigger FHFA's obligations pursuant to Paragraph

3 of the Expert Scheduling Order unless the Parties have (i) a Loan File which contains a credit

file and (ii) one of the underwriting guidelines specified above.

DRAFT: FOR DISCUSSION PURPOSES ONLY

8.      Nothing in this Stipulation will trigger FHFA's obligations pursuant to Paragraph 4 of the Expert Scheduling Order unless the Parties are in agreement that all avenues of obtaining the Loan File and applicable underwriting guidelines from third parties have been exhausted.

9.      The Parties agree that this Stipulation was entered by the Parties to reach a good faith stipulation as to the applicable underwriting guideline in accordance with the deadlines set forth in the Expert Scheduling Order.  The Parties agree that neither Party may use the agreements reached herein for any purpose other than expressly provided for in the Expert Scheduling Order, including that they shall not use the agreements reached herein as evidence, whether for purposes of discovery, examination, impeachment, expert disqualification, or otherwise as set forth in Paragraph 8 in the Expert Scheduling Order.  In addition, neither Party may use the agreements reached herein to make arguments criticizing each other or each other's experts for using the underwriting guidelines and dates specified in this Stipulation to reunderwrite the Sample Loans.

DRAFT: FOR DISCUSSION PURPOSES ONLY

Date:          January __, 2013
               New York, New York


QUINN EMANUEL URQUHART &              WILLIAMS & CONNOLLY LLP
SULLIVAN, LLP


By:_____          By:_____
   Manisha M. Sheth                      Ryan Scarborough
   51 Madison Avenue, 22nd Floor         725 Twelfth Street, N.W.
   New York, New York 10010             Washington, D.C. 20005

   *Attorney for Plaintiff Federal Housing Finance*      *Attorney for Defendants Merrill Lynch &*
   *Agency*                                              *Co., Inc.; Merrill Lynch, Pierce, Fenner &*
                                                         *Smith Inc.; Merrill Lynch Mortgage*
                                                         *Lending, Inc.; Merrill Lynch Mortgage*
                                                         *Capital Inc.; First Franklin Financial*
                                                         *Corp.; Merrill Lynch Mortgage Investors,*
                                                         *Inc.; Merrill Lynch Government Securities,*
                                                         *Inc.*


**SO ORDERED:**


By: _____
The Honorable Denise L. Cote, U.S.D.J.


Date:_____