# Exhibit 7

## Robert Trisotto

| | |
|---|---|
| **From:** | Scarborough, Ryan [RScarborough@wc.com] |
| **Sent:** | Thursday, January 31, 2013 10:21 AM |
| **To:** | Robert Trisotto; Manisha Sheth |
| **Cc:** | Urbanczyk, Stephen; Duggan, Lisa; Blankenstein, Eric |
| **Subject:** | FHFA v. ML -- further thoughts |

Robert and Manisha,

To follow up on our discussion last night, you asked us to provide specific language that might be used to guide the parties' efforts to identify the correct guideline that was used to originate each loan.  I am still waiting for confirmation from my client, but in the interest of time wanted to share this with you now.  For purposes of discussion only, I would suggest an approach along the following lines:

When each loan file is "cracked," the Parties agree to follow the process explained below in order to identify the correct guideline that was used to originate the loan.

     a.   Determine whether the loan file itself specifically identifies the applicable guideline, either by name or program code.

     b.   To determine the applicable date, the Parties shall first verify whether the each originator's guidelines specified the applicable date (e.g., if a guideline provides that the loan must be originated according to guidelines in effect at the time of closing, then the Parties agree to use the closing date).  If the guidelines do not dictate the applicable date, the Parties agree to use the rate lock date to identify the applicable underwriting guidelines by finding the guideline that is closest in time prior to the rate lock date.  In the event that the loan file does not contain the rate lock date, the Parties agree to use the loan approval date to identify the applicable underwriting guideline that is closest in time prior to the loan approval date.  In the event that the loan file does not contain the loan approval date, the Parties agree to use the earliest date the underwriting institution pulled a credit report.

     c.   Provided that the criteria identified below is properly matched, the Parties agree that the guideline closest in time to the applicable date (but no more than 60 days prior to the applicable date) is the correct guideline.  The parties may consult on a case-by-case basis as to whether any guideline that was issued more than 60 days prior to the applicable date is the correct guideline.

     d.   To determine the correct guideline, the Parties agree that the following minimum criteria shall be considered:
- Originator
- Channel (e.g., whole, retail, correspondent)
- Fixed or Arm
- Lien Position
- Loan Program Name (e.g., Interest Only, 30-Year Fixed)
- Loan Program ID
- Product Type (e.g., Interest Only, Fixed)
- Documentation Type (e.g., Full, Stated Income)
- Loan amount
- Geographic location (if applicable)

To make this process work effectively and within the existing schedule, and to accommodate FHFA's desire to only crack the loan file once (during re-underwriting) while also ensuring our ability to ascertain the correct guideline after cracking

the loan file, we would agree to provide rebuttal responses to all voluntary disclosures by FHFA within the same 28-day time frame contemplated by the Court's Expert Scheduling Order if we can agree on certain conditions at the outset. First, in order to ensure adequate staffing and preparation, we would ask that FHFA start its voluntary disclosures in mid-March (we can be flexible on this, possibly as early as the beginning of March or as late as the beginning of April, as we mainly want to know in advance when we need to be ready to start). Second, we would ask that FHFA provide two weeks advance notice identifying which securitizations (or individual loans, if FHFA elects not to proceed on a securitization basis) will be disclosed. And third, we would ask FHFA's agreement that our rebuttal responses would occur at a rate of approximately 1,600 per month (although we would endeavor to do as many as 2,000). To the extent FHFA provides disclosures for more than 1,600 loan files in a given month, we would get additional time to respond to loans in excess of the 1,600. If we can reach agreement along these lines, we will agree to postpone FHFA's deadline for deciding whether to substitute missing loan files.

-Ryan

**Ryan Scarborough**
**Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington, DC 20005
(P) 202-434-5173 | (F) 202-434-5029
rscarborough@wc.com | www.wc.com/rscarborough

NOTICE:

This message is intended for the use of the individual or entity
to which it is addressed and may contain information that is privileged,
confidential and exempt from disclosure under applicable law. If the reader
of this message is not the intended recipient or the employee or agent
responsible for delivering this message to the intended recipient, you are
hereby notified that any dissemination, distribution or copying of this
communication is strictly prohibited. If you have received this communication
in error, please notify us immediately by reply or by telephone
(call us collect at (202) 434-5000) and immediately delete this message
and all its attachments.