LAW OFFICES

## WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

RYAN T. SCARBOROUGH
(202) 434-5173
rscarborough@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

February 5, 2013

<u>Via Electronic Mail</u>

The Honorable Denise L. Cote
United States District Judge
500 Pearl Street, Room 1610
New York, NY 10007-1312

      Re:    <u>FHFA v. Merrill Lynch, 1:11-cv-06202-DLC</u>

Dear Judge Cote:

      In advance of the next status conference with the Court, Merrill Lynch respectfully submits the following brief response to FHFA's status report concerning loan file and guideline stipulations.

      Contrary to FHFA's statement that "Merrill failed to make any proposals to FHFA either as to Loan File or applicable Guidelines for any of the sample loans," Merrill made numerous proposals to FHFA inviting its participation in a shared effort to reach accurate stipulations.  For example:

- Merrill proposed dividing up the loan files in the 72 securitizations to inventory their contents and ascertain the guideline used to underwrite the loan.  Unwilling to participate in such a process, FHFA rebuffed this proposal each time Merrill raised it, and instead insisted that stipulations could occur without opening the loan files.

- To expedite its solitary review of loan files, Merrill proposed that FHFA provide a checklist of the documents that it would contend constitute an underwriting "defect" if missing from the loan file.  FHFA rejected this proposed approach, even though it had the potential to streamline Merrill's review of loan files.

- FHFA declined Merrill's suggestion that the parties agree to stipulate to the contents of all produced loan files and a "preliminary guideline match" based solely on loan tape data so long as either side had the right to rescind the preliminary match after reviewing the contents of the loan file if it turned out to be incorrect.

- When it became clear that the January 31st deadline could not be met without FHFA's joint efforts in opening loan files, Merrill proposed that the parties agree to extend the time to seek the production of missing loan files (thereby postponing FHFA's obligation to substitute loan files), identify missing documents from those

WILLIAMS & CONNOLLY LLP
The Honorable Denise L. Cote
February 5, 2013
Page 2

files, and identify the correct guideline that was used to underwrite the loan. FHFA refused to agree to any extension even though it would not affect the expert report deadlines under the Court's existing scheduling order.

- Finally, on January 30th, after manually matching guidelines for two securitizations, Merrill proposed guideline matches that revealed that FHFA's proposed matches (which were based on nothing more than loan tape data) were wrong 80% of the time. FHFA still has not responded to these proposed matches, as to which Merrill is prepared to stipulate.

FHFA's suggestion that this process failed because Merrill Lynch refused to cooperate is incorrect. Were it not for Merrill's cooperation, FHFA would still be searching for nearly 2,000 loan files that Merrill knew had already been produced. Were it not for Merrill's cooperation, FHFA would have made the wrong guideline matches 80% of the time for two securitizations. The real reason that it turned out to be impossible to meet the January 31st deadline was that accurately matching a loan file to the correct underwriting guideline requires (1) a reasonably comprehensive set of guidelines for the relevant originator, and (2) loan-level data that can only be found inside each loan file. As to the former, we are missing guidelines for dozens of originators in the Merrill case. This problem is only exacerbated by FHFA's refusal to provide copies of the guidelines in its possession for nearly three weeks (from January 4th until January 24th), despite Merrill's repeated requests for copies of these guidelines.[1] As to the latter, there is no escaping that opening loan files to identify the data needed to make an accurate guideline match is time-consuming. FHFA's refusal to jointly engage in this process doomed Merrill's efforts to meet the deadline.

At the end of the day, it appears that FHFA has no incentive to assist efforts to re-create the best representation of each loan file because it intends to assert underwriting "defects" based on the very absence of those documents. Likewise, FHFA has little incentive to identify the correct guideline because it is looking for short-cuts (whether that be a guideline in a "waterfall" of guidelines progressively farther away from the actual source that was used to underwrite the loan, or simply defaulting to an unwritten standard of prudent underwriting). Merrill's insistence on accuracy should not be mistaken for a refusal to cooperate.

Respectfully submitted,

Ryan Scarborough

cc:    Counsel of Record

---

[1] Although FHFA eventually reversed course on January 24th, it insisted that Merrill pay the costs associated with this production – something that Merrill agreed to do the very next day. So far, Merrill still has not received copies of these guidelines.