**FHFA's Response to Defendants' Request for
Single-Family Due Diligence Summaries**

February 6, 2013

**V**IA **E**LECTRONIC **M**AIL
The Honorable Denise L. Cote
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Room 1610
New York, NY 10007-1312

Re:   *FHFA Actions*, No. 11-cv-5201, *et al*. (S.D.N.Y.) (DLC)

Dear Judge Cote:

We write on behalf of Plaintiff FHFA in response to Defendants' February 4, 2013 letter requesting that the Court order FHFA to search the files of persons who "had no responsibilities for PLS" for "due diligence summaries" reflecting defect, waiver and pull-through rates for the GSEs' purchases of pools of single-family prime, subprime, and Alt-A loans. (2/4/13 Ltr. from R. Klapper at 1) ("Klapper Ltr."). During the December 17 conference, the Court denied this request as overly broad. (12/17/12 Tr. at 74:3-7 ("The request as drafted is not targeted. It would create too great a burden, as Mr. Klapper admits, and the idea that we would at this point be seeking a massive increase in…custodians…is just not in the cards.")). Moreover, as Defendants concede, FHFA fulfilled the Court's directive from the December 17 conference to determine whether such documents are "'contained on a database[.]'" (Klapper Ltr. at 1 (quoting 12/17/12 Tr. at 74:13-15)). Yet Defendants again expand their requests for irrelevant single-family documents. Defendants continue to misstate the relevance of these documents and statistics. The summaries Defendants seek are of due diligence conducted by third-party firms like Clayton and were commissioned by the single-family bulk businesses when those businesses purchased pools of subprime and Alt-A whole loans.[1] (*See* Klapper Ltr. at Ex. F; Ex. H; Ex. J). Defendants' assertion that the defect, waiver, and pull-through rates from those single-family reviews are comparable to the PLS defect rates that FHFA has asserted in its Complaints—which are in excess of 90%—is incorrect. FHFA respectfully requests that the Court deny this request.

**Single-Family Due Diligence Is Not Relevant.** Defendants here rely on the same misstatements they made before and during the last hearing about the relevance of these documents and statistics. Defendants are mistaken because, among other reasons, the scope of the PLS loan file reviews referenced in the Complaints is very different from the single-family reviews conducted contemporaneously, as Defendants know. The contemporaneous Clayton-type diligence of a sample of single-family loans was confined to a review of the loan files and a comparison of the data in the files to loan tapes. By contrast, the PLS loan file review conducted in anticipation of filing the Complaints, like the re-underwriting process now underway, encompasses information from sources like employers, court filings, and other public records, as a means of demonstrating borrower misrepresentations, undisclosed or under-investigated debt, and fraud by originators and/or borrowers. The comparatively low "defect" rates found by Clayton in the single-family

---

[1] Neither GSE commissioned third-party diligence firms to perform due diligence on single-family bulk purchases of loans that they did not classify as Alt-A, Option ARM, or subprime (other than on a single occasion), and Fannie Mae generally used third-party firms to perform due diligence only on bulk purchases of subprime loans, not Alt-A loans.

context simply are not analogous to the PLS defect rates alleged in the Complaints, nor are they an "admission" by the GSEs (let alone competent proof) that those defect rates are overstated.

Defendants also fail to demonstrate that single-family "valuation due diligence" performed for the GSEs was comparable to the appraisal analysis in the Complaints.  The "review overview" in Exhibit J to Defendants' letter nowhere sets forth the criteria that Clayton applied to deem a single-family loan defective.  In addition, History Pro and Loan Safe, (*see* Klapper Ltr. at Ex. J), are not the same retroactive AVMs referenced in the Complaints (such as the Value Point4 AVM), and in some instances do not even generate valuation estimates.  History Pro, for example, provides sales data on comparable properties.  Defendants' premise again is the faulty one that any declaration of "defect" must be based on the same standards.

