FHFA's Response to Defendants' Request for
Single-Family Due Diligence Policies

February 13, 2013

**VIA ELECTRONIC MAIL AND HAND DELIVERY**
The Honorable Denise L. Cote
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Room 1610
New York, NY 10007-1312

Re: *FHFA Actions*, No. 11-cv-5201, *et al.* (S.D.N.Y.) (DLC)

Dear Judge Cote:

We write on behalf of Plaintiff FHFA in response to Defendants' letter of today's date seeking an order compelling FHFA to produce due diligence policies governing the bulk purchases of whole loans by the GSEs' single-family businesses. (2/13/13 Ltr. from R. Klapper). At the outset, and as the Court is aware, FHFA has objected to Defendants' practice of making eve-of-conference applications.[1] Defendants' tactics unduly prejudice FHFA by not permitting it adequate time to meaningfully confer with its counsel about the last-minute submissions. In any event, Defendants' application is without merit and should be denied.

**FHFA Complied with the Court's December 17 Directive.** FHFA complied with the Court's December 17 directive and is not, as Defendants incorrectly assert, rearguing that directive. At the December 17 conference, after opining that it "would think that the industry standard is, in part, shaped by [the GSEs'] perception of what due diligence requires," the Court asked the parties to meet and confer about a "meaningful way that is non-burdensome" for FHFA to produce single-family policies. (12/17/12 Hrg. Tr. at 84:11-16). FHFA offered to discuss whether it could produce "something that shows the due diligence procedures that the GSEs were using on subprime loan purchases or essentially apples-to-apples purchases, to the extent there are apples-to-apples purchases." (*Id.* at 85:1-8). On behalf of Defendants, Mr. Klapper embraced the idea of discussing what diligence was analogous, saying that he "[a]bsolutely" would engage in the proposed discussion because he hoped to establish that even prime loans were "apples to apples in terms of policies." (*Id.* at 85:9-14). Nevertheless, after several meet-and-confer sessions, the parties could not agree that any policies are analogous.

**The Requested Discovery Is Not Relevant and Discovery Regarding The Policies Would Be Unduly Burdensome.** FHFA explained in its February 6 submission that Defendants have grossly overstated any purported relevance of the "due diligence" on which they are focused, which only reinforces the burden imposed by their requests. Defendants' latest letter relies on the same bald assertions that the Defendants' due diligence on the Securitizations was the

---

[1] As part of informing the Court of whether they thought an in-person conference would be necessary, the parties discussed on Monday the agenda items for Thursday's conference. Counsel for UBS stated that Defendants understood the deadlines for *all* submissions to the Court, pursuant to this Court's prior practice, to be mid-day Wednesday. Yet Defendants made a number of submissions this morning that they had not identified as agenda items on Monday. The timing of their submissions deprived FHFA of the ability to respond as far in advance of the conference as is customary.

"same," "similar," or "comparable" to that performed by the GSEs on their single-family bulk purchases. These claims lack merit. Most fundamentally, Defendants fail to support the key proposition that they have repeatedly urged on this Court: that the third-party due diligence commissioned by the GSEs' single-family businesses was so significant that it shaped the standard of that diligence. (*E.g.*, 12/17/13 Tr. at 59:3-8 (Mr. Klapper asserting that the GSEs' policies are relevant "to the adequacy of due diligence[]" because the GSEs are "the two largest purchases of residential mortgage loans as well as the largest securitizers or residential mortgage loans in the United States . . . and industry standards are in this and other ways set by" them). It is now clear that Defendants seek documents relating to due diligence conducted on a particular slice of the GSE's single-family businesses—that performed by third parties. (*See* 2/13/13 Ltr. from R. Klapper at 1 & Exs. E, F, G3). Such due diligence was limited, however, to that conducted during the GSEs' consideration of "bulk" purchases (and excluding "flow" purchases, which in any event were assessed for compliance with the GSEs' guidelines, not those of the originators).[2] Moreover, as FHFA explained in its February 6 submission, bulk purchases of subprime, Alt-A, and Option ARM loans—the *only* types of purchases on which either GSE commissioned third-party diligence—are dwarfed by those of Defendants. Goldman Sachs *alone* securitized eight times the number of subprime whole loans bought by Fannie Mae from 2005 to 2006. According to Clayton's own reports, it reviewed over *37 times* the number of loans for Goldman Sachs between 1Q06 to 2Q07 than it did for Freddie Mac. (12/12/12 Ltr. from R. Klapper at Ex. C, 5-6). It was Defendants, not the GSEs, that set the industry standard on third-party diligence. (*See, e.g.*, 2/13/13 Ltr. from R. Klapper at Ex. D, FHFA03314460). This circumstance alone should end the inquiry.

