**Letter re Goldman Sachs' Due Diligence Loans**

February 19, 2013

**VIA ELECTRONIC MAIL**
The Honorable Denise L. Cote
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1610
New York, NY 10007-1312

Re:    *FHFA v. Goldman, Sachs & Co., et al.*, 11 Civ. 6198 (S.D.N.Y.) (DLC)
       *FHFA v. JPMorgan Chase & Co., et al.*, 11 Civ. 6188 (S.D.N.Y.) (DLC)
       *FHFA v. Ally Financial Inc., et al.*, 11 Civ. 7010 (S.D.N.Y.) (DLC)

Dear Judge Cote:

      We write on behalf of Plaintiff Federal Housing Finance Agency ("FHFA") to update the Court on the status of Goldman Sachs' disclosure of information regarding its due diligence defense, including sufficient data to enable subpoenaed third parties to provide loan files and other documents relating to diligenced loans on a priority basis.  In a meet-and-confer on February 15, 2013, Goldman confirmed that it did not conduct *any* securitization-specific due diligence on loans.  Rather, it diligenced a subset of loans from each of 750 separate loan populations that it acquired over time, and it subsequently securitized unidentified fractions of those loan populations into the transactions that it sponsored.  Goldman acknowledged that its latest list of 225,000 purportedly "diligenced" loans, provided on January 28, 2013, reflects *all* "diligenced" loans from *all* populations from which *any* loan was included in *any* securitization at issue.[1]  It further represented that, for its attempted due diligence defense, it will rely on a sample or other partial set of this 225,000 subset of loans subjected to acquisition-level diligence.

      Goldman has for the first time agreed to provide, by the end of February, an identification of data regarding "most" of its "diligenced" loans in the Securitizations in the form of Exhibit A to FHFA's February 1 letter to this Court, including loans that were "dropped" from particular securitizations for failure to meet eligibility criteria.  Even now, however, Goldman will not agree to identify sufficient data on a timely basis to allow the prioritization of loan file collection and related information in fact discovery.  FHFA thus seeks an order that Goldman must (1) disclose all Exhibit A data by March 1, and (2) promptly disclose the sample or other subset of loans which it intends to use for its "due diligence" defense, as well as the sample design or other method by which it is selecting such loans.

      First, even as to Goldman-sponsored transactions, Goldman will not commit to disclose due diligence firm information for *all* loans by the end of February.  Specifically, it agreed to disclose such information as to loans that have Goldman, originator, or servicer identification numbers.  It asserts, however, that there is an unidentified volume of loans with only diligence firm identification numbers, and it does not know when the data on such loans can be provided.  This unaccountable delay will clearly interfere with efforts to prioritize discovery from third-

---

[1]   By comparison, there are only 82,720 loans in the Supporting Loan Groups in the Securitizations, and Goldman admits that it diligenced only a fraction of such SLG loans.

party vendors, as well as efforts by FHFA to determine the scope of, and to conduct, reunderwriting or other analysis in response to Goldman's "due diligence" defense.

Second, Goldman does not know, and cannot say when it will disclose, what diligence, if any, it conducted in its capacity as an underwriter on deals sponsored by others (at issue in the Tranche 2 *JP Morgan* and Tranche 4 *Ally* cases referenced above). By contrast, other defendants that acted as underwriter have committed to provide this information in short periods of time.

Third, despite Goldman's candid acknowledgement that it has determined it will resort to sampling or other methods to streamline presentation of its due diligence defense, Goldman will *not* agree to disclose its sample or its sample design (or other principle of selection) until November 21, 2013, near the end of fact discovery. Moreover, Goldman will not even disclose those loans that it intends to reunderwrite (if any) until May 17, 2013. Goldman admits that, given the form of its asserted diligence (at the point of Goldman's acquisition of pools of loans generally, rather than specific to securitizations), "it is inconceivable" that any party would reunderwrite such diligenced loans except on a sampling basis. But Goldman will not engage in any constructive discussion to attempt to reach agreement on sample methodology or on specific samples, much less disclose the basic information necessary for FHFA to evaluate Goldman's approach and determine what discovery must be prioritized for a timely response.

Goldman's strategy of withholding key disclosures related to its affirmative defense of due diligence stands in stark contrast not only to FHFA's early disclosures of sampling method and actual sample populations (a year before Defendants must submit reunderwriting reports), but also to the acknowledgement of defense counsel themselves that the identification of data and production of loans on which defendants intend to rely for their "due diligence" defense must be prioritized in the same way as the populations regarding FHFA's samples. *See* 10/15/12 Hrg. Tr. at 16:23-17:17; 26:22-27:3 (colloquy stating, among other things, that as to the prioritization of due diligence discovery, defendants are "perfectly pleased to join in it and we're pleased to have this set receive that level of attention").

As to Tranche 1/2 Defendants, the Expert Scheduling Order requires disclosure of an "Alternative Set" for "purposes of re-underwriting or otherwise," without limitation—including populations relevant to affirmative defenses of due diligence or loss causation—within 21 days of the disclosure of initial factual findings for a given Securitization. Tranche 3/4 Defendants were allowed to opt out of this process on condition that the prioritization of disclosures and related efforts to match loan files and guidelines not be impaired. *See* 2/14/13 Hrg. Tr. at 12:14-13:2 *and* 2/7/13 Hrg. Tr. at 75:24-76:2. By resisting key disclosures while at the same time asserting the relevance of all 225,000 loans of its acquisition "diligence," Goldman subverts the foundational rules of prompt and fair disclosure imposed on all parties in these cases, and disregards the basis on which it opted out of the disclosure regimen that defendants themselves imposed on FHFA (which required a redesigning of FHFA's entire reunderwriting process).

Accordingly, FHFA respectfully requests that Goldman Sachs be ordered (1) by March 1, to complete the disclosure of data regarding diligenced loans in the form of FHFA's Exhibit A to its letter of February 1, 2013; and (2) by March 15, to disclose the loans on which it intends to rely for its due diligence defense, as anticipated by this Court back in October 2012, including any method or sample used to select a subset of such loans.

**Letter re Goldman Sachs' Due Diligence Loans**

Respectfully submitted,

| | |
|---|---|
| /s/ Philippe Z. Selendy | /s/ Kanchana Wangkeo Leung |
| Philippe Z. Selendy | Kanchana Wangkeo Leung |
| (philippeselendy@quinnemanuel.com) | (kleung@kasowitz.com) |
| QUINN EMANUEL URQUHART & SULLIVAN, LLP | KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP |
| 51 Madison Avenue, 22nd Floor | 1633 Broadway |
| New York, New York 10010 | New York, NY 10019 |
| *Attorneys for Plaintiff Federal Housing Finance Agency* | *Attorneys for Plaintiff Federal Housing Finance Agency* |

cc: All counsel of record (via e-mail)