# EXHIBIT A

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

December 3, 2012

*Via Email*

Adam Abensohn, Esq.,
   Quinn Emanuel Urquhart & Sullivan LLP,
      51 Madison Avenue, 22nd Floor,
         New York, New York 10010.

        Re:   *FHFA Actions*, No. 11-cv-5201 (S.D.N.Y.) (DLC) *et al.*

Dear Adam:

        On behalf of Defendants in the above-referenced cases, I write in accordance with the Court's direction to Defendants to make "targeted, specific" requests for documents from the GSEs' Single Family businesses (Tr. Nov. 6 Hrg., at 59:20, 63:9, 75:19), and FHFA's proposal that Defendants make such requests in phases. As you know, Defendants' first set of requests has been the subject of correspondence between Penny Shane and Richard A. Schirtzer, the latest of which is dated November 30. Defendants further request that FHFA produce documents in response to the following five requests. Please let us know by December 7 whether FHFA will comply. Defendants have made every effort to frame the requests so as to minimize any burden to FHFA. To the extent that FHFA claims that complying with these requests nonetheless would impose an undue burden, Defendants would be willing to discuss alternative formulations. By making these requests, Defendants do not waive their position that they are entitled to full and complete discovery from the GSEs' various business units, including Single Family.

1.    <u>Documents Concerning Causation</u>

        Defendants request that FHFA produce the following documents for the period 2005 to 2011 bearing on causation issues: reports, memoranda and analyses concerning the causes of (i) poor performance or defaults of pools of mortgage loans or residential mortgage loans generally (*i.e.*, not documents concerning individual loans)

Adam Abensohn, Esq.                                                                                    -2-

that were issued during the period 2005 through 2008, and (ii) poor performance of securities issued by the GSEs during the period 2005 through 2008 that were backed by residential mortgage loans.

These documents are relevant to Defendants' "negative causation" defense under Sections 11 and 12 of the Securities Act of 1933, and to FHFA's fraud claims and the required element of loss causation, for which FHFA "must show… that the misrepresentations directly caused the loss about which [it] complains . . . . " *Laub* v. *Faessel*, 297 A.D.2d 28, 31 (1st Dep't 2002).

The documents requested here are responsive to Request Nos. 67 and 68 of Defendants' Second Requests for Production. During a meet and confer session on August 23, 2012, FHFA stated that it would not produce any documents from the GSEs' Single Family businesses concerning the causes of losses on loans that the GSEs purchased or securitized. We ask that FHFA reconsider this position.

2. <u>Documents Concerning the GSEs' Pull-Through, Defect and Waiver Rates</u>

Defendants request that FHFA produce, with respect to the GSEs' purchases of residential mortgage loans during the years 2005 through 2008, documents sufficient to show (i) the GSEs' pull-through rates (the rates at which the GSEs accepted loans for purchase, as a percentage of the loans presented to the GSEs for purchase) with respect to the originators at issue in these litigations; (ii) the defect rates for pools of loans the GSEs purchased (the rates at which loans were identified as being potentially non-compliant with the originators' underwriting guidelines); (iii) the extent to which the GSEs "waived in" loans (*i.e.*, accepted for purchase loans identified by the GSEs or their due diligence vendors as potentially not complying with originators' underwriting guidelines or standards established by the GSEs), the rates at which such waivers occurred, and any standards or policies applicable to such waivers; and (iv) reviews and assessments of third-party firms that performed due diligence on pools of such loans.

The documents requested here are relevant to a number of issues. First, these documents likely undermine FHFA's claim that for many of the Securitizations more than 90% of the loans in the collateral pool had material "defects," even though those loans were originated by many of the same originators from whom the GSEs purchased substantial numbers of mortgage loans. Second, these documents are relevant to whether the GSEs considered material the nature or extent of defects that FHFA appears now to claim are material. Third, these documents are relevant to FHFA's allegation that the practice of "waiving in" loans constituted a fraud, even though Freddie Mac waived in loans at a rate far higher than the rate at which Goldman Sachs and many other Defendants waived in loans. Fourth, these documents are relevant to FHFA's burden of proving that the GSEs justifiably relied on the representations in the offering

Adam Abensohn, Esq.                                                                                        -3-

materials at issue in FHFA's fraud claims.  Fifth, these documents are relevant to establishing industry standard practices that inform whether the underwriter Defendants conducted appropriate due diligence.

