# EXHIBIT B

**SULLIVAN & CROMWELL LLP**

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

By E-Mail and Hand

December 12, 2012

Hon. Denise L. Cote,
   United States District Judge,
      Daniel Patrick Moynihan United States Courthouse,
         500 Pearl Street, Room 1610,
           New York, New York 10007-1312.

         Re:    *FHFA Actions*, No. 11-cv-5201 (S.D.N.Y.) (DLC) *et al.*

Dear Judge Cote:

         On behalf of Defendants in the above-referenced actions, we request a conference at which Defendants will seek an Order compelling Plaintiff Federal Housing Finance Agency ("FHFA") to comply with Defendants' second set of targeted, specific requests for readily accessible non-PLS documents concerning four discrete issues: (a) the GSEs' pull-through, defect and waiver rates for loan pools purchased from relevant Originators; (b) analyses of the causes of the GSEs' claimed losses; (c) the GSEs' due diligence policies; and (d) the volume of the GSEs' business with Originators. The requested documents are described more specifically in the correspondence attached as Exhibit A. In making this request, Defendants do not waive their position that they are entitled to full and complete discovery from the GSEs' non-PLS businesses.

         **Documents Sufficient to Show Pull-Through, Defect and Waiver Rates.** These documents will likely refute FHFA's claim that the collateral pools for the Securitizations had "material defect" rates of as much as 99%, even though those loans were originated by many of the same Originators from whom the GSEs purchased substantial numbers of mortgage loans. (*E.g.*, Am. Compl., 11-cv-6198, ¶ 130.) Evidence that the GSEs purchased, or "pulled through," a high percentage of loans in pools from the same Originators (*see, e.g.*, Ex. B at FHFA00778822) would suggest that the "material defects" FHFA now identifies were not material to the GSEs when they purchased loans and deposited them in their own securitizations. The GSEs' high pull-through and waiver rates will be highly probative evidence in proving lack of materiality; while the standard for materiality is objective, a plaintiff's conduct is directly relevant. *GAF Corp.* v. *Heyman*, 724 F.2d 727, 742 (2d Cir. 1983) (district court's finding of material omission reversed where plaintiff chose not to disclose information similar to that withheld by defendant); Arnold S. Jacobs, 5C Disclosure & Remedies Under the Sec. Laws § 12:37 (2012) ("plaintiff is hard pressed to claim a fact omitted by the defendant is material if the plaintiff itself omitted comparable facts"). Evidence that third party due diligence firms routinely reported potential defect rates for pools of loans from relevant Originators that were far lower than those FHFA now alleges also would undermine FHFA's allegations that there were high defect rates. (*E.g.*, Ex. B at FHFA00778818.) Evidence of the GSEs' waiver rates would contradict FHFA's allegation that the practice of "waiving in" loans constituted fraud—an allegation on which this Court relied in ruling that FHFA adequately pled *scienter* with respect to its fraud claims. (Opinion & Order, 11-cv-6188, Doc. No. 200 at 38-43; Ex. C at 5.)

Hon. Denise L. Cote -2-

**FHFA's Analyses of the Causes of Its Claimed Losses.** This request seeks "reports, memoranda and analyses" concerning the causes of poor performance of pools of mortgage loans or RMBS. These documents can demonstrate that the GSEs' alleged losses were caused by the housing and economic downturns, rather than by any abandonment of underwriting guidelines. As this Court has observed, FHFA claims that alleged misrepresentations "'directly caused Fannie Mae and Freddie Mac to suffer billions of dollars in damages,' because '[t]he mortgage loans underlying the GSE Certificates experienced defaults and delinquencies at a much higher rate than they would have had the loan originators adhered to the underwriting guidelines set forth in the Registration Statement.'" (Opinion & Order, 11-cv-6188, Doc. No. 200, at 10.) The requested documents are relevant to Defendants' "negative causation" defense under the Securities Act of 1933 and FHFA's burden to prove loss causation for its fraud claims. *Laub* v. *Faessel*, 297 A.D.2d 28, 31 (1st Dep't 2002). The GSEs have made public admissions that their losses from the subprime market were caused by macroeconomic events (*see* Exs. D, E & F), strongly indicating that the GSEs possess, but have not produced, "reports, memoranda or analyses" supporting that conclusion.

**Documents Sufficient to Show the GSEs' Due Diligence Policies.** These documents are relevant to Defendants' statutory "due diligence" defense under Section 11 of the Securities Act of 1933 and to FHFA's allegations that Defendants failed to conduct adequate due diligence. The limited evidence produced to date concerning the GSEs' non-PLS businesses (*see* Ex. B) suggests that the GSEs used many of the same due diligence practices and procedures that FHFA now claims were not "adequate and sufficient." (Am. Compl., 11-cv-6198, ¶¶ 77-90.) Because the GSEs were the dominant players in the MBS industry, and "industry standards are relevant to defining reasonable due diligence" (Nov. 6, 2012 Tr. at 62), Defendants are entitled to use the GSEs' own conduct to demonstrate that FHFA's claim is meritless.

**Documents Sufficient to Show Volume of Business with Originators.** These documents are relevant to, among other things, the GSEs' access to information about Originators that FHFA claims the GSEs lacked, the GSEs' purchasing power, materiality (where volumes increase or remain steady despite variations in perceived origination quality), Defendants' statute of limitations defenses, and FHFA's claim that the GSEs were ignorant about the practices and products of Originators from whom they purchased hundreds of billions of dollars of whole loans.

The parties have met and conferred but were unsuccessful. FHFA cannot claim that responding to these requests—which in three instances seek only "documents sufficient to show" the information sought—would be unduly burdensome. Defendants offered to discuss alternative formulations to the extent FHFA claimed an undue burden, but FHFA refused to discuss the requests. FHFA apparently has conducted no inquiry to identify the volume of potentially responsive documents or whether such documents exist in readily accessible, centralized files or databases that FHFA could conveniently access. (*See* Exs. G & H.)

Hon. Denise L. Cote                                                               -3-

Respectfully Submitted,

Richard H. Klapper

cc: Counsel for All Parties