**FHFA's Response to Defendants' 9/10/2013 Request for
Reconsideration of the Decision re: Appraisal Bias Documents**

September 17, 2013

<u>VIA ELECTRONIC MAIL AND HAND DELIVERY</u>

The Honorable Denise L. Cote
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1610
New York, NY 10007-1312

Re:   *FHFA Actions*

Dear Judge Cote:

On behalf of Plaintiff FHFA, we write to oppose Defendants' third request in the past two months for an order compelling FHFA to add Eric Rosenblatt, Cristian deRitis, and Crescent Martin as new custodians and to search their files for appraisal bias documents. The Court denied both prior requests. Most recently, the Court explained that it denied Defendants' request because (1) the documents requested were not relevant to this litigation; (2) the relevant appraisal bias documents have already been produced; (3) the documents forming the basis for Defendants' request did not establish knowledge of specific originator bias; and (4) it is too late to add additional document custodians. *See* 8/14/13 Hr'g Tr. at 51-59. FHFA respectfully requests that the Court affirm its prior rulings and deny Defendants' application.[1]

Once again, Defendants base their request on two versions of a draft paper authored by current and former Fannie Mae employees Man Cho, Cristian deRitis, and Eric Rosenblatt.[2] Defs.' 9/10/13 Exs. B & C. The Court has ruled that "Nothing in this report . . . is directly correlated to any of the Fannie Mae loans." 8/14/13 Hr'g Tr. at 51:22-23. The LoanPerformance reports cited by Defendants confirm that conclusion. Defendants have not connected and cannot connect the loan data analyzed in these drafts with the loans underlying the Fannie Mae Securitizations. There is no connection.

Defendants argue that because LoanPerformance had information regarding some of the Securitizations at issue, the parties should revisit document discovery. Defendants made and the Court rejected this exact argument. *See* 8/13/13 Ltr. from P. Shane at 2 (Ex. 1); 8/5/13 Ltr. from P. Shane at 1-2 (Ex. 2). The Defendants rely on two LoanPerformance Securities Data Coverage Reports, which they claim "identify[ ] the securities included in the LoanPerformance database of loan-level mortgage data, the source used by the authors of the [draft] Paper[s]." 9/10/13 Ltr. from P. Shane at 1; Defs.' Exs. F & G. This is not new information. All assumed that the LoanPerformance database had information regarding at least some of the Securitization pools.

---

[1]   At the August 14th hearing, the Court did not "'invite[ ]' the parties to 'talk with each other' about targeted searches for documents related to appraisal bias." 9/10/13 Ltr. from P. Shane at 1. Instead, the Court stated, "the targeted discovery concept was one that applied in the fall and early winter of 2012 with respect to single family searches beyond those that had already been conducted in the additional requests. I'm not suggesting that in the middle of depositions we apply the same standard for additional document searches." 8/14/13 Hr'g Tr. at 60:14-19. Although the Court noted that the parties should discuss any "disagreement about what's been produced, *id.* 61:9-11, it also clarified, "*I'm not suggesting you ask [ ] each other for a production of more documents.*" *Id.* at 61:21-22 (emphasis added). Defendants' application does exactly that.

[2]   The lead author, Man Cho, left Fannie Mae in March 2007; the final draft is dated October 2007.

The relevant inquiry is potential *loan* overlap, not *Securitization* overlap. A data comparison proves the point:

- At the time of the March 2007 draft paper, 25 Fannie Mae Securitizations were included in the LoanPerformance database, Defs.' 9/10/13 App'x I, (17.5% of the 143 total Fannie Mae Securitizations at issue here). That would mean that LoanPerformance would have had information on roughly 38,739 loans (221,367 loans in the supporting loan group multiplied by 17.5 percent). The October 2006 LoanPerformance's total relevant data consisted of 6,113 loan pools containing 12,466,410 loans (excluding 1,838,062 liquidated loans). The securitization-specific loans were approximately .3 percent of LoanPerformance loans.

