UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL HOUSING FINANCE AGENCY, AS CONSERVATOR FOR THE FEDERAL NATIONAL MORTGAGE ASSOCIATION AND THE FEDERAL HOME LOAN MORTGAGE CORPORATION,<br><br>      Plaintiff,<br><br>    -v-<br><br>JPMORGAN CHASE & CO., et al.,<br><br>      Defendants. | Case No. 11 CIV. 6188 (DLC) and All Coordinated Cases<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD ON THE BASIS OF THE BANK EXAMINATION AND DELIBERATIVE PROCESS PRIVILEGES** |
| Other Cases Brought By This Plaintiff:<br><br>11 Civ. 6189 (DLC)<br>11 Civ. 6190 (DLC)<br>11 Civ. 6192 (DLC)<br>11 Civ. 6193 (DLC)<br>11 Civ. 6195 (DLC)<br>11 Civ. 6198 (DLC)<br>11 Civ. 6200 (DLC)<br>11 Civ. 6201 (DLC)<br>11 Civ. 6202 (DLC)<br>11 Civ. 6203 (DLC)<br>11 Civ. 6739 (DLC)<br>11 Civ. 7010 (DLC) | <u>**ORAL ARGUMENT REQUESTED**</u><br><br><br>(Counsel on Signature Pages) |

September 24, 2013

**Table of Contents**

                                                                                       **Page**

ARGUMENT ............................................................................................................................1

    I.    FHFA FAILS TO SATISFY ITS BURDEN IN SEEKING AN UNPRECEDENTED EXPANSION OF THE BANK EXAMINATION PRIVILEGE ................................................................................1

        A.    FHFA Is Not a Bank Regulator With Respect to the GSEs and the GSEs Are Not Banks ..........................................................................2

        B.    FHFA's Reliance on FOIA Exemptions Fails ..............................................4

        C.    The Purpose of the Bank Examination Privilege Would Not Be Served By Extending That Privilege to FHFA .............................................5

    II.    FHFA FAILS TO SUPPORT ITS DELIBERATIVE PROCESS PRIVILEGE ASSERTIONS ....................................................................................7

    III.    DEFENDANTS HAVE SHOWN THAT GOOD CAUSE EXISTS .......................9

CONCLUSION .......................................................................................................................10

## Table of Authorities

Page

**Cases**

*Bloomberg, L.P. v. U.S.S.E.C.*, 357 F. Supp. 2d 156 (D.D.C. 2004) .............................................. 4

*Chamber of Commerce of U.S. v. Legal Aid Soc'y of Alameda Cnty.*, 423 U.S. 1309 (1975) ........................................................................................................................... 4

*Conte v. Cnty. of Nassau*, No. CV 06-4746 (JFB) (ETB), 2009 WL 1362784 (E.D.N.Y. May 15, 2009) ............................................................................................... 8

*Denny v. Carey*, 78 F.R.D. 370 (E.D. Pa. 1978) ............................................................................ 5

*Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970) ............................................................... 9

*In re Bank One Sec. Litig., First Chi. S'holder Claims*, 209 F.R.D. 418 (N.D. Ill. 2002) ................................................................................................................................ 5

*In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577 (E.D.N.Y. 1979) ..................................... 9

*In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997) ........................................................................ 8

*In the Matter of Putnam Inv. Mgmt., LLC*, SEC Release No. 614, 2004 WL 885245 (Apr. 7, 2004) ............................................................................................................ 1

*Lee v. FDIC*, 923 F. Supp. 451 (S.D.N.Y. 1996) .......................................................................... 5

*Marriott Employees' Fed. Credit Union v. Nat'l Credit Union Admin.*, No. Civ.A. 96-478-A, 1996 WL 33497625 (E.D. Va. Dec. 24, 1996) ............................................... 5

*Morrissey v. City of New York*, 171 F.R.D. 85 (S.D.N.Y. 1997) .................................................. 8

*Nat'l Cmty. Reinvestment Coal. v. Nat'l Credit Union Admin.*, 290 F. Supp. 2d 124 (D.D.C. 2003) ............................................................................................................ 5

*Pac. Gas & Elec. Co. v. United States*, 70 Fed. Cl. 128, *modified*, 71 Fed. Cl. 205 (2006) ................................................................................................................................ 8

*Pub. Investors Arbitration Bar Ass'n v. U.S. S.E.C.*, No. 11-2285, 2013 WL 987769 (D.D.C. Mar. 14, 2013) ........................................................................................... 2

*SEC v. Syron*, No. 11 Civ. 9201 (RJS), Dkt. 78 (S.D.N.Y. July 17, 2012) .................................. 7

