**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x
:
FEDERAL HOUSING FINANCE AGENCY, etc., :
:
         Plaintiff, :
    v. : 11 Civ. 6198 (DLC)
:
GOLDMAN, SACHS & CO., et al., :
:
         Defendants. :
:
:
:
:
------------------------------------------------------------------ x
:
FEDERAL HOUSING FINANCE AGENCY, etc., :
:
         Plaintiff, :
    v. : 11 Civ. 7010 (DLC)
:
ALLY FINANCIAL INC., et al., :
:
         Defendants. :
:
:
:
------------------------------------------------------------------ x

**GOLDMAN SACHS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON KNOWLEDGE**

                                          Richard H. Klapper
                                          Theodore Edelman
                                          Michael T. Tomaino, Jr.
                                          Tracy Richelle High
                                          SULLIVAN & CROMWELL LLP
                                          125 Broad Street
                                          New York, NY 10004
                                          Telephone: 212-558-4000
                                          Facsimile: 212-558-3588

June 3, 2014                              *Attorneys for the Goldman Sachs Defendants*

**TABLE OF CONTENTS**

|     |     | Page |
| --- | --- | --- |
| PRELIMINARY STATEMENT | | 1 |
| FACTUAL BACKGROUND | | 2 |
| ARGUMENT | | 4 |
| I. | THE GSES HAD ACTUAL KNOWLEDGE OF THE FACTS THAT FORM THE BASIS OF FHFA'S ALLEGATIONS OF MISREPRESENTATIONS. | 4 |
|     | A. Fannie Mae Had Actual Knowledge of the Facts That Form the Basis for FHFA's Allegations Regarding FFML 2006-FF13. | 5 |
|     | B. Freddie Mac Had Actual Knowledge of the Facts That Form the Basis for FHFA's Allegations Regarding GSAMP 2006-FM2. | 9 |
|     | C. Additional Examples Demonstrate the GSEs' Knowledge of the Facts Constituting the Basis for FHFA's Alleged Misrepresentations With Regard to Particular Certificates. | 12 |
| II. | SUMMARY JUDGMENT IS IMPROPER BECAUSE THE COURT HAS NOT AFFORDED GOLDMAN SACHS A FULL OPPORTUNITY FOR DISCOVERY. | 14 |
| CONCLUSION | | 15 |

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Celotex Corp.* v. *Catrett*,
    477 U.S. 317 (1986)..................................................................................................1

*Foresta* v. *Centerlight Capital Mgmt., LLC*,
    379 Fed. App'x 44 (2d Cir. 2010)............................................................................14

*In re Initial Public Offerings Securities Litigation*,
    471 F.3d 24 (2d Cir. 2006).........................................................................................4

*N.J. Carpenters Health Fund* v. *RALI Series 2006-QO1 Trust*,
    477 Fed. App'x 809 (2d Cir. 2012)........................................................................2, 4

**Other Authorities**

Fed. R. Civ. P. 56................................................................................................1, 4, 14

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| **Ally Action** | *Federal Housing Finance Agency* v. *Ally Financial Inc., et al.*, No. 11 Civ. 7010 (DLC) |
| **AVM** | Automated valuation model |
| **Certificates** | The specific RMBS that Fannie Mae and Freddie Mac allegedly purchased from the Securitizations at issue in the above-captioned actions |
| **Defendants** | Defendants Goldman Sachs, HSBC, and Nomura in the GS Action, the Ally Action, *FHFA* v. *HSBC North America Holdings, Inc., et al.*, No. Civ. 6189 (DLC); *FHFA* v. *Nomura Holdings America, Inc., et al.*, No. 11 Civ. 6201 (DLC) |
| **DTI** | Debt-to-income ratio |
| **EPDs** | Early payment defaults |
| **Fannie Mae** | Federal National Mortgage Association |
| **Freddie Mac** | Federal Home Loan Mortgage Corporation |
| **FHFA** | Federal Housing Finance Agency, the regulator of Fannie Mae and Freddie Mac, which brings the above-captioned actions in its capacity as their conservator |
| **Goldman Sachs** | Defendants Goldman, Sachs & Co., GS Mortgage Securities Corp., Goldman Sachs Mortgage Company, The Goldman Sachs Group, Inc., Goldman Sachs Real Estate Funding Corp., Howard S. Altarescu, Kevin Gasvoda, Michelle Gill, David J. Rosenblum, Jonathan S. Sobel, Daniel L. Sparks, and Mark Weiss |
| **GS Action** | *Federal Housing Finance Agency* v. *Goldman, Sachs & Co., et al.*, No. 11 Civ. 6198 (DLC) |
| **GSE** | Government-Sponsored Entity (here, Fannie Mae and/or Freddie Mac) |
| **Joint Mem. or Joint Memorandum** | Defendants' Joint Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment on Knowledge |
| **LTV** | Loan-to-value ratio |
| **Offering Materials** | The offering materials for the Securitizations in the above-captioned actions, including documents filed with the Securities and Exchange Commission such as registration statements or base prospectuses, |