Nor is there an apples-to-apples comparison regarding "waiver" rates.  Defendants contend that they are entitled to adduce evidence that Freddie Mac "waived" in a higher percentage of loans on the single-family side found to be defective by Clayton than Goldman Sachs.  (12/17/12 Tr. at 72:24-73:12; 12/12/12 Ltr. from R. Klapper at Ex. C).  This argument fails because the single-family businesses did not conduct the same type of review as Defendants, or apply the same standards.  For example, Freddie Mac identified loans that it wished to have reviewed further for reasons entirely unrelated to compliance with underwriting guidelines.  Clayton categorized certain such loans as "material exceptions" solely to ensure that they would be reviewed further, not because the loans were determined to have been originated in violation of underwriting guidelines.  Thus, while Exhibit J notes that the "waiver" rate was based in part on 207 loans that were "flagged as material exceptions," (Klapper Ltr. at Ex. J, FHFA01335881), the loans were so designated to enable further review because they used an outdated form of a Freddie Mac loan application, not because there was an identified underwriting defect.  The waiver of such "defects" thus results in aggregate waiver rates that cannot meaningfully be compared to those of Defendants, who employed different standards and procedures to identify "exceptions."

**Production of the Requested Information Would Be Unduly Burdensome.**  Defendants also fail to establish a basis to reverse the Court's finding of undue burden.  FHFA's comment that the value of the loans on which the GSEs commissioned Clayton-type diligence was "tiny" was not any admission of lack of burden.  The point instead was that Defendants are wrong to claim that third-party diligence commissioned by the GSEs regarding single-family purchases set "the industry standard" as to PLS investments subject to securities laws.  (*See* 12/17/12 Tr. at 59:3-8).  Goldman Sachs alone securitized $29.5 billion worth of subprime loans from 2005 to 2006.  During the same period, the GSEs purchased a fraction of that amount.  Fannie Mae, for example, purchased only $3.6 billion in subprime whole loans between 2005 and 2006.[2]  The fact that the GSEs' purchases were a small fraction of the market, together with the lack of validity of the analogies drawn by Defendants, further reinforces the Court's prior ruling that production of the requested single-family documents would be unduly burdensome.  Nor can production of these documents be allowed without requiring the additionally burdensome, and irrelevant, discovery of documents and information necessary to rebut Defendants' claims of similarity.  Accordingly, Defendants' request for reconsideration should be denied in its entirety.

---

[2] The Clayton Trending Report on which Defendants relied in their December 12 submission shows that Clayton reviewed 111,999 loans for Goldman between 1Q06 and 2Q07, while reviewing only 2,985 loans for Freddie Mac during the same time period.  (12/12/12 Ltr. from R. Klapper at Ex. C, 5-6).

**FHFA's Response to Defendants' Request for
Single-Family Due Diligence Summaries**

Respectfully submitted,

/s/ Philippe Z. Selendy
Philippe Z. Selendy
(philippeselendy@quinnemanuel.com)
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorney for Plaintiff Federal Housing Finance Agency in FHFA v. UBS Americas, Inc., FHFA v. JPMorgan Chase & Co., FHFA v. Deutsche Bank AG, and FHFA v. Citigroup Inc., FHFA v. Goldman, Sachs & Co.*

/s/ Christine H. Chung
Christine H. Chung
(christinechung@quinnemanuel.com)
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

*Attorney for Plaintiff Federal Housing Finance Agency in FHFA v. First Horizon National Corp., FHFA v. Bank of America Corp., and FHFA v. Credit Suisse Holdings (USA), Inc.*

/s/ Richard A. Schirtzer
Richard A. Schirtzer
(richardschirtzer@quinnemanuel.com)
Adam Abensohn
(adamabensohn@quinnemanuel.com)
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

*Attorney for Plaintiff Federal Housing Finance Agency in FHFA v. HSBC North America Holdings, Inc. and FHFA v. Nomura Holding America, Inc.*

/s/ Manisha M. Sheth
Manisha M. Sheth
(manishasheth@quinnemanuel.com)
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

*Attorney for Plaintiff Federal Housing Finance Agency in FHFA v. UBS Americas, Inc., FHFA v. JPMorgan Chase & Co., FHFA v. Barclays Bank PLC, FHFA v. Citigroup Inc., and FHFA v. Merrill Lynch & Co., Inc.*

/s/ Kanchana Wangkeo Leung
Kanchana Wangkeo Leung
(kleung@kasowitz.com)
KASOWITZ, BENSON, TORRES &
    FRIEDMAN, LLP
1633 Broadway
New York, NY 10019

*Attorney for Plaintiff Federal Housing Finance Agency in FHFA v. Ally Financial Inc., FHFA v. Morgan Stanley, and FHFA v. SG Americas, Inc.*

cc:  All Counsel of Record (via email)