There is also no comparison to be drawn between the third-party diligence performed on loan pools that the GSEs' single-family bulk businesses considered purchasing and the diligence performed for Defendants on the Securitizations, without drawing the parties into a discovery and diligence sideshow that would be unduly burdensome to FHFA and fail to result in the production of probative material. To gather material fairly representing the third-party due diligence "policies" of the GSEs' bulk businesses would require FHFA to conduct new and significant single-family searches. In addition, Defendants ignore that the only comparison that they theorized that might have been relevant has proven insupportable. The point of establishing any "sameness," as Mr. Klapper explained it, was purportedly for Defendants to show that the GSEs "waived" a higher percentage of "material exception" loans into the pools they purchased than Defendants did into the pools they Securitized. (12/17/12 Tr. at 61:19-24). But as FHFA demonstrated in its February 6 letter, and Defendants have failed to refute, the third-party reports defined the "material exception" (or "defect") category uniquely for the GSEs such that "material exceptions" noted in that reporting were frequently *not* loans that violated underwriting guidelines. Given this circumstance, Defendants' assertions of the "similarities" of the due diligence reporting in other respects is immaterial (and factually incorrect). Defendants are proposing to cast a net in the GSEs' single-family businesses, based on speculation that they might find some "similarity" to the diligence practices of some part of those businesses sufficient to demonstrate the adequacy of their own diligence practices. The impropriety of the fishing is another reason to deny Defendants' application.

---

[2] In 2007 the value of the GSEs' bulk purchases, for all loan types, was less than 20% of the value of its total single-family loan purchases.

**FHFA's Response to Defendants' Request for Single-Family Due Diligence Policies**

Respectfully submitted,

/s/ Philippe Z. Selendy
Philippe Z. Selendy
(philippeselendy@quinnemanuel.com)
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorney for Plaintiff Federal Housing Finance Agency in FHFA v. UBS Americas, Inc., FHFA v. JPMorgan Chase & Co., FHFA v. Deutsche Bank AG, and FHFA v. Citigroup Inc., FHFA v. Goldman, Sachs & Co.*

/s/ Christine H. Chung
Christine H. Chung
(christinechung@quinnemanuel.com)
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

*Attorney for Plaintiff Federal Housing Finance Agency in FHFA v. First Horizon National Corp., FHFA v. Bank of America Corp., and FHFA v. Credit Suisse Holdings (USA), Inc.*

/s/ Richard A. Schirtzer
Richard A. Schirtzer
(richardschirtzer@quinnemanuel.com)
Adam Abensohn
(adamabensohn@quinnemanuel.com)
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

*Attorney for Plaintiff Federal Housing Finance Agency in FHFA v. HSBC North America Holdings, Inc. and FHFA v. Nomura Holding America, Inc.*

/s/ Manisha M. Sheth
Manisha M. Sheth
(manishasheth@quinnemanuel.com)
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

*Attorney for Plaintiff Federal Housing Finance Agency in FHFA v. UBS Americas, Inc., FHFA v. JPMorgan Chase & Co., FHFA v. Barclays Bank PLC, FHFA v. Citigroup Inc., and FHFA v. Merrill Lynch & Co., Inc.*

/s/ Kanchana Wangkeo Leung
Kanchana Wangkeo Leung
(kleung@kasowitz.com)
KASOWITZ, BENSON, TORRES &
    FRIEDMAN, LLP
1633 Broadway
New York, NY 10019

*Attorney for Plaintiff Federal Housing Finance Agency in FHFA v. Ally Financial Inc., FHFA v. Morgan Stanley, and FHFA v. SG Americas, Inc.*

cc: All Counsel of Record (via email)