The documents requested here are responsive to Request Nos. 30, 42 and 45 of Defendants' Second Requests for Production.  In a letter of August 21, 2012 from Jordan Razza to Calli Ray, Goldman Sachs requested that FHFA comply with the document requests concerning the GSEs' due diligence processes, and in subsequent meet and confer sessions Goldman Sachs offered to accept "documents sufficient to show" the relevant aspects of the GSEs' due diligence.  FHFA nonetheless refused to comply with these requests.  (*See* Letter from Richard A. Schirtzer to Jordan Razza, dated Sept. 4, 2012.)  We ask that FHFA reconsider this position.

3.      Due Diligence Practices and Policies

Defendants request that FHFA produce documents sufficient to show the GSEs' due diligence policies, procedures and practices with regard to their purchase of residential mortgage loans, including documents sufficient to show their use of third party diligence firms to perform due diligence, during the period 2005 through 2008.

The standards that the GSEs implemented and followed to conduct their own due diligence are relevant to the reasonableness of the due diligence standards used by the Defendants.  For example, FHFA's Amended Complaint against Goldman Sachs alleges that Goldman Sachs "failed to conduct adequate and sufficient due diligence to ensure that the mortgage loans underlying the Securitizations complied with the statements in the Registration Statements."  (Amended Complaint ¶¶ 77-90.)  FHFA cannot credibly claim that due diligence standards equaling or exceeding those employed by the GSEs were not "adequate and sufficient."  These documents are thus relevant to Defendants' "due diligence" defense in the actions in which they are named as underwriters, which hinges in part on whether the underwriter conducted a "reasonable investigation."  *See* Section 11(b)(3)(A) of the Securities Act; *In re Worldcom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 674 (S.D.N.Y. 2004).

These documents fall within the requests described above in the second request, as well as Request No. 44 of the Defendants' Second Requests for Production, with which FHFA has previously refused to comply.  We ask that FHFA reconsider this position.

4.      Volume of Business With Originators

Defendants request that FHFA produce, for the years 2005-2008, documents sufficient to show the volume by dollar amount of residential mortgage loans

Adam Abensohn, Esq. -4-

the GSEs purchased from each originator whose loans were part of the collateral pool for any Securitization.

These documents are relevant to, among other things, FHFA's claim that the GSEs did not know about the alleged "widespread abandonment" of underwriting guidelines that purportedly occurred among the originators with which the GSEs did business and to Defendants' statute of limitations defenses.

The documents requested here are responsive to Request No. 40 of Defendants' Second Requests for Production. FHFA previously refused to produce these documents in response to a reciprocal request from Goldman Sachs during meet and confer sessions on November 18 and 19. We ask that FHFA reconsider this position.

5.     Emails from SF_CounterpartyRisk@fanniemae.com

The email address SF_CounterpartyRisk@fanniemae.com appears to have been used by PLS traders to, at a minimum, obtain approval from the Single Family Counterparty Risk Management group for otherwise unapproved counterparties. *See* FHFA00011426. To the extent this address was used in connection with PLS purchases, Defendants request that FHFA produce documents sent to or from that email address, as well as documents sufficient to identify the individuals at Fannie Mae who received the emails sent to this address or were able to send emails from this address, for the period 2005 through 2008. This request falls squarely within the production that FHFA already has agreed to make, in accordance with Request Nos. 5, 7, 9, 13, 18, 21 and 22 of Defendants' Second Requests for Production. To the extent this address also was used for solely Single Family functions, we would request that FHFA meet and confer with us regarding production of emails to and from that address relating to originators whose loans were included in the Securitizations, whether or not those emails related to the Single Family business. These documents will show, among other things, information exchanged between PLS traders and the Single Family Counterparty Risk Management group related to the creditworthiness of counterparties to PLS deals, and what knowledge the PLS traders had about the underwriting deficiencies FHFA now alleges existed in the Securitizations.

Sincerely,

Bradley A. Harsch

Adam Abensohn, Esq. -5-

cc (by email):   Philippe Z. Selendy, Esq.
Christine Chung, Esq.
Manisha Sheth, Esq.
(Quinn Emanuel Urquhart & Sullivan LLP)

Henry Brownstein, Esq.
(Kasowitz, Benson, Torres & Friedman LLP)