- At the time of the October 2007 draft paper, Defs.' 9/10/13 Ex. C, 90 Fannie Mae Securitizations were included in the LoanPerformance database, Defs.' 9/10/13 App'x II, (63% of the total 143 Fannie Mae Securitizations at issue here) which included roughly 139,461 loans (221,367 x 63 percent). As of June 2007, LoanPerformance had data on 7,646 loan pools containing 15,579,313 loans (excluding 2,291,052 liquidated loans). The securitization-specific loans were approximately .9 percent of LoanPerformance loans.

- One can draw no conclusions from the percentages above about whether relevant loans were in the draft reports data set because the authors made another cut. From LoanPerformance's data on over ten million loans, the authors created a pool of 1.2 million, of which 600,000 matched zip code, origination value, and origination date precisely; of those, only 373,000 were originated in 2005-2007.[3] 8/9/13 Ltr. from FHFA at 2 (Ex. 3). The LoanPerformance reports confirm that correlation is even less likely than FHFA presented last time because the pool of potential supporting loans available for each paper was less than the total 221,367 supporting loans that FHFA cited in its prior argument.

In addition, the draft papers show that the analyses were not Fannie Mae-specific or Securitization-specific, nor did the authors analyze specifically Fannie Mae data. *See* Defs' 9/10/13 Ex. C at 8 ("The data utilized for our analysis is the loan level data from private label Subprime asset backed securities (ABS) with servicing information reported to LoanPerformance, Inc on a monthly basis"); 8/14/13 Hr'g Tr. at 51:22-25 ("Nothing in this report from March and revised in April of '07 is directly correlated to any of the Fannie Mae loans. I think I looked at the April report quickly, and there's no assertion that it is."); Defs.' 9/10/13 Ex. B at 5. The authors prepared their draft papers outside of their work for Fannie Mae and made no effort to tie the results to Fannie Mae, nor did they share their results with the PLS team. *See* Defs.' 9/10/13 Ex. C at 1 n.1; *see also* C. Zhao Dep. Tr. at 571:15-572:13 (Ex. 4).

Finally, FHFA reiterates that Defendants' request for new custodians months after document discovery has closed is untimely and unjustified. *See* 8/14/13 Hr'g Tr. at 53:12-15 ("It's too late in the day and an insufficient showing to expand document discovery to add five custodians . . ."); *id.* at 59:16-19 ("The question is whether we reopen document discovery now based on this showing when we look at all the document discovery that was done and weigh it in that context. And for that reason I'm denying the request."); *see also* FHFA's Ex. 3 at 2.

---

[3] LoanPerformance had data on over 7.5 million loans originated in 2005 and 2006.

Collecting, searching, and producing documents from the files of Mr. Rosenblatt, Mr. deRitis, and Ms. Martin at this late stage would be excessively burdensome on FHFA.[4]

Respectfully submitted,

*[signature: Jon Corey]*

_____
Jon Corey
(joncorey@quinnemanuel.com)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1299 Pennsylvania Ave, NW Ste 825
Washington, DC 20004

*Attorney for Plaintiff Federal Housing Finance Agency*

/s/ Kanchana Wangkeo Leung
_____
Kanchana Wangkeo Leung
(kleung@kasowitz.com)
KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP
1633 Broadway
New York, New York 10019

*Attorney for Plaintiff Federal Housing Finance Agency*

cc:   All counsel of record (via e-mail)

---

[4] The fact that Defendants have narrowed their requested custodians and search terms from their last request is not helpful. FHFA should not be required to incur the expense and burden of searching and reviewing the files of new document custodians at this late stage in the litigation, particularly where the information that Defendants seek is not relevant, and they already have the appraisal bias information that reached the PLS custodians. *See* Fed. R. Civ. P. 26(b)(1) (only relevant information is discoverable); Fed. R. Civ. P. 26(b)(2)(C) (limiting discovery when "(i) the discovery sought is unreasonably cumulative or duplicative, . . . ; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, . . . ."); *see also* 6/28/13 Opinion & Order (11-cv-06188, Dkt. 514) at 37-40 (explaining the balancing required under Rule 1 and Rule 26 as it relates to production of Single Family documents); *see also id.* at 18-19 ("While there might be 'interesting information on the Single Family side of the business,'" the Court elaborated, "defendants were not entitled to discovery of it in light of the substantial discovery FHFA was already providing from the Single Family side, which was targeted to capture information that was most relevant to the claims and defenses at issue.").