*United States v. Bernstein*, 533 F.2d 775 (2d Cir. 1976) .............................................................. 4

*United States v. Nixon*, 418 U.S. 683 (1974) ................................................................................ 1

*United States v. Weissman*, 195 F.3d 96 (2d Cir. 1999) .............................................................. 1, 6

*Weissman v. Fruchtman*, No. 83 Civ. 8958 (PKL), 1986 WL 15669 (S.D.N.Y. Oct. 31, 1986) .................................................................................................................... 9

*Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414 (3d Cir. 1991) ........................................................................................................................... 6

*Wultz v. Bank of China*, No. 11-cv-1266 (SAS), 2013 WL 1453258 (S.D.N.Y. Apr. 9, 2013) ........................................................................................................... 7

*Zenith Radio Corp. v. United States*, 764 F.2d 1577 (Fed. Cir. 1985) ........................................ 10

## Other Authorities

12 U.S.C. § 1843 ............................................................................................................................. 3

12 U.S.C. § 4517 ............................................................................................................................. 2

12 U.S.C. § 5301 ............................................................................................................................. 3

74 Fed. Reg. 51073 ......................................................................................................................... 2

EDWARD V. MURPHY, CONG. RESEARCH SERV., R43087, WHO REGULATES WHOM AND HOW?  AN OVERVIEW OF U.S. FINANCIAL REGULATORY POLICY FOR BANKING AND SECURITIES MARKETS 23-28 (May 28, 2013) ....................................................... 2

*Freddie Benefits Housing*, USA TODAY, Apr. 28, 2008 .............................................................. 3

Milton R. Schroeder, *The Law and Regulation of Financial Institutions*, Part 1, ¶ 5.04 (2012) .................................................................................................................... 4

Defendants respectfully submit this Reply Memorandum of Law in further support of their Motion to Compel Plaintiff Federal Housing Finance Agency ("FHFA") to produce documents FHFA has redacted or withheld on the basis of the "bank examination" and/or "deliberative process" privileges.

FHFA's Opposition ignores the fundamental points set forth in Defendants' Motion to Compel. The bank examination privilege simply does not apply to FHFA and the GSEs, and no legitimate purpose would be served by extending that privilege here. FHFA's attempt to delay resolution of its deliberative process privilege assertion is without support and also should be rejected. Even if the privileges were found to apply here—and they do not—Defendants have established good cause for production, which can be made pursuant to the protective order in these actions, thereby addressing FHFA's purported confidentiality concerns.

## ARGUMENT

### I. FHFA FAILS TO SATISFY ITS BURDEN IN SEEKING AN UNPRECEDENTED EXPANSION OF THE BANK EXAMINATION PRIVILEGE

FHFA has not met—and cannot meet—its burden of establishing that it may withhold its, the GSEs', and OFHEO's documents on the basis of the bank examination privilege with respect to the GSEs. FHFA bears not only the usual burden of supporting its claims as the proponent of the privilege, but, in seeking to extend the privilege to itself, FHFA bears a particularly heavy burden because "[e]videntiary privileges are not lightly created nor expansively construed." *In the Matter of Putnam Inv. Mgmt., LLC*, SEC Release No. 614, 2004 WL 885245, at *3 (Apr. 7, 2004) (quoting *United States v. Nixon*, 418 U.S. 683, 710 (1974)) (internal quotation marks omitted); *United States v. Weissman*, 195 F.3d 96, 100 (2d Cir. 1999). FHFA attempts to avoid this heavy burden by characterizing its right to invoke the bank examination privilege as "well-established." (Opp. at 7.) But FHFA's failure to cite even a single case recognizing its power to invoke the privilege belies this characterization and

1

demonstrates that expansion of the privilege to FHFA or OFHEO would be an unprecedented extension of that privilege. FHFA's claim that Defendants ask this Court to be the first to declare that regulatory examinations of the GSEs are not protected by the bank examination privilege has it exactly backwards. The privilege does not apply to FHFA or OFHEO's regulation of the GSEs and no court has ever held that it does.