| | |
|---|---|
| | prospectus supplements and any supplements, and any other free writing prospectuses or other documents pertaining to that Securitization, as well as any preliminary term sheets not filed with the Securities and Exchange Commission |
| **Originator(s)** | Any originator that originated loans underlying the Securitizations |
| **PLS** | Private label securities |
| **RMBS** | Residential mortgage-backed securities |
| **Securitizations** | The PLS from which the GSEs purchased the Certificates at issue in the above-captioned actions |
| **Stmt.** | Defendants' Local Rule 56.1 Counterstatement of Material Facts and Reply to Plaintiff's Statement of Undisputed Material Facts |
| **SLGs** | The supporting loan groups for the Certificates |

**PRELIMINARY STATEMENT**

To the extent FHFA ultimately is able to establish that the Offering Materials contained misstatements because loans in the SLGs had alleged underwriting defects, owner-occupancy fraud, appraisal bias, and inflated credit ratings, there is ample evidence for a jury to conclude that the GSEs knew those conditions existed in loans backing the Certificates they bought from Goldman Sachs.  The Joint Memorandum demonstrates that this evidence includes:

- The GSEs' on-site counterparty reviews of Originators' underwriting and appraisal processes;

- Disclosures in the Offering Materials concerning repurchase remedies for defective loans that did not comply with Originators' representations and warranties;

- The GSEs' direct purchases of, and loan-level due diligence on, subprime and Alt-A loans from the same Originators whose loans are in the SLGs;

- Delinquency and default data on similar loan products from the same Originators;

- The GSEs' awareness of risks inherent in the types of loans in the SLGs, including low-documentation and no-documentation loans;

- Fannie Mae's anti-predatory lending reviews that identified PLS loans issued without regard to a borrower's ability to repay; and

- The GSEs' monitoring of general market news reporting on increasing levels of borrower fraud, Originator bankruptcies due to repurchase claims, and other information bearing on the subprime and Alt-A loans that comprised the majority of the collateral for the GSEs' Certificates.

*See, e.g.*, Joint Mem. 3-5.  The GSEs understood that these facts, trends, and disclosures would apply to the loans comprising the SLGs for the Certificates.  *Id.* at 3-8.  The existence of this direct and circumstantial evidence requires that the Court deny FHFA's motion for summary judgment because FHFA fails to meet its burden to show "that there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a); *see also, e.g., Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986), as to whether the GSEs had "actual knowledge" of the misstatements FHFA has

alleged. *N.J. Carpenters Health Fund* v. *RALI Series 2006-QO1 Trust*, 477 Fed. App'x 809, 813 (2d Cir. 2012). This supplemental memorandum illustrates those points as they relate specifically to Goldman Sachs.

FHFA's motion should be denied for the further reason that the Court's discovery rulings have deprived Goldman Sachs of additional evidence that would further demonstrate that the GSEs' knowledge defeats FHFA's claims here.

## FACTUAL BACKGROUND

Between September 2005 and October 2007, the GSEs purchased 43 Certificates from Goldman Sachs in 41 different RMBS offerings, for a total investment of more than $11 billion. Stmt. ¶ 92; Ex. 479. The SLGs underlying these Certificates contained prime, subprime and Alt-A loans from Originators such as Fremont, Countrywide, First Franklin, New Century, and IndyMac, many of which also sold prime, subprime or Alt-A loans directly to the GSEs.[1] *See* Stmt. ¶¶ 92, 281. These loans represented a variety of risky loan products, such as no- and low-documentation loans, with which the GSEs were familiar as the dominant player in the housing and mortgage sector. *See* Stmt. ¶¶ 90, 366.