### A. FHFA Is Not a Bank Regulator With Respect to the GSEs and the GSEs Are Not Banks

FHFA cannot claim the bank examination privilege for itself merely by arguing that its examiners have statutory powers similar to those of bank examiners. FHFA attempts to invoke the bank examination privilege on the basis of a statute providing that its examiners have the same examination "authority . . . [and are] subject to the same disclosures, prohibitions, obligations, and penalties as are applicable to examiners employed by the Federal Reserve banks." 12 U.S.C. § 4517(e). Nowhere, however, does this provision mention "privileges"— and for good reason. As Defendants' Opening Brief established, the bank examination privilege arises from the nature of the regulated entities, not the nature of the examination authority. FHFA's statutory authority is commonplace: other financial regulators, including the SEC, have similar powers.[1] (Opp. at 6.) Indeed, the Congressional Research Service describes FHFA as a "Non-Bank Financial Regulator" like the SEC (which regulates the safety and soundness of corporations that sell securities and broker-dealers, but which cannot invoke the bank examination privilege).[2] The other statutes FHFA cites as granting similar examination authority

---

[1] The "disclosures, prohibitions, obligations, and penalties" applicable to examiners are similarly irrelevant to the issue at bar. *See, e.g.*, Post-Employment Restriction for Senior Examiners, 74 Fed. Reg. 51073 (Oct. 5, 2009) (FHFA regulation mimicking Federal Reserve regulation on same subject promulgated pursuant to 12 U.S.C. § 4517(e)).

[2] *See* EDWARD V. MURPHY, CONG. RESEARCH SERV., R43087, WHO REGULATES WHOM AND HOW? AN OVERVIEW OF U.S. FINANCIAL REGULATORY POLICY FOR BANKING AND SECURITIES MARKETS 23-28 (May 28, 2013). Contrary to FHFA's claim, *Public Investors Arbitration Bar Association v. U.S. S.E.C.*, No. 11-2285,

explicitly distinguish FHFA from "Federal banking agenc[ies]," defined by Congress to include the Federal Reserve, the OCC, and the FDIC, but *not* FHFA. *See* 12 U.S.C. §§ 5301(10), (12). These statutes explicitly limit FHFA's mandate to "national housing finance markets," *not* to the "national banking system." (Opp. at 6-7.) Indeed, Freddie Mac's former CEO Dick Syron publicly advocated that Freddie Mac, like Fannie Mae, is unique and should not be regulated as a bank: "Freddie is a unique institution, and it should be regulated as such. Some would have us regulated like a bank, especially with regard to capital, but we are a very different entity." *Freddie Benefits Housing*, USA TODAY, Apr. 28, 2008, at 12A.

FHFA's contention that the GSEs engage in "banking activities" because they buy, securitize and guarantee mortgages is equally unavailing. (Opp. at 9-10.) These activities are not "banking activities"—they are characteristic of broker-dealers or insurance companies. (*Id.*)[3] Unlike banks regulated by the FDIC or OCC, the GSEs did not and do not maintain customer deposit accounts or make commercial loans with those deposits. FHFA maintains that the functions it lists are banking activities because banking regulators may assert the bank examination privilege over examinations of such activities. (Opp. at 10.) A bank regulator's examination of such nonbank activities, however, is privileged only because those nonbanking activities are conducted by banks through affiliates and therefore put at risk "the safety or soundness of depository institutions" or could lead to "unsound banking practices." *See* 12 U.S.C. §§ 1843(j)-(l). Put another way, the bank examination privilege depends on the types of

---

2013 WL 987769 (D.D.C. Mar. 14, 2013), does not stand for the proposition that the SEC may invoke the bank examination privilege. (Opp. at 7.) The court there merely held that the SEC can invoke Exemption 8 to FOIA. The right to invoke an exception to a federal statute is not the same as the authority to assert an evidentiary privilege. *See* Part I.B, *infra*.

[3] Indeed, certain defendants in these actions bought and securitized mortgages between 2005 and 2007 but are not, by virtue of that activity or otherwise, banks subject to regulation by banking regulators. *See, e.g.*, *FHFA v. Nomura Holding America, Inc., et al.*, No. 11 Civ. 6201, Am. Compl. ¶¶ 14-18 (filed June 28, 2012) (identifying Nomura defendants).

entities being regulated, not the type of activity in which those entities are engaged. FHFA argues that "[t]he GSEs also buy and issue mortgage-backed securities, activities that banks have engaged in widely since enactment of the Gramm-Leach-Bliley Act," (Opp. at 9-10), but this only proves Defendants' point because the purpose of that legislation was to allow bank holding companies to engage in more *nonbanking* activities.[4] Finally, FHFA overreads *United States v. Bernstein*, 533 F.2d 775 (2d Cir. 1976), citing it for the proposition that "buying and guaranteeing mortgages" are "routine banking activities." (Opp. at 9.) Although the Second Circuit referred to Fannie Mae and savings banks as examples of "permanent lenders" because they purchase and hold mortgages, it did not hold that "permanent lenders" are "banks." Indeed, the court also included pension funds in the same category, yet regulators of pension funds indisputably are not entitled to assert the bank examination privilege. *Bernstein*, 533 F.2d at 781.