**FHFA's Allegations**

*Underwriting Defects*: As discussed more generally in the Joint Memorandum, FHFA alleges that the Offering Materials incorrectly stated that mortgage loans in the SLGs were underwritten "generally in accordance with" the pertinent underwriting guidelines and that underwriting exceptions were granted based upon compensating factors. Joint Mem. at 13-14;

---

[1] These five Originators have the highest number of loans in the sample reunderwritten by FHFA's proffered expert.

Stmt. ¶ 95.[2] ███████████████████████████

███████████████████████████████████

███████████████████████████

███████████████████████

█

      *Appraisal Bias*: FHFA alleges that collateral tables in the Offering Materials incorrectly stated the LTVs of the underlying loans because they were based on appraisals that the appraisers understood "were inaccurate and that they knew bore no reasonable relationship to the actual value of the underlying properties." Ex. 107 ¶ 128. ███████████

███████████████████████████████████

████████████████████████████

██████████████████████

      *Owner-Occupancy Fraud*: ████████████████

███████████████████████████████████

███████████████████████████████████

████████████████████

---

[2]    The Amended Complaint in the GS Action is cited throughout this Memorandum. The Amended Complaint in the Ally Action contains substantially similar allegations.

[3]    ████████████████████████████████

███████████████████████████████████

████████████ Payne's and Hunter's findings conflict with the evidence from due diligence firms, Originators, and the GSEs themselves showing that the rates of any defective loans in the SLGs are far lower than FHFA's experts contend. Because FHFA's motion concerns the GSEs' actual knowledge of the factual basis for FHFA's claims, Goldman Sachs will not repeat here the abundant evidence showing that the opinions and alleged defect rates of FHFA's experts are erroneous.

*Credit Ratings*: The Certificates all had an "investment grade" or "AAA" rating at the time of purchase by the GSEs. Ex. 107 ¶ 115. As discussed in the Joint Memorandum, FHFA's claims related to credit ratings are derivative of FHFA's other claims. Joint Mem. 14.

## ARGUMENT

**I.  THE GSES HAD ACTUAL KNOWLEDGE OF THE FACTS THAT FORM THE BASIS OF FHFA'S ALLEGATIONS OF MISREPRESENTATIONS.**

Partial summary judgment here is inappropriate because FHFA fails to show "that there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), as to whether the GSEs had "actual knowledge of the specific untruth or omission" FHFA has alleged. *N.J. Carpenters Health Fund* v. *RALI Series 2006-QO1 Trust*, 477 Fed. App'x at 813; *see also* Joint Mem. 15. In particular, FHFA's brief wholly disregards ample evidence, including circumstantial evidence from which reasonable inferences may be drawn, that the GSEs' unquestionable overarching knowledge of the mortgage industry applied to the SLGs and Certificates. *See In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 43-44 & 44 n.14 (2d Cir. 2006); *see also* Joint Mem. 3-5, 21-34; Stmt. ¶ 90 ("Freddie Mac certainly was a large, sophisticated client in the space and, you know, had parameters around what they were trying to achieve in their investments"; "Fannie Mae was a sophisticated institutional investor that made its own investment decisions. We presented product or we purchased product from them. So they drove what they wanted to buy.") We provide below several concrete examples of that knowledge in the context of certain Certificates and SLGs. To provide the Court with evidence specific to each of the Certificates, Goldman Sachs attaches as Appendix A a chart identifying the evidence of the GSEs' actual knowledge with respect to each of the Securitizations.

A.     **Fannie Mae Had Actual Knowledge of the Facts That Form the Basis for FHFA's Allegations Regarding FFML 2006-FF13.**

On September 28, 2006, Fannie Mae purchased $244,303,000 in the A1 tranche of FFML 2006-FF13. Stmt. ¶ 92; Ex. 479. First Franklin originated "[s]ubstantially all of the mortgage loans" underlying this Certificate. Ex. 10 at S-36. █████████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

██████████████

The Prospectus Supplement for FFML 2006-FF13 disclosed that First Franklin would make certain representations and warranties, and would be obligated to repurchase or substitute a loan if its representations and warranties "are breached in any material respect" or if "there exists any uncured material document defect[.]" Ex. 10 at S-9, S-11. First Franklin's representations included that

> [t]he documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated in them or necessary to make the information or statements in them not misleading. No fraud, error, omission, misrepresentation, negligence or similar occurrence with respect to a mortgage loan has taken place on the part of [First Franklin] and, to the best of [First Franklin]'s knowledge, any other person (including, without limitation, the mortgagor, any appraiser, any builder or developer, or any other party involved in the origination or servicing of the mortgage loan).