     **B.**    **FHFA's Reliance on FOIA Exemptions Fails**

Unable to justify its arguments that it is a "bank examiner" with respect to the GSEs and that the GSEs are "banks," FHFA asks this Court to be the first court since the enactment of FOIA nearly 50 years ago to hold that a FOIA exemption creates an evidentiary privilege. (Opp. at 8.) Contrary to FHFA's arguments, "[t]he Freedom of Information Act creates no privileges," *Chamber of Commerce of U.S. v. Legal Aid Soc'y of Alameda Cnty.*, 423 U.S. 1309, 1310 (1975), and court after court has rejected any analogy between Exemption 8 of FOIA and the bank examination privilege. *See, e.g.*, *Bloomberg, L.P. v. U.S.S.E.C.*, 357 F. Supp. 2d 156, 170 (D.D.C. 2004) ("[I]n asserting . . . the 'bank examination privilege,' [plaintiff] fails to set forth any basis for its analogy with Exemption (b)(8). Indeed, at least one court in [the

---

[4]   *See, e.g.*, Milton R. Schroeder, *The Law and Regulation of Financial Institutions*, Part 1, ¶ 5.04 (2012) ("The Gramm-Leach-Bliley Act (GLB Act) of 1999 greatly enlarged the powers of bank holding companies. Qualifying companies may establish banking organizations that include banks *and other financial institutions, such as* securities firms *and* insurance companies[, which conduct] . . . activities that are 'financial in nature' [but] . . . *not* . . . banking related . . . .") (emphasis added).

4

D.C.] Circuit has held an analysis of bank examination privilege inapposite in a FOIA action involving Exemption (b)(8)."); *Nat'l Cmty. Reinvestment Coal. v. Nat'l Credit Union Admin.*, 290 F. Supp. 2d 124, 136 n.5 (D.D.C. 2003) ("[R]eliance on *In re Subpoena* is inapposite because it did not deal with exemption 8 of FOIA, but with a 'bank examination privilege.'"); *Denny v. Carey*, 78 F.R.D. 370, 373 (E.D. Pa. 1978) ("Exemption from the Freedom of Information Act . . . does not create independently any evidentiary privilege."). The sole legal authority FHFA cites for its claim that Exemption 8 of FOIA expands the bank examination privilege to nonbank financial institutions is *Lee v. FDIC*, 923 F. Supp. 451 (S.D.N.Y. 1996). But *Lee* merely addressed a FOIA request to a bank regulator, it did not purport in any way to expand the bank examination privilege to nonbanks.[5]

### C. The Purpose of the Bank Examination Privilege Would Not Be Served By Extending That Privilege to FHFA

FHFA's attempt to invoke the bank examination privilege in these actions is fundamentally inconsistent with the rationale for that privilege: preserving the candor of confidential communications between banks and their regulators in order to maintain confidence in the nation's banking system. *See, e.g.*, *In re Bank One Sec. Litig., First Chi. S'holder Claims*, 209 F.R.D. 418, 426 (N.D. Ill. 2002). Nowhere does FHFA dispute the fact that OFHEO and FHFA have made numerous filings, news releases, public notices, agency reports, testimony, speeches, research papers, and other materials concerning their supervision and oversight of the GSEs publicly available. Nor does FHFA dispute the fact that it has voluntarily produced tens of thousands of documents it claimed were subject to the bank examination privilege in other litigations, or that it has produced volumes of documents in these actions pertaining to OFHEO

---

[5] FHFA's suggestion that *Marriott Employees' Federal Credit Union v. National Credit Union Administration* extended the bank examination privilege to credit unions is misleading, as that case too addressed only FOIA's Exemption 8. No. Civ.A. 96-478-A, 1996 WL 33497625, at *5-6 (E.D. Va. Dec. 24, 1996).

and FHFA's oversight of the GSEs. While FHFA tries to attack a straw man—whether these disclosures amounted to a waiver—the disclosures undermine any claim that production of the withheld materials would chill communications by anyone at FHFA or the GSEs. It is thus unsurprising that FHFA's declarant, Mr. Newell, does not identify even the slightest harm that would supposedly befall FHFA or the GSEs by the production of the withheld documents, subject to the Court's protective order, in these actions.