*Id.* at S-58.  The Prospectus Supplement cited as a risk factor that First Franklin "May Not Be Able to Repurchase Defective Mortgage Loans."  *Id.* at S-25.  The GSEs understood from such disclosures that collateral loan pools would contain some loans with underwriting defects, inflated appraisals, and occupancy misrepresentations.  Joint Mem. 31.

The Prospectus Supplement for FFML 2006-FF13 further disclosed that the loans securing the Certificate included 521 loans, constituting 23.62% of the principal balance, Ex. 10 at A-10, for which "the borrower [was] qualified based on the income stated on the application," *id.* at S-38-S-39.  Fannie Mae understood that borrowers who obtained loans through stated income programs could misrepresent their income.  Joint Mem. 29-31.

The Prospectus Supplement for FFML 2006-FF13 also referred purchasers to a website providing static pool information for prior residential mortgage loan securitizations of both Goldman Sachs and First Franklin.  Ex. 10 at S-48.  The website provided, among other things, "delinquency, cumulative loss, and prepayment information" by securitization for the prior five years.  *Id.*  This static pool information showed that, by June 2006, loans underlying the securitizations in the static pool had experienced cumulative net losses of up to 14.01%, and the most recent securitizations already were experiencing early delinquencies.  *See* Goldman Sachs Static Pool Information Delinquency, Loss and Prepayment Information for FFML 2006-FF13 at 56-59, *available at* http://www.gs.com/staticpoolinfo/ (last accessed June 2, 2014).  Fannie Mae understood that EPDs could indicate borrower fraud and underwriting weaknesses.  Joint Mem. 33-34.

The Prospectus for FFML 2006-FF13 stated that "[w]e may elect to re-underwrite some of the mortgage loans based upon our own criteria," Ex. 10 at 29, and did not represent that Goldman Sachs would reunderwrite all of the mortgage loans.  The Prospectus further stated that

"[w]e will not undertake any independent investigations of the creditworthiness of particular obligors." *Id.* Fannie Mae therefore understood that Goldman Sachs did not conduct due diligence on the entirety of the SLG and, consequently, that the types of underwriting defects FHFA contends for FFML 2006-FF13 could exist in the portion of the loan pools that had not been subject to due diligence. Joint Mem. 24-26.[4]



Because this Court has not permitted discovery into the GSEs' direct purchases of loans from Originators, Goldman Sachs is unable to provide detail on the results or scope of Fannie Mae's due diligence on First Franklin subprime loans in August 2006.

---

[4] As shown in the Joint Memorandum, the GSEs were aware of the degree to which Defendants conducted due diligence, as well as the limitations inherent in that due diligence. Joint Mem. 24-26. The practice of sampling for credit and compliance due diligence was disclosed in Goldman Sachs' base prospectuses. Stmt. ¶ 444.

[5] The First Franklin subprime loans underlying the Certificate Fannie Mae purchased from Goldman Sachs had a weighted average OLTV of 85.18% and weighted average FICO of 642. Ex. 10 at S-32.

-8-



Fannie Mae's counterparty reviews of First Franklin, conducted prior to its purchase of FFML 2006-FF13, also revealed the extent to which First Franklin had underwriting or appraisal weaknesses that could affect loans in the SLGs for FFML 2006-FF13.



6

7



Pursuant to its anti-predatory lending policy, Fannie Mae would have received anti-predatory lending reports for prior purchases of securitizations backed by First Franklin loans, including FFML 2006-FF13. Joint Mem. 32-33.

Further, Fannie Mae knew that loans originated under stated income programs were particularly susceptible to borrower income misrepresentations. Joint Mem. 29-31.

By the time Fannie Mae purchased the Certificate in FFML 2006-FF13, it had ample facts from which a reasonable jury could infer that loans in the SLG contained the same kinds of underwriting exceptions, borrower misrepresentations, and inflated appraisals on which FHFA relies to claim there were misstatements in the offering materials for FFML 2006-FF13.