FHFA attempts to excuse its failure to justify the application of the privilege by arguing that Defendants have the burden of showing that the good cause exception applies, and that Defendants must thus show that *not* extending the privilege to FHFA would *not* chill FHFA's future regulation of the GSEs. (Opp. at 10-11.) FHFA stands the law on its head. FHFA is the proponent of the privilege: it is the party seeking to extend the bank examination privilege outside the context of bank regulation. As a matter of law, it is FHFA's heavy burden to demonstrate that the circumstances warrant that extension. *Weissman*, 195 F.3d at 100; *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1425 (3d Cir. 1991). In any event, Defendants *have* established that extending the bank examination privilege to FHFA and OFHEO is not necessary to avoid any loss of candor in connection with future regulation of the GSEs, for numerous, independent reasons, and that extending the privilege is unwarranted.[6]

FHFA's remaining arguments regarding the bank examination privilege are equally meritless. FHFA's attempt to undermine the significance of its Congressional filings by arguing that only "results and conclusions" must be disclosed proves Defendants' point. (Opp. at 13-14.) Agency opinions and conclusions, as opposed to factual information, are precisely what

---

[6] As to the fact that the GSEs will likely not exist in the not-too-distant future (yet another reason why the purpose of the bank examination privilege would not be served here), FHFA complains that this is "rank speculation." (Opp. at 14.) However, FHFA does not dispute that the GSEs in fact are not likely to exist following their conservatorship or its own Director's observation that the Administration seeks to wind down the GSEs.

6

are ordinarily protected by the bank examination privilege in instances where it applies. *Wultz v. Bank of China*, No. 11-cv-1266 (SAS), 2013 WL 1453258, at *4 (S.D.N.Y. Apr. 9, 2013). Thus, FHFA's public reporting requirement demonstrates not only that Congress did not intend for FHFA to invoke the bank examination privilege, but also that the disclosure of its examinations would not cause any incremental loss of candor in future communications.

FHFA claims it has not selectively produced documents and withheld others on the basis of the privilege, asserting that it made privilege determinations "based on the standards for invoking the privilege set out in the caselaw." (Opp. at 15.) That statement, however, provides no insight into the criteria FHFA used to make such privilege determinations. The illustrative documents submitted by Defendants concern the very sort of regulatory opinions and communications that FHFA claims it has the right to withhold. FHFA does not even attempt to explain how it distinguished among the documents it selectively produced and those it withheld. Its selective assertion is both a waiver and compelling evidence that production of the withheld materials would not cause any lack of candor between FHFA and the GSEs.

Finally, FHFA continues to maintain that *Syron* somehow supports its assertion of the bank examination privilege. But the court in that case was clear: "FHFA has not made the showing necessary to establish that the documents in question are subject to the bank examination privilege." *SEC v. Syron*, No. 11 Civ. 9201 (RJS), Dkt. 78 at 3 (S.D.N.Y. July 17, 2012). The *Syron* court found that there were "grounds for concern" that the documents were privileged "or otherwise sensitive," and therefore required *production* of the documents *pursuant to a protective order*—exactly what the Court should require here. *Id.*

II.   **FHFA FAILS TO SUPPORT ITS DELIBERATIVE PROCESS PRIVILEGE ASSERTIONS**

FHFA ignores most of Defendants' arguments regarding the deliberative process privilege, instead asking the Court to defer its ruling. For example, FHFA does not contest its

failure to establish that the withheld communications were both "pre-decisional" and "deliberative," as is required to assert the deliberative process privilege. Nor does FHFA dispute its failure to establish any basis for asserting the privilege as to documents reflecting non-agency communications.

FHFA's suggestion that a certification is not required until "documents are challenged in court" is wrong. (Opp. at 20.) FHFA fails to address the numerous cases holding that a certification must be provided *in advance* of the filing of a motion to compel. *Pac. Gas & Elec. Co. v. United States*, 70 Fed. Cl. 128, 135, 143, *modified*, 71 Fed. Cl. 205 (2006); *Conte v. Cnty. of Nassau*, No. CV 06-4746 (JFB) (ETB), 2009 WL 1362784, at *5 (E.D.N.Y. May 15, 2009); *Morrissey v. City of New York*, 171 F.R.D. 85, 89 n.3 (S.D.N.Y. 1997). FHFA's reliance on *In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997), for the proposition that a certification by a senior official is required only when specific log entries are challenged, is unavailing. (Opp. at 19-21.) The court there held that responding to a non-party subpoena was not a waiver where the non-party (the White House) complied with the requirements of Rule 45 of the Federal Rules of Civil Procedure and had no disclosure obligation prior to a motion to compel—issues that are plainly irrelevant here. *In re Sealed Case*, 121 F.3d at 741.