    **B.**    **Freddie Mac Had Actual Knowledge of the Facts That Form the Basis for FHFA's Allegations Regarding GSAMP 2006-FM2.**

On September 29, 2006, Freddie Mac purchased $351,611,000 in the A1 tranche of GSAMP 2006-FM2. Stmt. ¶ 92; Ex. 479. "All of the mortgage loans" underlying this Certificate "were originated or acquired by Fremont[.]" Ex. 25 at S-39. The SLG for GSAMP 2006-FM2 consisted of 38.35% stated income loans by principal balance. *Id.* at A-10.

---

[8] Defendants cannot provide more detail on Clayton's findings because the Court has denied discovery of Clayton's project files for the work it performed in connection with the GSEs' operational reviews of Originators. *See* May 7, 2014 Hr'g Tr. at 18:21-23:9.

██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████

Freddie Mac's counterparty reviews of Fremont prior to its purchase of GSAMP 2006-FM2 revealed the extent to which Fremont's underwriting and appraisal practices produced the kinds of conditions in Fremont loans on which FHFA now bases its claims. ████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
███████████████████████████████████████

Prior to purchasing GSAMP 2006-FM2, market news monitored by Freddie Mac also revealed potential problems with Fremont's underwriting practices. An August 30, 2006 *Wall Street Journal* article titled "Mortgage Market Begins to See Cracks as Subprime-Loan Problems Emerge" identified Fremont as "among the mortgage lenders reporting declines in timely payments by subprime borrowers." Stmt. ¶ 415. The article also discussed indicators of "widespread" problems in the subprime market, including vulnerabilities to underwriting defects. *Id.* ████████████████████████████████████████

████████████████████████████

████████████████████████

████████████████████████████

████████████████████████ and also continued to purchase products backed by stated income/stated asset mortgages, *see, e.g.*, Ex. 26 at A-10; Ex. 2 at S-B-22; Ex. 33 at A-9.

Both GSEs reviewed monthly "remittance reports" containing loan performance information, including information reflecting default and delinquency rates. Joint Mem. 33-34. By the time Freddie Mac purchased GSAMP 2006-FM2 on September 29, 2006, remittance reports showed increasing delinquencies in other bonds it had bought backed by Fremont loans. For example, one of the Certificates, GSAMP 2005-HE6, which Freddie Mac purchased on December 29, 2005, was experiencing delinquency rates of 10.64% (412 loans) by August 2006. Stmt. ¶¶ 92, 385; Ex. 397 at 11. Like GSAMP 2006-FM2, that Certificate was secured by stated income loans (32.92% by principal balance). Ex. 21 at A-10. Similarly, remittance reports from August 2006 showed that FHLT 2005-D contained 213 or 5.65% loans that were at least 30 days delinquent and that FHLT 2005-E contained 443 or 5.26% loans at least 30 days delinquent. Stmt. ¶ 386; Exs. 398 at 10, 399 at 10. Even FHLT 2006-B, which Freddie Mac purchased on August 3, 2006, was showing early delinquencies on 124, or 2.67%, of its supporting loans by September 25, 2006. Stmt. ¶ 386; Ex. 400 at 11. ████████████████

████████████████████████████

████████████████████████████

████████████████

The Prospectus Supplement for GSAMP 2006-FM2 contained language concerning Fremont's representations and warranties that was similar to that of First Franklin,

-11-

discussed above.  It stated that Fremont was obligated to repurchase any loan that breached its representations and warranties, including loans with any "uncured material document defect," and recited representations, including that "[n]o fraud, error, omission, misrepresentation, negligence or similar occurrence" had taken place on the part of "any person" with respect to a mortgage loan.  Ex. 25 at S-13, S-58-S-59.  The Prospectus Supplement for GSAMP 2006-FM2 also warned that Fremont "may not be able to repurchase defective mortgage loans."  *Id.* at S-28.

Freddie Mac's actual knowledge of the kinds of defects on which FHFA bases its claims is clear from, among other facts, the disclosures in the Prospectus Supplement for GSAMP 2006-FM2, its on-site counterparty reviews of Fremont, its monitoring of market news, its monitoring of delinquencies and EPDs for prior Fremont deals, and its knowledge of the risks of stated income loans.

### C. Additional Examples Demonstrate the GSEs' Knowledge of the Facts Constituting the Basis for FHFA's Alleged Misrepresentations With Regard to Particular Certificates.