FHFA's claim that it would be "pointless and wasteful to require senior FHFA officials" to provide the requisite certifications demonstrates that FHFA's deliberative process privilege assertions have been made by FHFA's lawyers and *not* by a senior agency official. (Opp. at 20-21.) Yet, that is precisely what the certification requirement is intended to *prevent*; its purpose is to ensure that the official formulating agency policy certifies that the documents reflect the deliberative exchange in advance of agency decision making rather than for lawyers to assign such a purpose after the fact. *Pac. Gas & Elec. Co.*, 70 Fed. Cl. at 144. And even if FHFA were correct that "it need not formally invoke the deliberative process privilege through a

8

supporting certification in advance of a motion to compel," (Opp. at 20), which it plainly is not, Defendants obviously *have* filed a motion to compel. FHFA's failure to support its deliberative process privilege assertions in this briefing with the required certifications is also fatal to its claim.[7]

### III. DEFENDANTS HAVE SHOWN THAT GOOD CAUSE EXISTS

Even if the bank examination and deliberative process privileges were found to apply, Defendants have demonstrated good cause for production.

**Relevance**. All of the documents at issue have been identified by FHFA as responsive to promulgated discovery requests and are otherwise subject to production. FHFA does not dispute that production would not be burdensome and incorrectly suggests that the question of relevance rests on heightened standards. *Weissman v. Fruchtman*, No. 83 Civ. 8958 (PKL), 1986 WL 15669 (S.D.N.Y. Oct. 31, 1986), however, held that the documents at issue had no relevance to that case because the plaintiffs seeking disclosure had made "no proffer of relevancy." *Id.* at *18. Similarly, *In re Franklin National Bank Securities Litigation*, 478 F. Supp. 577 (E.D.N.Y. 1979), does not require that Defendants show that the documents they seek are "especially relevant," as FHFA argues.[8]  (Opp. at 23.) Finally, this Court has made no prior finding regarding the relevance of the documents Defendants seek in this motion.

**Availability.** This Court has emphasized the important role documents will play as proof at trial in these cases. This observation has been underscored by the GSE deponents'

---

[7] FHFA's suggestion that Defendants should identify exemplar documents for which FHFA will then provide a certification is nothing more than a delaying tactic and should be rejected. (Opp. at 21.) Likewise, FHFA's suggestion that Defendants must make an individualized showing for every withheld document as to why good cause for production exists is absurd. (Opp. at 21.) Defendants cannot know the specific contents of documents FHFA has withheld given FHFA's generic privilege log descriptions (*e.g.*, "information to assist in formulating deliberative opinions of OFHEO"), and it is not Defendants' burden to make such a showing.

[8] It is unfair to accuse Defendants of "blindly fishing." (Opp. at 23 (quoting *Garner v. Wolfinbarger*, 430 F.2d 1093, 1104 (5th Cir. 1970)).) More instructive is the finding in *Garner* that "[t]he court can . . . freely avail itself of protective orders, a familiar device to preserve confidentiality." *Garner*, 430 F.2d at 1104.

9

widespread lack of recollection of the events surrounding their purchases of the PLS at issue, including of documents they prepared and circulated, as well as Freddie Mac's destruction of emails from relevant custodians during the relevant timeframe, which FHFA does not address.

**Seriousness.** FHFA's failure to even acknowledge the seriousness of the multi-billion dollar actions it has initiated against Defendants speaks volumes about its credibility.

**Role of the Government in the Litigation.** Astonishingly, FHFA claims that its role as plaintiff in this litigation does not counsel in favor of production. The government's central and essential involvement in these cases is beyond dispute. FHFA's reliance on cases such as *Zenith Radio Corp. v. United States*, 764 F.2d 1577 (Fed. Cir. 1985), is misplaced, as waiver is not the issue here. Likewise, the percentage of documents the government has withheld is irrelevant to this factor. (Opp. at 24-25.) The government has chosen to pursue and aggressively litigate this case, and that constitutes good cause.

**The Possibility of Future Timidity by Government Employees.** Rather than make any effort to demonstrate that withholding documents is necessary to prevent the future timidity of FHFA officials, FHFA argues that Defendants have provided "no credible arguments to contradict the underlying premise of these privileges." (Opp. at 25.) The issue, however, is whether future *FHFA* officials are likely to be timid if the privileges are not extended. Defendants have provided numerous, independent reasons why, given the circumstances present here, production of relevant documents would not cause such officials to become timid.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to compel, order FHFA to promptly produce in unredacted form all documents

withheld or redacted on the basis of either the bank examination privilege or deliberative process privilege, and grant such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        September 24, 2013

Respectfully submitted,

/s/ Andrew T. Frankel
Thomas C. Rice (trice@stblaw.com)
David J. Woll (dwoll@stblaw com)
Andrew T. Frankel (afrankel@stblaw.com)
Alan C. Turner (aturner@stblaw.com)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY  10017-3954