Below are additional examples of evidence that the GSEs' broad actual knowledge encompassed each Certificate.  These examples are not intended to set forth all of the evidence associated with each Certificate at issue, but rather provide further details about the types of facts that a jury could find to establish the GSEs' actual knowledge of the factual basis for FHFA's claims of misrepresentations:

- Freddie Mac invested $341,242,000 in the A1 tranche of GSAMP 2005-HE6 on December 29, 2005.  Stmt. ¶ 92; Ex. 479.  The SLG for that tranche contained loans originated by First NLC.  Stmt. ¶ 92. [redacted]



- Freddie Mac invested $744,970,000 in the 1A1 tranche of GSR 2006-OA1 on August 24, 2006, which contained loans originated by IndyMac. Stmt. ¶ 92; Ex. 479.



- Freddie Mac invested $370,801,000 in the A1 tranche of GSAMP 2007-HE2 on April 20, 2007, and Fannie Mae invested $479,787,000 in the A1 tranche of GSAMP 2007-NC1 on February 20, 2007. Stmt. ¶ 92; Ex. 479. The SLGs for those tranches contained loans originated by New Century. *Id.*



▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ New Century's "severe financial difficulties" were disclosed in the Prospectus Supplement, which warned that New Century "may not be able to repurchase defective mortgage loans." Ex. 37 at S-17, S-32. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

- Fannie Mae invested $137,610,729 in the 2A1 tranche of INDX 2005-AR27 on October 28, 2005.  Stmt. ¶ 92; Ex. 479.  The Prospectus Supplement for that deal made clear that the represented occupancy types were "[b]ased upon representations of the related mortgagors at the time of origination."  Ex. 42 at S-24. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

## II.     SUMMARY JUDGMENT IS IMPROPER BECAUSE THE COURT HAS NOT AFFORDED GOLDMAN SACHS A FULL OPPORTUNITY FOR DISCOVERY.

As discussed in the Joint Memorandum, summary judgment is particularly unsuitable because FHFA has not gathered all the facts essential to meeting its burden, and Defendants have not been afforded sufficient discovery to gather facts for their defense.[9]  Joint Mem. 34-35; *see, e.g.*, *Foresta* v. *Centerlight Capital Mgmt., LLC*, 379 Fed. App'x 44, 46 (2d Cir. 2010).  The Court has precluded discovery into the GSEs' purchases of prime, subprime and Alt-A loans directly from Originators, even though the GSEs conducted pre-purchase and post-purchase loan file reviews through which they identified the same types of underwriting defects, appraisal bias, and occupancy misrepresentations on which FHFA relies to attempt to prove material misstatements in the offering materials here at issue.  Joint Mem. 34-35.  Goldman Sachs also has not been afforded the opportunity to depose certain GSE traders who purchased the Certificates, including Andrew Gillmer (INDX 2005-AR18), Chris Kuehl (GSR 2007-OA2), John Dimitri (FFML 2005-FF11), and Lori Geftic (ACCR 2005-4, AHMA 2006-1, GSAA 2005-

---

[9]     The accompanying affidavit of Bradley A. Harsch pursuant to Fed. R. Civ. P. 56(d) describes the additional discovery to which Goldman Sachs is entitled, rendering summary judgment inappropriate.

14, GSAA 2006-8, GSAMP 2005-HE5, GSAMP 2006-FM2, GSAMP 2006-HE5, and GSR 2006-OA1).  *See* Ex. 302. ███████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████

### CONCLUSION

For the foregoing reasons and those set out in the Joint Memorandum, Goldman Sachs respectfully requests that the Court deny FHFA's Motion.

Dated: June 3, 2014  
       New York, New York

Respectfully Submitted,

By:  /s/ Richard H. Klapper  
    Richard H. Klapper  
    (klapperr@sullcrom.com)  
    Theodore Edelman  
    (edelmant@sullcrom.com)  
    Michael T. Tomaino, Jr.  
    (Tomainom@sullcrom.com)  
    Tracy Richelle High  
    (hight@sullcrom.com)  
    SULLIVAN & CROMWELL LLP  
    125 Broad Street  
    New York, New York  10004  
    Telephone:  212-558-4000  
    Facsimile:  212 558-3588

*Attorneys for the Goldman Sachs Defendants*