*Attorneys for Defendants Deutsche Bank AG, Taunus Corporation, Deutsche Bank Securities Inc., DB Structured Products, Inc., ACE Securities Corp., MortgageIT Securities Corp.*

Thomas C. Rice (trice@stblaw.com)
David J. Woll (dwoll@stblaw.com)
Andrew T. Frankel (afrankel@stblaw.com)
Alan Turner (aturner@stblaw.com)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY  10017

*Attorneys for Defendant RBS Securities Inc.*

Bruce Clark (clarkb@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004

Amanda F. Davidoff
(davidoffa@sullcrom.com)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, DC  20006

*Attorneys for Defendants Nomura Securities International, Inc., Nomura Holding America Inc., Nomura Asset Acceptance Corporation, Nomura Home Equity Loan, Inc., Nomura Credit & Capital, Inc., David Findlay, John McCarthy, John P. Graham, Nathan Gorin, and N. Dante LaRocca*

11

Penny Shane (shanep@sullcrom.com)
Sharon L. Nelles (nelless@sullcrom.com)
Jonathan M. Sedlak (sedlakj@sullcrom.com)
Yavar Bathaee (bathaeey@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004

*Attorneys for Defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan Mortgage Acquisition Corporation, J.P. Morgan Securities LLC, J.P. Morgan Acceptance Corporation I, Bear Stearns & Co., Inc., EMC Mortgage LLC, Structured Asset Mortgage Investments II Inc., Bear Stearns Asset Backed Securities I LLC, WaMu Asset Acceptance Corporation, WaMu Capital Corporation, Washington Mutual Mortgage Securities Corporation, Long Beach Securities Corporation and certain of the Individual Defendants*


Richard H. Klapper (klapperr@sullcrom.com)
Theodore Edelman (edelmant@sullcrom.com)
Michael T. Tomaino, Jr. (tomainom@sullcrom.com)
Tracy Richelle High (hight@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004

*Attorneys for Goldman, Sachs & Co., GS Mortgage Securities Corp., Goldman Sachs Mortgage Company, The Goldman Sachs Group, Inc., Goldman Sachs Real Estate Funding Corp., Peter C. Aberg, Howard S. Altarescu, Robert J. Christie, Kevin Gasvoda, Michelle Gill, David J. Rosenblum, Jonathan S. Sobel, Daniel L. Sparks, Mark Weiss*

Richard W. Clary (rclary@cravath.com)
Richard J. Stark (rstark@cravath.com)
Michael T. Reynolds (mreynolds@cravath.com)
Lauren A. Moskowitz (lmoskowitz@cravath.com)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019

*Attorneys for Credit Suisse Securities (USA) LLC, Credit Suisse Holdings (USA), Inc., Credit Suisse (USA), Inc., DLJ Mortgage Capital, Inc., Credit Suisse First Boston Mortgage Securities Corporation, Asset Backed Securities Corporation, Credit Suisse First Boston Mortgage Acceptance Corporation, Andrew A. Kimura, Jeffrey A. Altabef, Evelyn Echevarria, Michael A. Marriott, Zev Kindler, Thomas E. Siegler, Thomas Zingalli, Carlos Onis, Steven L. Kantor, Joseph M. Donovan, Juliana Johnson, and Greg Richter*


John M. Conlon (jconlon@mayerbrown.com)
Mark S. Hanchet (mhanchet@mayerbrown.com)
Michael O. Ware (mware@mayerbrown.com)
MAYER BROWN LLP
1675 Broadway
New York, NY  10019

*Attorneys for Defendants HSBC North America Holdings Inc., HSBC USA Inc., HSBC Markets (USA) Inc., HSBC Bank USA, NA., HSI Asset Securitization Corporation*

12

Bruce Clark (clarkb@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004

Amanda F. Davidoff
(davidoffa@sullcrom.com)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, DC 20006

*Attorneys for Defendants First Horizon National Corporation, First Tennessee Bank National Association, FTN Financial Securities Corporation, First Horizon Asset Securities, Inc., Gerald L. Baker, Peter F. Makowiecki, Charles G. Burkett, and Thomas J. Wageman*

James P. Rouhandeh
Brian S. Weinstein
Daniel J. Schwartz
Nicholas N. George
Jane M. Morril
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017

*Attorneys for Defendants Morgan Stanley, Morgan Stanley & Co. Incorporated (n/k/a Morgan Stanley & Co. LLC), Morgan Stanley Mortgage Capital Holdings LLC (successor-in-interest to Morgan Stanley Mortgage Capital Inc.), Morgan Stanley ABS Capital I Inc., Morgan Stanley Capital I Inc., Saxon Capital, Inc., Saxon Funding Management LLC, Saxon Asset Securities Company, Gail P. McDonnell, Howard Hubler, David R. Warren, and Steven S. Stern*

Pamela Rogers Chepiga
(pamela.chepiga@allenovery.com)
Josephine A. Cheatham
(allie.cheatham@allenovery.com)
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY 10020

*Attorneys for Samuel L. Molinaro, Jr.*

Richard A. Edlin (edlinr@gtlaw.com)
Ronald D. Lefton (leftonr@gtlaw.com)
Candace Camarata (camaratac@gtlaw.com)
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, NY 10166
Phone: 212-801-9200

*Attorneys for Defendant Jeffrey Mayer*

Reginald R. Goeke (rgoeke@mayerbrown.com)
Catherine A. Bernard
(cbernard@mayerbrown.com)
MAYER BROWN LLP
1999 K St., N.W.
Washington, D.C.  20006

Michael O. Ware (mware@mayerbrown.com)
MAYER BROWN LLP
1675 Broadway
New York, NY 10019

*Attorneys for Ally Financial Inc. and GMAC Mortgage Group, Inc.*

Jay B. Kasner (jay.kasner@skadden.com)
Scott Musoff (scott.musoff@skadden.com)
George Zimmerman
(george.zimmerman@skadden.com)
Robert A. Fumerton
(robert.fumerton@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, NY  10036

*Attorneys for SG Americas, Inc., SG Americas Securities Holdings, LLC, SG Americas Securities, LLC, SG Mortgage Finance Corp., and SG Mortgage Securities, LLC, Arnaud Denis, Abner Figueroa, Tony Tusi, and Orlando Figueroa*

Sandra D. Hauser
(sandra.hauser@snrdenton.com)
SNR DENTON US LLP
1221 Avenue of the Americas
New York, New York 10020

*Attorney for Matthew Perkins*

David H. Braff (braffd@sullcrom.com)
Brian T. Frawley (frawleyb@sullcrom.com)
Jeffrey T. Scott (scottj@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

*Attorneys for Defendants Barclays Bank plc, Barclays Capital Inc., Securitized Asset Backed Receivables LLC, Michael Wade, John Carroll, and Paul Menefee*

Matthew Solum
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Robert J. Kopecky
Devon M. Largio
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

Jeffrey S. Powell
Patrick M. Bryan
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC 20005
(202) 879-5000

*Attorneys for Ally Securities, LLC*

| | |
|---|---|
| Joel C. Haims (jhaims@mofo.com)<br>LaShann M. DeArcy (ldearcy@mofo.com)<br>Morrison & Foerster LLP<br>1290 Avenue of the Americas<br>New York, NY 10104<br><br>*Attorneys for Tom Marano and Michael Nierenberg* | David Blatt (dblatt@wc.com)<br>John McNichols (jmcnichols@wc.com)<br>WILLIAMS & CONNOLLY LLP<br>725 Twelfth Street, N.W.<br>Washington, DC 20005<br><br>*Attorneys for Bank of America Corporation; Bank of America, N.A.; Asset Backed Funding Corp.; Banc of America Funding Corp.; Merrill Lynch & Co., Inc., Merrill Lynch Mortgage Lending, Inc., Merrill Lynch Mortgage Capital Inc., First Franklin Financial Corp., Merrill Lynch Mortgage Investors, Inc., Merrill Lynch Government Securities, Inc., Merrill Lynch, Pierce, Fenner & Smith Inc.* |
| Dani R. James (djames@kramerlevin.com)<br>Jade A. Burns (jburns@kramerlevin.com)<br>KRAMER LEVIN NAFTALIS & FRANKEL LLP<br>1177 Avenue of the Americas<br>New York, New York 10036<br><br>*Attorneys for Defendant Jeffrey L. Verschleiser* | Daniel C. Zinman (dzinman@rkollp.com)<br>H. Rowan Gaither (rgaither@rkollp.com)<br>Matthew M. Riccardi (mriccardi@rkollp.com)<br>RICHARDS KIBBE & ORBE LLP<br>One World Financial Center<br>New York, NY 10281<br><br>*Attorneys for George C. Carp, Robert Caruso, George E. Ellison, Adam D. Glassner, Daniel B. Goodwin, Juliana Johnson, Michael J. Kula, William L. Maxwell, Mark I. Ryan, and Antoine Schetritt; Matthew Whalen, Brian Sullivan, Michael McGovern, Donald Puglisi, Paul Park, and Donald Han* |